# 22-1374

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

NATIONAL SHOOTING SPORTS FOUNDATION, INC., BERETTA U.S.A. CORP., DAVIDSON'S, INC., GLOCK INC., CENTRAL TEXAS GUN WORKS, HORNADY MANUFACTURING COMPANY, LIPSEY'S LLC, OSAGE COUNTY GUNS LLC, RSR GROUP, INC., SHEDHORN SPORTS, INC., SIG SAUER, INC., SMITH & WESSON INC., SPORTS SOUTH LLC, SPRAGUE'S SPORTS INC., STURM, RUGER & COMPANY, INC.,

*Plaintiffs-Appellants*,

v.

LETITIA JAMES, in her official capacity
as New York Attorney General,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of New York, No. 1:21-cv-1348 (D'Agostino, J.)

**BRIEF OF AMICUS CURIAE**
**NATIONAL RIFLE ASSOCIATION OF AMERICA, INC.**
**IN SUPPORT OF APPELLANTS AND REVERSAL**

James R. Saywell
  (*admission application forthcoming*)
JONES DAY
North Point
901 Lakeside Avenue East
Cleveland, Ohio 44114-1190
(216) 586-3939

Noel J. Francisco
C. Kevin Marshall
  (*admission renewal forthcoming*)
Brett J. Wierenga
  (*admission application forthcoming*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Counsel for Amicus Curiae*
*National Rifle Association of America, Inc.*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Amicus Curiae, the National Rifle Association of America, Inc., submits the following corporate disclosure statement.

The National Rifle Association of America, Inc. ("NRA") is a non-profit 501(c)(4) membership organization, incorporated in the state of New York, with its principal place of business in Virginia. NRA is not publicly traded and has no parent corporation. There is no publicly held corporation that owns 10 percent or more of its stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ........................................................ iii

INTEREST OF AMICUS ........................................................1

INTRODUCTION ........................................................2

ARGUMENT ........................................................3

I.    Section 898 eviscerates traditional boundaries of common-law nuisance and therefore is unconstitutionally vague ........................................................3

    A.    Nuisance at common law had specific and defined boundaries...............3

    B.    Courts have rigorously enforced these boundaries in "nuisance" suits targeting the lawful products of various industries..........................5

    C.    By disregarding the traditional boundaries of nuisance law, Section 898 creates the vagueness that true common-law nuisance avoids ........................................................14

    D.    Section 898 threatens individuals' Second Amendment rights, mandating a strict vagueness standard and confirming the law's unconstitutional vagueness........................................................17

II.    Section 898 is preempted by the PLCAA ........................................................20

    A.    Congress in the PLCAA targeted public-nuisance actions ....................21

    B.    The PLCAA's "predicate exception" is not a backdoor for "general tort theories masquerading as statutes"....................................22

    C.    The vague, ahistorical theory of public nuisance codified in Section 898 is even more clearly preempted than the nuisance statute in *Beretta* ........................................................25

CONCLUSION ........................................................27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
96 N.Y.2d 280 (N.Y. App. Div. 2001) ..........................................9, 13

*Adames v. Sheahan*,
880 N.E.2d 559 (Ill. App. Ct. 2007) ...................................................22

*Agoglia v. Benepe*,
84 A.D.3d 1072 (N.Y. App. Div. 2011) ...............................................8

*Baity v. Gen. Elec. Co.*,
86 A.D.3d 948 (N.Y. App. Div. 2011) .................................................8

*Booth v. Hanson Aggregates N.Y., Inc.*,
16 A.D.3d 1137 (N.Y. App. Div. 2005) ...............................................9

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) (per curiam) ...............................9, 10, 11

*Cent. Park Sightseeing LLC v. New Yorkers for Clean,
Livable & Safe Streets, Inc.*,
157 A.D.3d 28 (N.Y. App. Div. 2017) ..................................................8

*Chatin v. Coombe*,
186 F.3d 82 (2d Cir. 1999) ................................................................16

*Chiapperini v. Gander Mountain Co.*,
13 N.Y.S.3d 777 (Sup. Ct. 2014)..........................................................7

*City of Bloomington, Ind. v. Westinghouse Elec. Corp.*,
891 F.2d 611 (7th Cir. 1989) ..............................................................10

*City of Chicago v. Beretta U.S.A. Corp.*,
821 N.E.2d 1099 (Ill. 2004).......................................................*passim*

*City of Manchester v. Nat'l Gypsum Co.*,
637 F. Supp. 646 (D.R.I. 1986) ..........................................................10

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
252 F.R.D. 130 (E.D.N.Y. 2008)...........................................................7

*City of New York v. Beretta U.S.A. Corp.*,
401 F. Supp. 2d 244 (E.D.N.Y. 2005) ...................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*City of New York v. Beretta U.S.A. Corp.*,
  524 F.3d 384 (2d Cir. 2008) .......................................................*passim*

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) ................................................................17

*City of New York v. Taliaferrow*,
  158 A.D.2d 445 (1990) .........................................................................15

*City of Philadelphia v. Beretta U.S.A., Corp.*,
  126 F. Supp. 2d 882 (E.D. Pa. 2000).............................................10, 12

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*,
  41 N.Y.2d 564 (1977) ...........................................................................12

*Detroit Bd. of Educ. v. Celotex Corp.*,
  493 N.W.2d 513 (Mich. App. Ct. 1992).................................................10

*Diamond v. Gen. Motors Corp.*,
  97 Cal. Rptr. 639 (Ct. App. 1971) ..........................................................6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008)..........................................................................2, 18

*Drummond v. Robinson Twp.*,
  9 F.4th 217 (3d Cir. 2021) ....................................................................18

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
  2022 WL 4597526 (D. Mass. Sept. 30, 2022)......................................19

*Friends of Thayer Lake LCC v. Brown*,
  126 A.D.3d 22 (N.Y. App. Div. 2015) ....................................................8

*Golden v. Diocese of Buffalo*,
  184 A.D.3d 1176 (N.Y. App. Div. 2020) .............................................5, 12

*Hain v. Jamison*,
  28 N.Y.3d 524 (2016) ...........................................................................11

*Hamilton v. Accu-tek*,
  62 F. Supp. 2d 802 (E.D.N.Y. 1999) .......................................................7

*Hamilton v. Beretta U.S.A. Corp.*,
  96 N.Y.2d 222 (2001) .............................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) ....................................................*passim*

*In re Exxon Valdez*,
104 F.3d 1196 (9th Cir. 1997) ...........................................................13

*In re Lead Paint Litig.*,
924 A.2d 484 (N.J. 2007) ..............................................................7, 10

*In re MTBE Prods. Liab. Litig.*,
2015 WL 4092326 (S.D.N.Y. July 2, 2015).....................................10

*JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*,
38 N.Y.S.3d 658 (App. Div. 2016).....................................................25

*Johnson v. Bryco Arms*,
304 F. Supp. 2d 383 (E.D.N.Y. 2004) .................................................7

*Johnson v. United States*,
576 U.S. 591 (2015).....................................................................15, 16

*Kolender v. Lawson*,
461 U.S. 352 (1983)...........................................................................16

*Kwong v. Bloomberg*,
723 F.3d 160 (2d Cir. 2013) ..............................................................18

*McDonald v. City of Chicago*,
561 U.S. 742 (2010)...........................................................................18

*Monaghan v. Roman Cath. Diocese of Rockville Ctr.*,
165 A.D.3d 650 (N.Y. App. Div. 2018) ..............................................5

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
804 F.3d 242 (2d Cir. 2015) .......................................................17, 18

*NAACP v. AcuSport, Inc.*,
271 F. Supp. 2d 435 (E.D.N.Y. 2003) ......................................7, 12, 13

*Overcash v. S.C. Elec. & Gas Co.*,
364 S.C. 569 (2005)..............................................................................4

*Penelas v. Arms Tech., Inc.*,
1999 WL 1204353 (Fla. Cir. Ct. Dec. 13, 1999)...............................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) .........................................................*passim*

*People v. Kings Cnty. Iron Foundry*,
  209 N.Y. 207 (1913) .......................................................................................3

*Prescott v. Slide Fire Sols., LP*,
  410 F. Supp. 3d 1123 (D. Nev. 2019) ..............................................................4

*San Francisco v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ...........................................................20

*Sessions v. Dimaya*,
  138 S. Ct. 1204 (2018) ...................................................................................15

*Soto v. Bushmaster Firearms Int'l, LLC*,
  202 A.3d 262 (Conn. 2019) ......................................................................24, 25

*Springfield Armory, Inc. v. City of Columbus*,
  29 F.3d 250 (6th Cir. 1994) ...........................................................................25

*State ex rel. Hunter v. Johnson & Johnson*,
  499 P.3d 719 (Okla. 2021) ..........................................................................6, 10

*State ex rel. Jennings v. Purdue Pharma L.P.*,
  2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019) .............................................10

*State v. City of Yonkers*,
  35 A.D.3d 719 (N.Y. App. Div. 2006) ..............................................................8

*State v. Lead Indus., Ass'n*,
  951 A.2d 428 (R.I. 2008) ................................................................................10

*State v. Premier Color of N.Y., Inc.*,
  285 A.D.2d 544 (N.Y. App. Div. 2001) ............................................................9

*State v. Shaw Cont. Flooring Servs., Inc.*,
  49 A.D.3d 1078 (N.Y. App. Div. 2008) ............................................................8

*State v. Wright Hepburn Webster Gallery, Ltd.*,
  64 Misc. 2d 423 (N.Y. Sup. Ct. 1970) ..............................................................8

*Tioga Pub. Sch. Dist. No. 15 of Williams Cnty. v. U.S. Gypsum Co.*,
  984 F.2d 915 (8th Cir. 1993) ...........................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Class*,
930 F.3d 460 (D.C. Cir. 2019) ........................................................... 18

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ................................................................ 18

*United States v. Powell*,
423 U.S. 87 (1975) ............................................................................. 16

*United States v. Williams*,
553 U.S. 285 (2008) ........................................................................... 15

*Vill. of Hoffman Ests. v. The Flipside, Hoffman Ests., Inc.*,
455 U.S. 489 (1982) ........................................................................... 18

*Williams v. Beemiller, Inc.*,
103 A.D.3d 1191 (N.Y. App. Div. 2013) ........................................... 7

*Zervos v. Verizon N.Y., Inc.*,
252 F.3d 163 (2d Cir. 2001) .............................................................. 26

**STATUTES**

15 U.S.C. § 7901 ................................................................... *passim*

15 U.S.C. § 7902 ........................................................................... 21

15 U.S.C. § 7903 .................................................... 21, 22, 23, 24

N.Y. Gen. Bus. Law § 898-a ............................................ 16, 19, 27

N.Y. Gen. Bus. Law § 898-b ........................................................ 14

N.Y. Gen. Bus. Law § 898-c ........................................................ 14

N.Y. Gen. Bus. Law § 898-d ........................................................ 19

N.Y. Gen. Bus. Law § 898-e .................................................. 14, 15, 19

N.Y. Penal Law § 240.45 ........................................................ 3, 8, 14

**OTHER AUTHORITIES**

Governor Andrew M. Cuomo, *Governor Cuomo Signs First-
in-the-Nation Gun Violence Disaster Emergency to Build
a Safer New York*, YouTube (July 6, 2021) ...................................... 26

Fed. R. App. P. 29 ........................................................................... 1

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Donald G. Gifford, *Public Nuisance As A Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741 (2003)...............................................*passim*

H.R. Rep. No. 109-124 (2005)....................................................................................6

Local R. 29.1 ............................................................................................................1

Press Release, N.Y. Attorney General Letitia James (July 6, 2021) ...................2, 26

Restatement (Second) of Torts (1979)........................................................4, 5, 12, 13

## INTEREST OF AMICUS[1]

The National Rifle Association of America, Inc. ("NRA") is America's oldest civil-rights organization and is widely recognized as America's foremost defender of Second Amendment rights. It was founded in 1871, by Union generals who, based on their experiences in the Civil War, sought to promote firearms marksmanship and expertise amongst the citizenry. Today, the NRA has approximately five million members, and its programs reach millions more. The NRA is also America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement.

The NRA is committed to preserving the right of all law-abiding individuals to purchase, possess, and use firearms for legitimate purposes as guaranteed by the Second Amendment to the U.S. Constitution. The NRA supports enactment of laws that recognize the right of honest citizens to carry firearms for self-protection; preemption bills—including the Protection of Lawful Commerce in Arms Act—to prevent local political attacks on gun-owner rights; and other legislation to prevent the bankrupting of America's firearms industry through reckless lawsuits.

---

[1] Both parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a). No counsel for a party authored this brief in whole or in part; no counsel or party made a monetary contribution to fund its preparation or submission; and no person other than Amicus, its members, or its counsel made a monetary contribution to fund the preparation or submission of the brief. *See* Fed. R. App. P. 29(a)(4)(E); Local R. 29.1(b).

## INTRODUCTION

Congress enacted the Protection of Lawful Commerce in Arms Act ("PLCAA") to stanch an epidemic of experimental tort suits—especially public-nuisance suits—attempting to hold the firearms industry liable for third parties' criminal misuse of firearms. Even before *District of Columbia v. Heller*, 554 U.S. 570 (2008), Congress recognized that these tort theories threatened the industry and thus individuals' Second Amendment rights. This Court subsequently followed Congress's judgment in *City of New York v. Beretta U.S.A. Corp.*, holding that the PLCAA preempts suits under New York's criminal public-nuisance statute, which does not satisfy the PLCAA's "predicate exception" because it does not "actually regulate the firearms industry." 524 F.3d 384, 404 (2d Cir. 2008).

New York, however, dissatisfied with Congress's judgment, has set out to undermine the PLCAA by assuming the responsibility to correct "federal overreach."[2] The result was a new statute, codified at New York General Business Law §§ 898-a–898-e ("Section 898" or "§ 898xx"), modeled on the very one this Court in *Beretta* held pre-empted. This new statute technically mentions the firearms industry, but it does not "actually regulate" the industry any more than the statute at issue in *Beretta*. Even worse, the text of the statute, nominally involving

---

[2] Press Release, N.Y. Attorney General Letitia James (July 6, 2021), https://ag.ny.gov/press-release/2021/attorney-general-james-statement-new-law-allows-nys-hold-gun-manufacturers.

public nuisance, discards the common-law boundaries of the tort, including the traditional connection between nuisance and land use and the requirements of control and proximate cause. Unrecognizable as nuisance, the result is a statute that prohibits no conduct in particular; leaves plaintiffs, government officials, and judges free to regulate the firearms industry as they see fit; and imperils Second Amendment rights—in short, an unconstitutionally vague statute.

Congress enacted the PLCAA in response to exactly such limitless theories of so-called public nuisance. And the Constitution protects against them. This Court should reverse.

## ARGUMENT

## I.   Section 898 eviscerates traditional boundaries of common-law nuisance and therefore is unconstitutionally vague.

Section 898 draws on language from New York's criminal-nuisance statute and its uncodified public-nuisance tort. *See* N.Y. Penal Law § 240.45(1); *People v. Kings Cnty. Iron Foundry*, 209 N.Y. 207, 210 (1913) (codification did not "add any new element"). But its similarities with common-law nuisance are superficial. It jettisons the traditional boundaries of nuisance, leaving potential defendants with no notice as to the conduct it purports to prohibit and inviting plaintiffs and courts to generate new regulations from whole cloth.

### A.   Nuisance at common law had specific and defined boundaries.

The history of common-law public nuisance stretches back almost one

thousand years, to twelfth-century England. *See* Donald G. Gifford, *Public Nuisance As A Mass Products Liability Tort*, 71 U. Cin. L. Rev. 741, 791 (2003).

From the beginning, these common-law nuisance suits focused on abating harm from localized conduct that interfered with a right common to all, limiting damages to injuries different in kind from that suffered by the public at large. The earliest precursors were suits for "interference with the king's real property rights, such as the obstruction of highways or diversion of watercourses." *Id.* at 793, 795; *see also* Restatement (Second) of Torts § 821B cmt. a (1979). Public nuisance came to include the invasion of other public rights, for instance, "pollution from noxious trades, and public morals offenses[,] such as operating 'bawdy-houses' or disorderly ale-houses." Gifford, *supra*, at 795; *see also, e.g.*, Restatement § 821B cmt. a & cmt. b ("smoke from a lime-pit" or "storage of explosives"). Public officials handled those offenses in criminal courts, and remedies were limited to enjoining and abating the nuisance. Gifford, *supra*, at 794–96, 799. It was not until 1535 that private plaintiffs were allowed to sue for damages, and even then, only if they suffered "special damage," different in kind from that suffered by the community at large.[3] *Id.* at 800; *see also* Restatement § 821C(1). Still, though,

---

[3] Some jurisdictions have rejected that expansion. In Nevada, there is no private action for public nuisance. *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1144 (D. Nev. 2019). South Carolina limits private suits to property damage, because other "well developed tort-based doctrines" cover personal injury. *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575 (2005).

public nuisance was not "regarded as a tort" and focused instead on public officials seeking "injunctive relief to abate harmful conduct." Gifford, *supra*, at 745–46.

New York law has long reflected these centuries-old contours. Nuisance has long been "a violation against the State and is subject to abatement or prosecution by the proper governmental authority." *Monaghan v. Roman Cath. Diocese of Rockville Ctr.*, 165 A.D.3d 650, 652–53 (N.Y. App. Div. 2018). It is "actionable by a private person only where the person suffered special injury beyond that suffered by the community at large." *Id.* And the conduct must interfere with a *public right*, meaning "one common to all members of the general public"—"not like the individual right that everyone has not to be assaulted or defamed." *Golden v. Diocese of Buffalo*, 184 A.D.3d 1176, 1177 (N.Y. App. Div. 2020) (quoting Restatement § 821B cmt. g).

## B. Courts have rigorously enforced these boundaries in "nuisance" suits targeting the lawful products of various industries.

In recent decades, innovative plaintiffs have attempted to exploit the flexibility of the field of public nuisance and expand it to a variety of non-land-based cases. Instead of targeting localized harm from use of land or interference with a public right of way, plaintiffs have shifted their attention to mass-product manufacturers—first the tobacco industry, then firearms, along with asbestos, lead

paint, chemicals, and opioids. *See* H.R. Rep. No. 109-124, at 11 (2005)[4] ("Recent litigation against the tobacco industry has encouraged public entities to bring suit against the firearms industry."). Through "public nuisance," plaintiffs sought to avoid limits on product-liability and other tort claims, such as statutes of limitations, the "pure economic loss" rule, and restrictions on lengthy causal chains. *See* Gifford, *supra*, at 751–52; *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 729 (Okla. 2021) ("The State's public nuisance claims could hold manufacturers perpetually liable for their products.").

Courts across the country have generally refused to countenance this experimental approach to product regulation. If nuisance were as unlimited as plaintiffs claimed, it would become "a monster that would devour in one gulp the entire law of tort." *Tioga Pub. Sch. Dist. No. 15 of Williams Cnty. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993). Plaintiffs are asking for "judicial regulation of the processes, products and volume of business of the major industries of the county." *Diamond v. Gen. Motors Corp.*, 97 Cal. Rptr. 639, 646 (Ct. App. 1971). Yet courts "are the least suited, least equipped, and thus the least appropriate branch of government to regulate and micromanage the manufacturing, marketing, distribution and sale of handguns." *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 99 (N.Y. App. Div. 2003).

---

[4] Available at https://www.congress.gov/108/crpt/hrpt59/CRPT-108hrpt59.pdf.

Courts particularly responded by more fully articulating and rigorously defending the traditional boundaries of public nuisance. The resulting case law has mostly rejected public-nuisance liability for firearms and other products.[5] *See* Gifford, *supra*, at 764 & nn. 114, 115 (collecting firearms cases).

### 1. Land or other localized conduct.

"[T]he common law doctrine of nuisance has traditionally been tied to harms resulting from the use of land." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1130 (Ill. 2004); *see also In re Lead Paint Litig.*, 924 A.2d 484, 495 (N.J. 2007) ("The link to land may arise either because the nuisance is on that

---

[5] The few successful firearms cases by plaintiffs under New York law can be laid at the feet of a single federal district-court judge. In 1999, Judge Weinstein presided over a negligent-marketing jury verdict against the gun industry in *Hamilton v. Accu-tek*, 62 F. Supp. 2d 802, 848 (E.D.N.Y. 1999), but this Court certified the case to the Court of Appeals of New York, which rejected his holding in *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222 (2001). Then, relying on *Hamilton*, the state intermediate court rejected the first New York public-nuisance suit against the gun industry, in *Spitzer*, 309 A.D.2d 91. Nevertheless, in *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435 (E.D.N.Y. 2003), Judge Weinstein wrote around *Hamilton* and *Spitzer* in a massive (and almost entirely advisory) opinion holding that private plaintiffs had established all but the special-injury element of their public-nuisance claim. He also refused to dismiss the complaint in *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383 (E.D.N.Y. 2004).

His opinion in *AcuSport* virtually invited public officials to bring the same case (to avoid the special-injury bar), which they did, again before Judge Weinstein. Shortly before trial, however, Congress enacted the PLCAA, in response to a "maverick judicial officer" who would sustain "theories without foundation in hundreds of years of the common law." 15 U.S.C. § 7901(a)(7). Judge Weinstein held that the PLCAA did not bar the suit, but this Court reversed. *See City of New York v. Beretta U.S.A. Corp.*, 401 F. Supp. 2d 244 (E.D.N.Y. 2005), *rev'd*, 524 F.3d 384 (2d Cir. 2008). Still, he continued to allow public-nuisance complaints against the gun industry. *See City of New York v. A-1 Jewelry & Pawn, Inc.*, 252 F.R.D. 130 (E.D.N.Y. 2008). And his opinions have provided a springboard for more recent cases. *See Williams v. Beemiller, Inc.*, 103 A.D.3d 1191, 1192 (N.Y. App. Div. 2013) (citing *Johnson* and *A-1 Jewelry*); *Chiapperini v. Gander Mountain Co.*, 13 N.Y.S.3d 777, 789 (Sup. Ct. 2014) (citing *A-1 Jewelry*).

person's land, as in a mosquito pond, or because an activity conducted on that land interferes with a right of the general public, as in a stream-polluting business.").

This is true of New York in particular. As with the "bawdy houses" of old, its criminal-nuisance statute still prohibits "maintain[ing] any premises, place or resort where persons gather for purposes of engaging in unlawful conduct." N.Y. Penal Law § 240.45(2). Criminal nuisance cases generally target "manufacturing plants, entertainment resorts and the like which by virtue of excessive noise, noxious gases, odors, etc. annoy or offend large areas of the community, or the conduct of resorts where persons gather for illegal or immoral purposes." *State v. Wright Hepburn Webster Gallery, Ltd.*, 64 Misc. 2d 423, 426 (N.Y. Sup. Ct. 1970). Civil public-nuisance cases, which are more plentiful, are similarly land- or public-right-of-way based. *See, e.g.*, *Cent. Park Sightseeing LLC v. New Yorkers for Clean, Livable & Safe Streets, Inc.*, 157 A.D.3d 28, 32 (N.Y. App. Div. 2017) (protestors blocking paths and frightening horses); *Baity v. Gen. Elec. Co.*, 86 A.D.3d 948, 951 (N.Y. App. Div. 2011) (chemical wastes seeping into water supply); *Friends of Thayer Lake LCC v. Brown*, 126 A.D.3d 22, 31 (N.Y. App. Div. 2015) (placing cables across waterway); *Agoglia v. Benepe*, 84 A.D.3d 1072, 1076–77 (N.Y. App. Div. 2011) (constructing dunes on public beach); *State v. Shaw Cont. Flooring Servs., Inc.*, 49 A.D.3d 1078, 1079 (N.Y. App. Div. 2008) (releasing asbestos during demolition); *State v. City of Yonkers*, 35 A.D.3d 719,

8

719 (N.Y. App. Div. 2006) (discharging sewage into waterway); *Booth v. Hanson Aggregates N.Y., Inc.*, 16 A.D.3d 1137, 1137–38 (N.Y. App. Div. 2005) (quarry lowering water table); *State v. Premier Color of N.Y., Inc.*, 285 A.D.2d 544, 545 (N.Y. App. Div. 2001) (noxious odors from textile plant); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 293 (N.Y. App. Div. 2001) (building collapse blocking road).

This focus on local conduct comports with the primary nuisance remedy—abatement—because the defendant will only be able to abate "its own conduct or activities at a particular physical site under control." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 541 (3d Cir. 2001) (per curiam). Beyond "its sphere of immediate activity," the "ability of a defendant to exercise control" is "limited" to nonexistent. *Id.* The tie to land also helps ensure proximate cause of the harm. *See Spitzer*, 309 A.D.2d at 97–98 (distinguishing gun manufacturers from lawful businesses in past nuisance cases, in which the conduct—quarry blasting and rowdy nightclub patrons—"was the *direct and immediate cause* of the damage," occurring "in spatial proximity to defendant's premises and in temporal proximity to its commercial activity").

### 2. "Control" of the nuisance.

Even if a nuisance is not tied to land, many jurisdictions hold that defendants are not liable for public nuisance when they do not "control" the nuisance "*at the*

*time the damage occurs*." *E.g.*, *State v. Lead Indus., Ass'n*, 951 A.2d 428, 449 (R.I. 2008). This precludes public-nuisance liability for product manufacturers after the product leaves the manufacturers' plant. Many States, for many products, have enforced this requirement. *See City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 910–11 (E.D. Pa. 2000) (firearms), *aff'd*, 277 F.3d 415 (3d Cir. 2002); *Camden Cnty. Bd.*, 273 F.3d at 541 (same); *Penelas v. Arms Tech., Inc.*, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999) (same); *Lead Indus.*, 951 A.2d at 449 (lead paint); *In re Lead Paint Litig.*, 924 A.2d at 499 (same); *City of Manchester v. Nat'l Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986) (asbestos); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 522 (Mich. App. Ct. 1992) (same); *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *13 (Del. Super. Ct. Feb. 4, 2019) (opioids); *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989) (chemical waste); *In re MTBE Prods. Liab. Litig.*, 2015 WL 4092326, at *4 (S.D.N.Y. July 2, 2015) (same, applying Pennsylvania law).

The basis for requiring control is familiar: Given that "the principal remedy for the harm caused by the nuisance is abatement," "control at the time the damage occurs is critical." *Lead Indus.*, 951 A.2d at 449. For "[w]ithout control, a manufacturer also cannot remove or abate the nuisance." *Hunter*, 499 P.3d at 728. Control likewise helps ensure proximate cause, even in jurisdictions that have not

adopted or addressed control as an independent requirement. *See Chicago v. Beretta*, 821 N.E.2d at 1132 (holding that control is "a relevant factor" in "the proximate cause inquiry"); *Spitzer*, 309 A.D.2d at 103, 105 (holding that "the harm plaintiff alleges is far too remote from defendants' otherwise lawful commercial activity"—that is, too "remote" from their "conduct and control").

### 3. Proximate cause.

Proximate cause is another core element of public nuisance. *Spitzer*, 309 A.D.2d at 104. "[A]t some point, a party is simply too far removed from the nuisance to be held responsible for it." *Id*. For nuisance claims based on lawful products lawfully placed into commerce, proximate cause is crucial—and rarely found. For firearms specifically, causation runs "through several links in a chain consisting of at least the manufacturer, the federally licensed distributor or wholesaler, and the first retailer, and most often including numerous subsequent legal purchasers or even a thief." *Id.* Then, the chain of causation frequently ends with "the criminal activity of intervening third parties," "over whom defendants have absolutely no control." *Id.* at 99, 103; *accord Chicago v. Beretta*, 821 N.E.2d at 1136; *Camden Cnty.*, 273 F.3d at 541; *see Hain v. Jamison*, 28 N.Y.3d 524, 529 (2016) (recognizing significance, for breaking causal nexus, of "intervening act"

11

that is "independent of or far removed from the defendant's conduct").[6]

### 4. Interference with a common right.

Public nuisance requires interference with "the exercise of rights common to all." *Copart Indus., Inc. v. Consol. Edison Co. of N.Y., Inc.*, 41 N.Y.2d 564, 568 (1977); Restatement § 821B cmt. g. Nuisance claims are not available to assert "the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." *Golden*, 184 A.D.3d at 1177.

In firearms cases, the harm is personal injury caused by third parties, but that harm "is merely an assertion, on behalf of the entire community, of the *individual right* not to be assaulted." *Chicago v. Beretta*, 821 N.E.2d at 1116 (emphasis added). There is no established "*public right* to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *Id.* (emphasis added); *accord Philadelphia v. Beretta*, 126 F. Supp. 2d at 909 ("Idyllic and desirable though it may be, there is no similar right to be free from guns and violence."). Appealing to a higher level of generality—a right to public safety and welfare—swallows the rule, creating "a public right so broad and

---

[6] Judge Weinstein in *AcuSport* (see footnote 5) nominally found proximate cause satisfied, but by erasing that element based on his policy judgment: "Here, where the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases." 271 F. Supp. 2d at 497.

undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it." *Chicago v. Beretta*, 821 N.E.2d at 1116.

### 5. Special injury.

Even after all this, a private plaintiff must prove still more to recover damages. The plaintiff must assert "special injury beyond that suffered by the community at large," meaning "different in kind" from it. *532 Madison Ave. Gourmet Foods* 96 N.Y.2d 280 at 292 (citing Restatement § 821C cmt. b); *accord In re Exxon Valdez*, 104 F.3d 1196, 1198 (9th Cir. 1997). For example, when construction caused a building collapse in Manhattan that blocked many streets, local businesses all suffered "similar economic loss during the closure periods," so they could not recover for public nuisance. *532 Madison Ave. Gourmet Foods*, 96 N.Y.2d at 294. For firearms cases, the harm is threats or violence through the unlawful use of firearms, and all victims suffer the same kind of injury, as even Judge Weinstein recognized. *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 497–99 (E.D.N.Y. 2003).

\* \* \*

In sum, the traditional limits of public nuisance cabin actions to abatement of localized harms affecting community rights. The harm must be proximately connected to the defendants' conduct and remain within the defendant's control.

13

Damages, a secondary consideration, are limited to injury different in kind from the injury to the community writ large.

> **C. By disregarding the traditional boundaries of nuisance law, Section 898 creates the vagueness that true common-law nuisance avoids.**

**1.** Section 898 eviscerates these traditional limits.

For starters, the law allows plaintiffs to sue on grounds untethered to any localized use of land or interference with any right of way, but instead based on "the sale, manufacturing, importing or marketing" of firearms. § 898-b(1), (2).

Suits may also be maintained based on harm from a dangerous "condition," regardless of a defendant's *control* over that condition. *Id.*

Nor, apparently, is there a proximate-cause requirement. Whereas criminal nuisance requires that a person "create" or "maintain" a nuisance, N.Y. Penal Law § 240.45(1), Section 898 imposes liability for merely "contribut[ing]" to a condition that "endangers" public safety and, at some point, "results in" harm to the public. §§ 898-b(1), 898-c(1), 898-e. Industry members can apparently be punished, therefore, for any conduct a judge or jury finds "unreasonable," if it merely "contribute[s] to" a condition that somehow "results in harm." §§ 898-b(1), 898-c(1). This language is a far cry from conduct that is a "*direct and immediate cause* of the damage to others nearby" and harm that is "*inextricably intertwined with* [the] defendant's commercial activity" by being "spatially and temporally

14

proximate." *Spitzer*, 309 A.D.2d at 97–98 (emphases added).

Section 898 also ignores the common-law limit that nuisance is available only for violations of a *communal* right, instead offering a cause of action for violations of the individual right against assault.

Finally, Section 898 provides for damages without requiring special injury. § 898-e. And these damages presumably include punitive damages. *See City of New York v. Taliaferrow*, 158 A.D.2d 445, 446 (1990) (holding that punitive damages are available for common-law nuisance). The consequences of imprecision are therefore "severely punitive," requiring a higher standard of review for vagueness. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring in part and concurring in the judgment).

**2.** Freed from the traditional bounds of public nuisance, Section 898 is unrecognizable as traditional nuisance, leaving it boundless and thus unconstitutionally vague.

For one thing, "it fails to give ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 576 U.S. 591, 595 (2015). The problem is not mere imprecision at the margins, but the failure to articulate any standard whatever. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v.*

15

*Williams*, 553 U.S. 285, 306 (2008). A "lawful business" afflicted by such a vague statute cannot proceed "with the confidence that" its actions "would not be later found unreasonable." *United States v. Powell*, 423 U.S. 87, 92–93 (1975).

This leads to Section 898's second problem: It is "so standardless that it invites arbitrary enforcement," *Johnson*, 576 U.S. at 595—the "more important" vagueness standard, *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). The statute "impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis," with attendant dangers of arbitrary and discriminatory application. *Chatin v. Coombe*, 186 F.3d 82, 89 (2d Cir. 1999).

Section 898 suffers from this flaw because nuisance suits against the firearms industry can end only with "courts attempting to carefully monitor which models of guns should or should not be designed, which ones may be sold in exactly what quantities, to and by which wholesalers, in which states, and to which individual retailers in which communities." *Spitzer*, 309 A.D.2d at 106. Courts, however, "are not designed or equipped for such all-embracing new undertakings." *Id.* And Section 898 assiduously avoids "particulariz[ing] any practical methods by which defendants should or could effectuate an abatement of the alleged nuisance." *Id.* Instead, it offers a non-exhaustive list of unspecific categories. *See* § 898-a(2)(a) ("screening, security, inventory and other business practices"). Not coincidentally, when Judge Weinstein finally issued an injunction against certain

16

gun industry defendants—mandating that the gun industry adopt "appropriate prophylactic measures"—this Court struck it down, *for being too vague. City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143–45 (2d Cir. 2011). Section 898 is just as vague.

For these reasons, the State was wrong to argue, and the district court wrong to agree, that Section 898 is not vague just because New York's traditional nuisance actions have not been held vague. *See* Motion to Dismiss, p. 3; Memorandum Decision, p. 23. Section 898 cannot hide behind the common-law action while it systematically abandons each of its traditional boundaries.

**D.      Section 898 threatens individuals' Second Amendment rights, mandating a strict vagueness standard and confirming the law's unconstitutional vagueness.**

This Court has recognized that a law that implicates constitutional rights, including under the Second Amendment, is subject to heightened vagueness review. Because Section 898 threatens Second Amendment rights, any doubt as to its vagueness must be resolved against it.

In *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015), this Court reviewed the constitutionality of the NY SAFE Act of 2013—a package of gun-control measures imposing actual, specific regulations on the sale and possession of firearms. *Id.* at 249. The Court observed that the provisions "implicat[ed] the exercise of constitutional rights" and were therefore "subject to a

'more stringent' vagueness standard. *Id.* at 265 & n.139 (quoting *Vill. of Hoffman Ests. v. The Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982)). Relying on that decision, the D.C. Circuit, in examining a ban on weapons on the Capitol grounds and surrounding parking areas, held that "additional skepticism" was warranted because the ban "at least implicates the right to bear arms, even if it does not violate the Second Amendment." *United States v. Class*, 930 F.3d 460, 468 (D.C. Cir. 2019).

Severe impediments to commerce in firearms would similarly undermine the "individual right to self-defense," which the Second Amendment protects. *See McDonald v. City of Chicago*, 561 U.S. 742, 777 (2010). "If there were somehow a categorical exception for [commercial] restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*." *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010); *see also Kwong v. Bloomberg*, 723 F.3d 160, 166–67 (2d Cir. 2013) (acknowledging that prohibitively expensive firearms would burden Second Amendment rights). The text of the PLCAA, moreover, shows that Congress was acting to prevent "diminution of a basic constitutional right" and was worried about "disassembly and destabilization" of "industries and economic sectors" by legal theories "without foundation" in the common law. 15 U.S.C. § 7901(a)(6), (7); *cf. Drummond v. Robinson Twp.*, 9 F.4th 217, 222 (3d Cir. 2021)

18

("In identifying which rules invade the Second Amendment, we hunt for historical outliers—laws that lack traditional counterparts.").

The consequences, monetary and otherwise, of a successful claim under Section 898 (and even the prospect of one if this Court rejected the challenge to it) would be massive, meriting a strict review for vagueness. Section 898 seeks to resurrect an entire species of novel tort claims that Congress put down, defining the tort in the broadest terms possible and painting a target on the back of an entire industry. *See* § 898-a(4) (defining "gun industry member" to include every entity involved in firearms commerce). Damages—including punitive—are available to both public and private plaintiffs, with no showing of special injury required. *See* §§ 898-d, 898-e. Public plaintiffs also have sought recoupment for public costs allegedly tied to gun violence, and Section 898 allows public plaintiffs to recover "restitution." § 898-d. Such claims could lead to liability in the hundreds of millions of dollars—particularly given that the law seeks to hang all gun-related social ills in the State on the lawful gun industry.[7] For example, in a recently dismissed tort suit against gun manufacturers, Mexico asked for $10 billion in damages. *See Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2022

---

[7] *See* Gifford, *supra*, at 787 ("When, however, a state's attorney general, a state official, selects an industry and files a massive legal action seeking recoupment for hundreds of millions of dollars against a defendant alleging liability under a particularly vague tort, the principles behind the void for vagueness doctrine are implicated.").

WL 4597526, at *6 (D. Mass. Sept. 30, 2022); *see also Chicago v. Beretta*, 821

N.E.2d at 1138–39 (requesting $433 million for five years of city costs in addition

to punitive damages). Similar theories in other industries have led to bankruptcies.

*See, e.g.*, *San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 669–84

(N.D. Cal. 2020) (declining to dismiss nuisance claims against dozens of opioid

defendants, including now-bankrupt companies Purdue Pharma and Mallinckrodt).

At a minimum, therefore, NY's law implicates the Second Amendment and is

subject to heightened vagueness review, which it cannot possibly survive.

## II.    Section 898 is preempted by the PLCAA.

Congress recognized that plaintiffs were attempting to expand public

nuisance and other torts beyond their common-law boundaries—and enacted the

PLCAA to prohibit these vaguely authorized yet wide-ranging attacks on the gun

industry. It is not overstatement to say that Section 898 permits exactly what the

PLCAA seeks to prohibit.

To escape preemption, the State seeks refuge in the statute's "predicate

exception." But for that exception to apply, a statute may not simply codify an

expansive tort theory and append the words "firearms industry" to it. Rather, as

this Court held, a statute must *actually regulate* industry members' conduct, by

applying concrete requirements or prohibitions.

**A.    Congress in the PLCAA targeted public-nuisance actions.**

The PLCAA generally preempts suits against manufacturers and sellers of firearms and ammunition alleging harm "resulting from the criminal or unlawful misuse" of a firearm. 15 U.S.C. §§ 7902(a), 7903(4)–(5). That bars plaintiffs from misappropriating traditional nuisance law under New York's criminal-nuisance statute, as this Court held in *City of New York v. Beretta*, and under California's general nuisance statute, as the Ninth Circuit held soon after in *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1137 (9th Cir. 2009).

The text of the PLCAA shows that the misappropriation of tort law was Congress's primary target. Plaintiffs were attempting to hold firearms-industry members liable for "the misuse of firearms by third parties, including criminals," which Congress found "an abuse of the legal system." 15 U.S.C. § 7901(a)(3), (6). Plaintiffs were relying on "theories without foundation in hundreds of years of the common law and jurisprudence of the United States," which did not "represent a bona fide expansion of the common law," even if a "maverick judicial officer" might embrace them. *Id.* § 7901(a)(7). And Plaintiffs' claims invited "the judicial branch to circumvent the Legislative branch," impermissibly regulating commerce by "judicial decrees." *Id.* § 7901(a)(8). Congress thus ensured that the PLCAA's bar encompassed suits for "abatement," among other remedies. *Id.* § 7903(5)(A).

The legislative history behind the PLCAA singles out public-nuisance suits

by name. Indeed, Members of Congress cited the nuisance suits then-pending in *Beretta* and *Ileto* as examples of "exactly the type of lawsuit this bill will eliminate." *Beretta*, 524 F.3d at 403 (cleaned up); *Ileto*, 565 F.3d at 1137; *see also Adames v. Sheahan*, 880 N.E.2d 559, 586 (Ill. App. Ct. 2007) ("It is clear from the PLCAA and legislative history … that Congress was primarily concerned with novel nuisance cases like *Ileto* and *City of Chicago v. Beretta*."), *rev'd in part on other grounds*, 909 N.E.2d 742 (Ill. 2009).

### B. The PLCAA's "predicate exception" is not a backdoor for "general tort theories masquerading as statutes."

The State argued here, and the district court accepted, that Section 898 escapes preemption because of the PLCAA's "predicate exception," which exempts suits alleging harm proximately caused by a knowing violation of a state or federal statute "applicable to the sale or marketing" of firearms. 15 U.S.C. § 7903(5)(A)(iii). The PLCAA's text shows that Congress had in mind those statutes that actually regulate industry practices by means of concrete, knowable requirements. A law that merely codifies against firearms long-inapplicable general tort theories is not "applicable to the sale or marketing" of firearms in the sense of setting forth actual obligations or prohibitions, as this Court in *Beretta* and other appellate courts have recognized.

In *Beretta*, this Court determined that the word "applicable" in the PLCAA's predicate exception does not encompass all "laws of general applicability,"

including, specifically, New York's criminal-nuisance statute. 524 F.3d at 403. Giving "the term 'applicable' … a contextual definition," *Beretta* concluded that the predicate exception contemplates "statutes that clearly can be said to regulate the firearms industry," such as those "specifying when, where, how, and to whom a firearm may be sold or marketed." *Id.* at 400–02. As *Beretta* observed, the text gives as examples "statutes regulating record-keeping and those prohibiting participation in direct illegal sales." *Id.* at 401–02 (citing § 7903(5)(A)(iii)(I)–(II)). The text also highlights firearms-specific regulations "like" the Gun Control Act of 1968. *Id.* at 403 (citing § 7901(a)(4)). In contrast, Congress rejected an attempt to add a PLCAA exception for "cases in which a firearms supplier's gross negligence or recklessness is a proximate cause of injury or death," because it would "'gut' the Act." *Id.* at 401, 403–404. The problem with those kinds of tort-derived standards is that they do not "actually regulate the firearms industry." *Id.* at 404. Permitting suits under such standard-less statutes would be "'plainly at variance with the policy of the legislation as a whole,'" "allow[ing] the predicate exception to swallow the statute." *Id.* at 401–03.

On the heels of *Beretta*, and aligning with it, the Ninth Circuit made the same point in *Ileto*. *See* 565 F.3d at 1132, 1135, 1136 n.7 1139, 1140, 1141 (citing *Beretta*). In that case, plaintiffs brought negligence and public-nuisance actions, which are codified in California's civil code. *Id.* at 1132–33. Focusing on the same

textual features as *Beretta*, the court concluded that the predicate exception concerns the "types of statutes," like §§ 7901(a)(4) and 7903(5)(A)(iii), "that regulate manufacturing, importing, selling, marketing, and using firearms." *Id.* at 1136. In contrast, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability," even if those general tort theories "happened to have been codified by a given jurisdiction." *Id.* at 1135–37. Furthermore, as the court recognized, the PLCAA explicitly preserves the common-law claims of negligent entrustment and negligence per se, meaning that, under the canon of *expressio unius*, Congress "consciously considered how to treat tort claims" and chose to permit only those two. *Id.* at 1135 n.6 (citing 15 U.S.C. § 7903(5)(A)(ii)).

The Connecticut Supreme Court on this basis distinguished a statutory unfair-trade-practices claim from public-nuisance actions. *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 308, 313 (Conn. 2019). Relying on this Court's analysis in *Beretta*, *see id* at 306, 308, the majority concluded that the claim was permitted because the unfair-trade-practices statute "specifically regulates commercial sales and marketing activities," as shown by previous application to the sale and marketing of firearms, *id.* at 321. In contrast, *Soto* acknowledged that the PLCAA "was primarily directed at heading off unprecedented *tort* theories" and that the California statutes at issue in *Ileto* were "merely general tort theories masquerading as statutes" and therefore "precisely the sort that Congress intended

to preempt." *Id.* at 306 n.47, 320. The *Soto* court carefully distinguished the case from one in which "the plaintiffs' theory of liability" is "novel" or "sound[s] in tort."[8] *Id.* at 320 & n.79.

### C. The vague, ahistorical theory of public nuisance codified in Section 898 is even more clearly preempted than the nuisance statute in *Beretta*.

The PLCAA's predicate exception cannot rescue Section 898, because New York's law does not *actually regulate* the firearms industry. *Beretta*, 524 F.3d at 404. Indeed, the boundless version of nuisance it codifies is just the sort of novel application of general tort law, masquerading as a statute, that Congress sought to preempt. *See* 15 U.S.C. § 7901(a)(7).

The New York legislature could have satisfied *Beretta* by regulating specific practices. After all, "[t]he subject matter" of firearms "does allow for more exactness." *See Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 253 (6th Cir. 1994). *Beretta* itself recognized as much, as discussed above. And the legislature has recent experience enacting such targeted regulation, including the NY SAFE Act of 2013.[9]

---

[8] New York's unfair-trade-practices act requires showing materiality akin to proximate causation in traditional public nuisance. *See JD & K Assocs., LLC v. Selective Ins. Grp., Inc.*, 38 N.Y.S.3d 658, 661 (App. Div. 2016) (requiring showing "that the defendant engaged in a material deceptive act or practice that caused actual[] … harm."). The *Soto* court acknowledged that showing causation under Connecticut's law might "prove to be a Herculean task." 202 A.3d at 290, 325.

[9] Available at https://www.nysenate.gov/legislation/bills/2013/S2230.

But instead, Section 898 is intentionally standardless—it is not a *regulation* but a *platform* for tort actions. Its raison d'être is to subvert the PLCAA, in order to correct "federal overreach"[10] and to "reinstate public nuisance liability for gun manufacturers."[11] Thus, suits under Section 898 fail to qualify under the predicate exception for the same reasons as New York's criminal-nuisance statute, but the outcome is even clearer.

The district court arrived at the opposite conclusion through a series of legal errors, to which this Court owes no deference. *See Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) (de novo review is "independent and plenary"). *First*, the court found the PLCAA term "applicable" to be "unambiguous" in this case. Memorandum Decision, pp. 8–9. But this Court, followed by the Ninth Circuit, already found the opposite. *See Beretta*, 524 F.3d at 401 ("we can only conclude that the term 'applicable' requires a contextual definition"); *accord Ileto*, 565 F.3d at 1135. *Then*, the district court reasoned that, simply because Section 898 imposes liability "exclusively" on the firearms industry, it "actually regulate[s]" that industry. Memorandum Decision, pp. 8–9. That is a non-sequitur. Section 898 can—and does—mention the firearms industry without providing any real standard

---

[10] Press Release, N.Y. Attorney General Letitia James, *supra*.

[11] Governor Andrew M. Cuomo, *Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York*, YouTube, at 35:00–38:15 (July 6, 2021), https://youtu.be/-tKj0FZueFM.

of conduct, unlike the federal firearms statutes Congress "described in" the PLCAA itself. *Beretta*, 524 F.3d at 403. *Finally*, the district court observed that Section 898 mentions "screening, security, inventory and other business practices" to prevent thefts and sales to unqualified buyers. Memorandum Decision, p. 9; *see* § 898-a(2)(a). But that is just a list of policy goals. What practices does the legislature have in mind? Who should adopt them? How many such practices add up to "reasonable" controls? Worse, that list is explicitly non-exclusive, limited only by plaintiffs' imagination. None of this makes Section 898 more specific or substantive than New York's criminal-nuisance law. The latter is preempted, and so is the former.

## CONCLUSION

This Court should reverse the district court's judgment dismissing the case.

James R. Saywell
  (*admission application forthcoming*)
JONES DAY
North Point
901 Lakeside Avenue East
Cleveland, Ohio 44114-1190
(216) 586-3939

*/s/ Noel J. Francisco*
Noel J. Francisco
C. Kevin Marshall
  (*admission renewal forthcoming*)
Brett J. Wierenga
  (*admission application forthcoming*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Counsel for Amicus Curiae*
*National Rifle Association of America, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief contains 6,499 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and has been prepared in proportionally spaced typeface using 14-point Times New Roman font. As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned has relied upon the word count feature of this word-processing system in preparing this certificate.

Dated: October 14, 2022

*/s/ Noel J. Francisco*
Noel J. Francisco

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished on them via the appellate CM/ECF system.

Dated: October 14, 2022

*/s/ Noel J. Francisco*
Noel J. Francisco
