# 22-1374

## United States Court of Appeals for the Second Circuit

NATIONAL SHOOTING SPORTS FOUNDATION, INC., BERETTA U.S.A. CORP., DAVIDSON'S, INC., GLOCK INC., CENTRAL TEXAS GUN WORKS, HORNADY MANUFACTURING COMPANY, LIPSEY'S LLC, OSAGE COUNTY GUNS LLC, RSR GROUP, INC., SHEDHORN SPORTS, INC., SIG SAUER, INC., SMITH & WESSON INC., SPORTS SOUTH LLC, SPRAGUE'S SPORTS INC., STURM, RUGER & COMPANY, INC.,

*Plaintiffs-Appellants,*

*against*

LETITIA JAMES, in her official capacity as New York Attorney General,

*Defendant-Appellee.*

On Appeal from the United States District Court for the Northern District of New York

**BRIEF OF THE CITY OF NEW YORK AND THE CITIES OF BUFFALO, ROCHESTER, AND SYRACUSE AS *AMICI CURIAE* IN SUPPORT OF APPELLEE AND AFFIRMANCE**

RICHARD DEARING
CLAUDE S. PLATTON
JONATHAN SCHOEPP-WONG
  *of Counsel*

January 13, 2022

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for the City of New York
100 Church Street
New York, New York 10007
212-356-2275 or -2502
jschoepp@law.nyc.gov

(Additional Counsel Listed on Signature Page)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTEREST OF *AMICI* AND  SUMMARY OF ARGUMENT ..................1

ARGUMENT ..........................................................................................4

NEW YORK CITIES' USE OF § 898 AGAINST UNLAWFUL GUN INDUSTRY PRACTICES REFUTES APPELLANTS' FACIAL CHALLENGE ....................................................................4

A. New York cities are stanching the flow of illegal guns harming our communities through § 898 lawsuits targeting knowing unlawful conduct..........................................4

B. New York cities' use of § 898 is not preempted under PLCAA, even as appellants construe it...................................10

　1. PLCAA does not preempt litigation targeting unlawful gun distribution......................................................13

　2. The predicate exception's mens rea and proximate cause requirements are no barrier to amici's ghost-gun lawsuits. ................................................................19

C. New York cities' use of Section 898 likewise does not offend the Commerce Clause or the Due Process Clause. .......24

CONCLUSION ......................................................................................29

CERTIFICATE OF COMPLIANCE........................................................31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agni v. Wenshall,*
    522 F.3d 279 (2d Cir. 2008) .............................................................. 17

*Best Van Lines, Inc. v. Walker,*
    490 F.3d 239 (2d Cir. 2007) .............................................................. 26

*Cal. Coastal Comm'n v. Granite Rock Co.,*
    480 U.S. 572 (1987) .......................................................................... 12

*City of N.Y. v. A-1 Jewelry & Pawn, Inc.,*
    247 F.R.D. 296 (E.D.N.Y. 2007) ....................................................... 23

*City of N.Y. v. Beretta U.S.A. Corp.,*
    524 F.3d 384 (2d Cir. 2008) .............................................................. 17

*City of N.Y. v Smokes-Spirits.Com, Inc.,*
    12 N.Y.3d 616 (2009) ........................................................................ 23

*Copart Indus., Inc. v. Consol. Edison Co.,*
    41 N.Y.2d 564 (1977) ........................................................................ 23

*Copeland v. Vance,*
    893 F.3d 101 (2d Cir. 2018) .............................................................. 27

*Elliott v. City of N.Y.,*
    95 N.Y.2d 730 (2001) ........................................................................ 17

*Freedom Holdings, Inc. v. Cuomo,*
    624 F.3d 38 (2d Cir. 2010) ................................................................ 11

*Goshen v. Mut. Life Ins. Co.,*
    98 N.Y.2d 314 (2002) ........................................................................ 26

*Grand Riv. Enters. Six Nations v. Boughton,*
    988 F.3d 114 (2d Cir. 2021) .............................................................. 26

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Green Mt. R.R. Corp. v. Vermont,*
   404 F.3d 638 (2d Cir. 2005) ................................................................ 11

*Healy v. Beer Inst.,*
   491 U.S. 324 (1989) ........................................................................... 27

*Kassel v. Consol. Freightways Corp.,*
   450 U.S. 662 (1981) ........................................................................... 26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ........................................................................... 23

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab.*
   *Litig.,*
   725 F.3d 65 (2d Cir. 2013) ................................................................. 20

*N.Y. Alliance of Auto. Mfrs., Inc. v Currey,*
   610 F. App'x 10 (2d Cir. 2015) ......................................................... 24

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
   804 F.3d 242 (2d Cir. 2015) ....................................................... 11, 28

*N.Y. Trap Rock Corp. v. Clarkstown,*
   299 N.Y. 77 (1949) ............................................................................ 23

*People v. Sturm, Ruger & Co.,*
   309 A.D.2d 91 (1st Dep't 2003) ........................................................ 23

*Rice v. Norman Williams Co.,*
   458 U.S. 654 (1982) ........................................................................... 12

*Richmond Boro Gun Club v. City of N.Y.,*
   97 F.3d 681 (2d Cir. 1996) .......................................................... 20, 28

*Town of Southold v. Town of E. Hampton,*
   477 F.3d 38 (2d Cir. 2007) ................................................................ 24

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*United States v. Decastro,*
  682 F.3d 160 (2d Cir. 2012) ............................................................ 11

*United States v. Weintraub,*
  273 F.3d 139 (2d Cir. 2001) ............................................................ 21

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008) .............................................. 20, 24, 28

*White Plains Coat & Apron Co. v. Cintas Corp.,*
  460 F.3d 281 (2d Cir. 2006) ............................................................ 26

*Williams v. Beemiller, Inc.,*
  100 A.D.3d 143 (4th Dep't 2012) .................................................... 16

**Statutes**

15 U.S.C. § 7901 ................................................................................. 16

15 U.S.C. § 7902 ............................................................................ 10, 20

15 U.S.C. § 7903 ........................................................................... *passim*

18 U.S.C. § 922 ...................................................................... 5, 7, 14, 18

18 U.S.C. § 923 ............................................................................... 5, 14

Conn. Gen. Stat. § 42-110b(a) ......................................................... 18

N.Y.C. Admin. Code § 10-301 ........................................................ 6, 15

N.Y.C. Admin. Code § 10-314 ........................................................ 6, 15

N.Y. Gen. Bus. Law § 898-a ........................................................ 18, 25

N.Y. Gen. Bus. Law § 898-b ...................................................... *passim*

N.Y. Gen. Bus. Law § 898-c ............................................................. 23

iv

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

N.Y. Gen. Bus. Law § 898-d ................................................................. 5

N.Y. Penal Law § 265.01 ............................................................... 5, 15

N.Y. Penal Law § 265.60 ................................................................. 5

N.Y. Penal Law § 265.61 ................................................................. 5

N.Y. Penal Law § 265.63 ................................................................. 5

N.Y. Penal Law § 265.64 ................................................................. 5

N.Y. Penal Law § 400.00 ................................................................. 7

**Other Authorities**

151 Cong. Rec. 17,371 (2005) ........................................................ 16

151 Cong. Rec. 18,085 (2005) ........................................................ 16

151 Cong. Rec. 18,919 (2005) ........................................................ 16

D.W. Webster et al., *Effects of Undercover Police Stings of Gun Dealers on the Supply of New Guns to Criminals* ..................... 9

Daniel W. Webster & Jon S. Vernick, *Spurring Responsible Firearms Sales Practices Through Litigation, in Reducing Gun Violence in America* 123 (Daniel W. Webster & Jon S. Vernick eds. 2013) .................................................................. 9

Daniel W. Webster et al., *Effects of a Gun Dealer's Change in Sales Practices on the Supply of Guns to Criminals*, 83 J. Urb. Health 778 (2006) ................................................................ 9

Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) .................................. 14

Everytown for Gun Safety, *Gun Violence in New York* (2022) ................ 4

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

Fed. R. App. P. 29 ..................................................................... 1

Glenn Thrush, *Firearm Kits Sold Online Fuel Epidemic of Violence*, N.Y. Times, Nov. 15, 2021 .................................... 7

Glenn Thrush, *New Federal Rule Has Done Little to Stem Spread of 'Ghost Guns'*, N.Y. Times, Dec. 16, 2022 .......................... 10

New York Police Department, *CompStat Report Covering the Week 12/5/2022 through 12/11/2022* ................................ 5

Press Release, City of N.Y., Mayor Adams Delivers Testimony to U.S. House Committee on Oversight and Reform on National Gun Violence Epidemic (June 8, 2022) .................................................................................. 5

## INTEREST OF *AMICI* AND
## SUMMARY OF ARGUMENT[1]

The City of New York and the Cities of Buffalo, Rochester, and Syracuse (collectively, "amici") submit this brief *amici curiae* in support of the State of New York's position that federal law does not bar the state legislature from enacting a gun-related public-nuisance statute, as codified at N.Y. Gen. Bus. Law (GBL) § 898-a to 898-e ("§ 898"), to hold members of the gun industry accountable for their unlawful or unreasonable business practices that cause harm in the state. As the Attorney General argues and the district court correctly held, neither the Protection of Lawful Commerce in Arms Act (PLCAA), the Commerce Clause, nor due process justifies invalidating § 898 on its face and hamstringing amici's efforts to stop misconduct endangering their residents' health and safety.

Amici have a strong interest in the proper resolution of this appeal because municipal authority to bring public-nuisance lawsuits under

---

[1] All parties have consented to the filing of this brief. *See* Fed. R. App. P. 29(a). No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E).

§ 898 is a critical tool in combating the scourge of gun violence. Despite law enforcement's best efforts to stem the tide by seizing unlawful firearms, there are still more than one thousand shooting incidents each year in the City of New York alone and hundreds of people die throughout the state from gun violence each year. Using § 898, municipalities can end the contributions to gun violence of those gun dealers that openly disregard not only their obligations under § 898 but also under the federal Gun Control Act and various state and local laws.

Amici have begun to use § 898 do just that—yielding a record of actual experience under the state law that the largely conjectural arguments of appellants and their supporters simply ignore. For example, the City of New York recently sued several gun dealers under the statute to secure permanent injunctions barring the dealers' continued participation in the unlawful sales of ghost guns—unserialized, user-assembled firearms untraceable by law enforcement—that have increasingly contributed to gun crimes at an alarming rate. Buffalo and Rochester similarly sued members of the gun industry in recent months for directly contributing to the illegal-firearms market in those cities, including by selling ghost guns to purchasers within their

jurisdictions. These suits are an important component of amici's efforts to reduce the illegal gun violence in our communities.

Amici fully join the State's arguments, which show that § 898 is not preempted by PLCAA or unconstitutional under the Commerce Clause or Due Process Clause. We write to highlight how amici's actual experience suing under § 898 provides further reason to reject plaintiffs' claims. For example, PLCAA bars only certain "civil liability actions"—it preempts certain lawsuits, not statutes. Thus, this facial challenge to § 898 based on PLCAA could only even theoretically succeed if appellants could show that no lawsuit that § 898 authorizes could escape preemption. And amici's actual § 898 lawsuits squarely refute any such claim: by using § 898 to target those who sell unlawful ghost guns to purchasers within our borders, New York municipalities have demonstrated that PLCAA, even as plaintiffs and their amici stintingly construe it, cannot possibly bar every viable civil action that could be brought under § 898.

So too, amici's actual suits do not raise the supposed Commerce Clause or due process concerns that appellants imagine might be implicated by other hypothetical suits under § 898. Amici's plainly valid uses of § 898—although certainly not the only valid applications of the

statute—alone provide sufficient basis to deny appellants' pre-enforcement facial challenge. No amount of speculation about § 898's possible outer limits justifies facial invalidation in light of the statute's valid applications stemming the tide of gun violence.

## ARGUMENT

### NEW YORK CITIES' USE OF § 898 AGAINST UNLAWFUL GUN INDUSTRY PRACTICES REFUTES APPELLANTS' FACIAL CHALLENGE

**A. New York cities are stanching the flow of illegal guns harming our communities through § 898 lawsuits targeting knowing unlawful conduct.**

The ability of cities and other local governments to enforce gun laws within their jurisdictions is critical, and § 898 is one of the primary vehicles through which New York municipalities can do so. On average in New York State, 870 people die and thousands more are wounded every year from gun violence, with historical trends showing a sharp increase in deaths in recent years. Everytown for Gun Safety, *Gun Violence in New York* (2022), *available at* https://perma.cc/TLY2-FLJ7. The economic impact of gun violence is also enormous, costing the State over $11 billion per year. *Id.* While law enforcement has made inroads, with police successfully removing thousands of illegal guns from the

street each year, seizures alone cannot halt the flood that threatens to drown amici's communities in gun violence.[2] *See* New York Police Department, *CompStat Report Covering the Week 12/5/2022 through 12/11/2022, available at* https://perma.cc/NQQ6-NEMY (noting 1,240 shooting incidents in New York City in 2022 despite 15% reduction since 2020).

Section 898, which authorizes municipal corporation counsels to bring enforcement actions, GBL § 898-d, enables amici to address these illegal weapons at their source. In *City of New York v. Arm or Ally, LLC*, No. 22-CV-05525 (S.D.N.Y. 2022), the City of New York brought the first municipal § 898 lawsuit to address the spread of ghost guns. Amended Complaint, ECF No. 33 ("NYC Compl."). The defendant firearm dealers sold ghost-gun parts on their websites to anyone with an internet connection and a credit card, despite laws specifically banning such transactions, including the federal Gun Control Act, New York's Penal Law, and New York City's Administrative Code. *See infra* Part B.1; 18 U.S.C. §§ 922–923; N.Y. Penal Law §§ 265.01(9)–(10), 265.60, 265.61,

---

[2] *See* Press Release, City of N.Y., Mayor Adams Delivers Testimony to U.S. House Committee on Oversight and Reform on National Gun Violence Epidemic (June 8, 2022), *available at* https://perma.cc/N49A-4DUQ.

265.63, 265.64; N.Y.C. Admin. Code §§ 10-301(8), (22), 10-314. As a result, the defendants, over the course of several months, shipped hundreds of their products directly to New York addresses, including addresses within New York City.[3]

The consequences of easy access to untraceable firearms have been both predictable and devastating. Many of these dealers' unlawful ghost guns ended up in the hands of criminal defendants.[4] Ghost-gun seizures have also exploded, with the NYPD recovering 263 such firearms in 2021 compared with just 17 in 2018, a 15-fold increase, with a new record high expected for 2022.[5] These untraceable weapons have already been used in several murders, robberies, shootings, and domestic-violence incidents in the City of New York. Ghost-gun arsenals and assembly lines are also increasingly springing up around the City, some belonging to individuals who cannot lawfully possess a handgun—such as because of their age or

---

[3] *See* Decl. of Deputy Sheriff Francesca Rosa ¶¶ 4–5, *City of N.Y. v. Arm or Ally, LLC*, No. 22-CV-05525 (S.D.N.Y. June 29, 2022), ECF No. 6; Decl. of Sgt. Richard LeBlond ¶¶ 7–39, *City of N.Y. v. Arm or Ally, LLC*, No. 22-CV-05525 (S.D.N.Y. June 29, 2022), ECF No. 7; *See* Decl. of Eric Proshansky ("Proshansky Decl.") ¶ 9, *City of N.Y. v. Arm or Ally, LLC*, No. 22-CV-05525  (S.D.N.Y. June 29, 2022), ECF No. 8.

[4] *See* Proshansky Decl. ¶¶ 10–12.

[5] *See* Decl. of Inspector Courtney Nilan ¶ 11, *City of N.Y. v. Arm or Ally, LLC*, No. 22-CV-05525 (S.D.N.Y. June 29, 2022), ECF No. 5.

criminal history (NYC Compl. ¶ 41). *See* 18 U.S.C. § 922(g) (listing federal prohibitions); N.Y. Penal Law § 400.00(1)(a) (age restriction). And in recent years, tens of thousands more of these weapons have been seized nationwide (NYC Compl. ¶ 50).[6]

Rochester and Buffalo have brought lawsuits raising similar claims. In *City of Buffalo v. Smith & Wesson Brands, Inc.*, No. 815602/2022 (Erie Cnty. Sup. Ct. 2022), Buffalo sued to halt gun industry members' unlawful and unreasonable business practices, including sales of ghost-gun parts directly to Buffalo consumers. Verified Complaint, NYSCEF No. 2 ("Buffalo Compl."). Rochester did the same in *City of Rochester v. Smith & Wesson Brands, Inc.*, No. E2022010581 (Monroe Cnty. Sup. Ct. 2022). Verified Complaint, NYSCEF No. 2 ("Rochester Compl."). Those cities face a similar influx of ghost guns despite laws banning them, with police seizing dozens of those guns in both jurisdictions in 2021 alone (Buffalo Compl. ¶ 275; Rochester Compl. ¶ 284).

---

[6] *See* Glenn Thrush, *Firearm Kits Sold Online Fuel Epidemic of Violence*, N.Y. Times, Nov. 15, 2021, at A1.

Using § 898, amici can halt ghost-gun retailers' misconduct harming New Yorkers. In the City of New York's litigation, four out of five of the defendants settled, agreeing to permanent injunctions barring their continued sale of ghost guns in New York City and effectively ending their contribution to this menace.[7] And the district court preliminarily enjoined the last defendant from trading in ghost guns, observing that the City was likely to succeed on the merits of its public-nuisance claims, including under § 898.[8] Rochester and Buffalo will likely achieve the same result.

Amici's prior experience targeting the sources of illegal firearms further proves that this strategy directly improves public safety. In the mid-2000s, the City of New York sued 27 dealers for engaging in illegal firearm sales to halt the flow of those weapons into the City, resulting in the appointment of a federal monitor who required the dealers to comply

---

[7] *See* Stipulation and Order of Settlement, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Aug. 16, 2022), ECF No. 42; Stipulation and Order of Settlement, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Aug. 24, 2022), ECF No. 49; Stipulation and Order of Settlement, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Sept. 6, 2022), ECF No. 51; Stipulation and Order of Settlement, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Oct. 13, 2022), ECF No. 68.

[8] *See* Order Granting Plaintiff's Motion for a Preliminary Injunction, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Oct. 31, 2022), ECF No. 74.

with the Gun Control Act. The lawsuits dramatically altered the likelihood that firearms traced to those dealers would be recovered in New York City: after the lawsuits, the odds of NYPD seizure were 84.2% lower than before the City's litigation.[9] Legal action by other municipalities has had a similar impact.[10] Indeed, research has shown that improving even a single gun dealer's sales practices can materially reduce the availability of illegal weapons in an entire municipality.[11]

Preventing cities from suing under § 898 would rob amici of a powerful tool to address the rising threat of gun violence. While the U.S. Department of Justice has expressed its own concerns about ghost guns,[12] addressing the proliferation of illegal firearms cannot be left only to the federal government, which is farthest removed from the local

---

[9] Daniel W. Webster & Jon S. Vernick, *Spurring Responsible Firearms Sales Practices Through Litigation*, *in Reducing Gun Violence in America* 123, 128 (Daniel W. Webster & Jon S. Vernick eds. 2013).

[10] D.W. Webster et al., *Effects of Undercover Police Stings of Gun Dealers on the Supply of New Guns to Criminals*, 12 Injury Prevention 225, 229 (2006) (observing 46.4% decrease in the supply of new guns to criminals following lawsuits in Chicago).

[11] *See* Daniel W. Webster et al., *Effects of a Gun Dealer's Change in Sales Practices on the Supply of Guns to Criminals*, 83 J. Urb. Health 778, 778–79, 783 (2006) (changing behavior of a single Milwaukee dealer resulted in a 44% decrease in all new crime guns recovered in that city).

[12] Statement of Interest of the United States of America 2–3, *City of N.Y. v. Arm or Ally LLC*, No. 22-CV-05525 (S.D.N.Y. Oct. 6, 2022), ECF No. 64.

harms that these weapons cause.[13] Instead, States and municipalities must have the legal authority to join their federal partners in ensuring that the laws regulating firearms are fully enforced. Section 898 empowers cities to do just that, and the statute is vital to stemming the flow of illegal guns into amici's communities.

### B. New York cities' use of § 898 is not preempted under PLCAA, even as appellants construe it.

As the Attorney General has demonstrated, PLCAA in no way preempts § 898, and amici join the State's arguments in full (*see* Brief for Appellee 20–33). In fact, PLCAA does not preempt any *statute* at all: instead, PLCAA bars only certain "qualified civil liability *action[s]*," without limiting a state's authority to pass laws regulating guns. 15 U.S.C. § 7902 (emphasis added); *see also id.* § 7903(5)(A) (describing exceptions to preemption based on the characteristics of particular "action[s]" or "case[s]"). And because PLCAA creates a defense for only certain lawsuits while permitting others, facially invalidating § 898 would at minimum require a showing that this defense would apply to

---

[13] Glenn Thrush, *New Federal Rule Has Done Little to Stem Spread of 'Ghost Guns'*, N.Y. Times, Dec. 16, 2022, at A1.

10

every conceivable lawsuit that could be brought under § 898. As amici's use of § 898 targeting the illegal ghost-gun trade confirms, appellants come nowhere close to making that showing.

PLCAA does not preempt § 898 on its face because appellants cannot show that the statute is invalid "in all of its applications." *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012) (quotation marks omitted); *see N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) ("*NYSRPA v. Cuomo*") (in firearm lawsuit, noting that facial challenges to legislative enactments are "the most difficult" to raise (quotation marks omitted)). As this Court has explained, a facial preemption challenge must meet this exacting standard whenever federal law does not bar "the act of regulation itself," such that the Court "might find some applications of [a] statute preempted and others not." *Green Mt. R.R. Corp. v. Vermont*, 404 F.3d 638, 644 (2d Cir. 2005) (quotation marks omitted); *see Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 50 (2d Cir. 2010) (facial preemption requires invalidity "in all cases"). By targeting specific types of lawsuits and not state legislative enactments themselves, PLCAA plainly does not prevent the State from adopting laws regulating firearms. So appellants must demonstrate that

11

every *lawsuit* that § 898 authorizes would be subject to PLCAA dismissal. *See Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 580 (1987) (rejecting facial preemption where statute "would not conflict with federal law" in at least some circumstances); *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982) (existence of "hypothetical or potential conflict" insufficient to preempt state statute).

Appellants cannot carry this burden. As the State explains, PLCAA's text, purpose, and legislative history show that the statute preserves governmental authority to pass laws that apply directly to firearm sales and marketing, just as § 898 does (Brief for Appellee 20–33). But even under appellants' unduly narrow view of state authority under PLCAA, amici's suits targeting sellers of illegal ghost guns are not preempted because they target knowing violations of concrete legal obligations arising under federal, state, and local law. Whatever other conduct § 898 may be used against, the statute at minimum validly provides municipalities with the means to enjoin gun dealers' violations of such federal, state, and local laws. The existence of these plainly valid uses of § 898 means that appellants cannot satisfy the high bar for establishing that § 898 is facially invalid in all of its applications.

Appellants' speculation about other applications of § 898 that might not involve knowingly unlawful conduct or proof of proximate causation do not support a facial challenge.

### 1. PLCAA does not preempt litigation targeting unlawful gun distribution.

Amici's lawsuits under § 898—though far from the only types of claims permissible under § 898—have all involved gun industry members that violated multiple federal, state, and local laws, in addition to their obligations under § 898, by selling ghost guns and their components to New Yorkers. Through these independent violations, these defendants without question engaged in "conduct either unlawful in itself or unreasonable under all the circumstances," as prohibited by § 898. GBL § 898-b(1). And in doing so, these defendants also violated even the limited interpretation that appellants and their amici would impose on PLCAA's exception for: these defendants violated gun industry members' "concrete regulatory obligations" (*see, e.g.*, Brief for Appellant ("App. Br.") 19), their obligations at "the point of sale or marketing" (Brief of Amici Curiae State of Montana and 19 Other States ("Montana Br.") 12), as well

as "concrete, knowable requirements" for firearm sales (Brief of Amicus Curiae National Rifle Association of America, Inc. ("NRA Br.") 22).

As amici detailed in their ghost-gun lawsuits, the defendants' liability under § 898 was predicated in part on their violation of several federal, state, and, in some instances, local firearm laws (NYC Compl. ¶¶ 28–37; Buffalo Compl. ¶¶ 266–274; Rochester Compl. ¶¶ 266–274). The Gun Control Act, for example, requires firearms to bear serial numbers that dealers must record, yet ghost guns and their parts generally lack serial numbers entirely. 18 U.S.C. § 923(i), (g)(1)(A); *see also* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) (confirming that Gun Control Act applies to "weapon parts kits" and modern frames and receivers). Nor may dealers generally sell ghost-gun parts online or without conducting background checks, as these defendants had. 18 U.S.C. § 922(a)(2), (c), (d), (t). And, dealers must provide the recipient with a secure gun storage or safety device, 18 U.S.C. § 922(z), yet there was no indication that defendants complied with this mandate either.

In addition to these federal violations, the defendants' ghost-gun sales violated several New York criminal laws, the existence of which

14

multiple defendants acknowledged in settling the claims against them. Several Penal Law provisions criminalize the possession and sale of ghost guns as well as unfinished frames and receivers for ghost-gun assembly. N.Y. Penal Law §§ 265.01(9)–(10); 265.60, 265.61, 265.63, 265.64. Similarly, local law in New York City also prohibits the transfer or sale of these ghost-gun parts. N.Y.C. Admin. Code §§ 10-301(8), (22), 10-314.

Amici's litigation thus falls well within PLCAA's predicate exception,[14] even under appellants' narrow interpretation of it. Section 898 imposes liability for firearm sales or marketing "that is either unlawful in itself or unreasonable under all the circumstances," GBL § 898-b, and PLCAA expressly permits lawsuits in which a gun seller "knowingly violated a State or Federal statute applicable to the sale or marketing" of their products. 15 U.S.C. § 7903(5)(A)(iii); *see also* § 7903(7) (defining "State" as including "any political subdivision thereof"). Thus, by directly violating several other laws that specifically

---

[14] While this brief will refer to 15 U.S.C. § 7903(5)(A)(iii) as the "predicate exception," consistent with common usage, that name can be somewhat misleading. The relevant inquiry is not necessarily whether a particular statute is a predicate and therefore excepted from PLCAA's reach, but rather whether the "action" under consideration is one "in which a manufacturer or seller of a qualified product knowingly violated" a qualifying predicate. § 7903(5)(A)(iii).

prohibit the possession and sale of ghost guns, the ghost-gun defendants in amici's litigation were properly responsible under § 898 for the public nuisance that their own conduct created. *Cf. Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 148 (4th Dep't 2012) (PLCAA does not bar complaint alleging violation of "federal, state, and local statutes").

Moreover, lawsuits under § 898 to enforce gun laws accords fully with PLCAA's structure and purpose. The prohibition on certain gun-industry lawsuits was born out of a concern that litigants might abuse the common law to hold industry members liable for harms "solely caused by others" where the local legislature had not spoken on the issue. 15 U.S.C. § 7901(a)(6), (7), (8). As even PLCAA's most ardent defenders acknowledged, PLCAA preserved the ability to bring suits to halt gun industry members' own violations of laws regulating their products. *See* 151 Cong. Rec. 18,085 (2005) (statement of Sen. Larry Craig) (PLCAA "does not shield" gun industry members "if in any way they violate State or Federal law"); 151 Cong. Rec. 17,371 (2005) (statement of Sen. Jeff Sessions) (PLCAA intended to bar liability only where defendant followed "Federal regulations" and "the State legislature's requirements"); 151 Cong. Rec. 18,919 (2005) (statement of Sen. Jon Kyl) ("bottom line" is that

16

if "conduct is so bad that it is a violation of law, no lawsuit is precluded under our bill in any way"); *see also City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403 (2d Cir. 2008) (noting that legislators agreed that violating "firearms-specific" statutes would expose gun industry members to liability). That understanding was enshrined in not only the predicate exception, but also in PLCAA's exception for actions alleging negligence per se. 15 U.S.C. § 7903(5)(A)(ii); *see, e.g.*, *Agni v. Wenshall*, 522 F.3d 279, 286 (2d Cir. 2008) (negligence per se defined by statutory violation); *Elliott v. City of N.Y.*, 95 N.Y.2d 730, 734 (2001) (violating state statutory duty "constitutes negligence per se, or may even create absolute liability").

Beyond amici's ghost-gun litigation, § 898 also authorizes other enforcement suits that clearly survive PLCAA. In addition to the examples provided by the Attorney General (*see, e.g.*, Brief for Appellee 17, 54), amici note that, to take one example, the NRA's own amicus brief suggests that the Connecticut Supreme Court correctly held that claims of wrongful advertising under that state's unfair-trade-practices statute were not preempted under the predicate exception (NRA Br. 24–25 (citing *Soto v. Bushmaster Firearms Int'l, LLC*, 331 Conn. 53, 129, 131 (2019))).

17

That generally applicable law does not impose a narrowly tailored regulatory requirement, but instead broadly prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Similarly, § 898 permits a cause of action targeting "deceptive acts and practices and false advertising," incorporates New York's statutes on the same subject, GBL Article 22-A, and expressly regulates the firearm industry directly—unlike the Connecticut statute. GBL §§ 898-a(1)–(3); 898-b(2). Thus, by even the NRA's own logic, there are additional lawsuits beyond amici's own suits that may be validly brought under § 898 and that PLCAA does not preempt.

Other examples of § 898's plainly constitutional applications abound. The Gun Control Act forbids sellers from facilitating straw purchases, making it unlawful to sell a firearm if the seller has "reasonable cause" to believe that the buyer intends to transfer to another whose possession would be unlawful. 18 U.S.C. § 922(d)(11). Section 898 explicitly permits legal action if gun industry members do not institute reasonable controls to prevent such purchases. GBL §§ 898-a(2), 898-b(2). PLCAA also does not preempt at least some

negligence actions, including for negligent entrustment, if the seller "reasonably should know" that a buyer will "use the product in a manner involving unreasonable risk" of injury. 15 U.S.C. § 7903(5)(A)(ii), (B). Section 898 could serve as a vehicle for municipal enforcement in that area too. *See* GBL § 898-b(1) (permitting lawsuits for conduct "unreasonable under all the circumstances"). There are more permissible applications of § 898, but just these examples, as well as the examples provided by amici's own actual lawsuits, require rejection of appellants' efforts to facially invalidate the statute.

> **2. The predicate exception's mens rea and proximate cause requirements are no barrier to amici's ghost-gun lawsuits.**

Appellants also advance the radical notion that even if § 898 is a qualifying PLCAA predicate, the Court should still facially invalidate § 898 because someone might use it to sue a defendant whose conduct was unknowing or who did not proximately cause the challenged harm (App. Br. 33–38). According to appellants, § 898 is facially invalid because it permits enforcement where a gun industry member either "knowingly" or "recklessly" contributes to a condition endangering public safety, GBL § 898-b(1), while the predicate exception exempts only those actions

where a defendant "knowingly violated" the predicate statute (App. Br. 34). 15 U.S.C. § 7903(5)(A)(iii).

As the Attorney General has shown (Brief for Appellee 25–26, 33–36), this argument is not only forfeited, but turns the concept of a facial challenge on its head. PLCAA requires determining whether specific lawsuits are "qualified civil liability action[s]," 15 U.S.C. § 7902, and the contention that some § 898 lawsuits but not others might meet that definition warrants *denying* a facial challenge, not granting it. Appellants' claims require them to show that all suits that § 898 authorizes will necessarily be preempted, not merely that they can conjure certain "imaginary ones" that might be barred. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (quotation marks omitted). The Court should not cast aside judicial restraint to speculate about whether PLCAA might require certain § 898 suits to be dismissed if a defendant were to meet its burden of establishing lack of knowledge or proximate cause. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (party asserting preemption bears burden of establishing it); *Richmond Boro Gun Club v. City of N.Y.*, 97 F.3d 681, 686 (2d Cir. 1996)

(courts should avoid "unnecessary, premature, or unduly broad pronouncements on constitutional issues").

In any event, amici's ghost-gun litigations confirm that there are plainly valid applications of § 898 for which the existence of knowledge or proximate cause is no issue. To begin, the defendants in those suits could not credibly claim that they did not knowingly violate the prohibitions against ghost guns. Even under the criminal law, a "knowing" violation requires only "knowledge of facts and attendant circumstances that comprise a violation of the statute, not specific knowledge that one's conduct is illegal." *United States v. Weintraub,* 273 F.3d 139, 147 (2d Cir. 2001).

Accordingly, there is no doubt that the ghost-gun defendants knowingly engaged in unlawful conduct. Selling the parts for ghost guns in an effort to skirt firearm regulations is an integral part of these dealers' business model: as the dominant ghost-gun manufacturer has admitted, between 50% and 75% of its business depends on selling the components of these illegal weapons (NYC Compl. ¶¶ 21–24). These defendants then knowingly shipped hundreds of these items directly to New York without performing background checks, without using serial

21

numbers, and without requiring any valid license or permit, all while providing simple instructions and the necessary hardware for their customers to "finish" their fully operational weapons (*Id.* ¶¶ 3, 25–26, 55–93). Any suggestion that they did not know that they were violating the law by directly contributing to the spread of these illegal guns in New York is thus unsustainable.

Nor does the predicate exception's requirement that the defendant proximately caused the harm justify invalidating § 898. Appellants argue that proximate cause requires showing that a defendant's conduct is "sufficiently close" to the resulting injury (App. Br. 36), but here too there is no question that at least some lawsuits validly brought under § 898 will meet that test. Once again, as demonstrated by amici's actual enforcement actions, defendants in those cases sold and shipped ghost-gun parts directly to New Yorkers, and it was their business model to market guns that would be impossible or difficult for law enforcement to trace. One defendant shipped at least 258 such packages in a one-month span, and in at least four cases directly to individuals who were later arrested in New York City with ghost guns—including one man charged with murder (NYC Compl. ¶ 77).

22

There is thus little doubt that their conduct was close enough to proximately cause the proliferation of illegal firearms that amici sought to abate, as well as many of the offenses that those guns are used to commit. *See* GBL § 898-c (§ 898 violations that "result[] in harm to the public" are public nuisances); *City of N.Y. v Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 626–27 (2009) (legislature may define conduct that interferes with or endangers the public as public nuisance); *Copart Indus., Inc. v. Consol. Edison Co.*, 41 N.Y.2d 564, 568 (1977) (public nuisances are "offense[s] against the State" that governments may seek to enjoin). In fact, the ghost-gun defendants contributed "directly" to these harms. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133–34 (2014); *see N.Y. Trap Rock Corp. v. Clarkstown*, 299 N.Y. 77, 84 (1949) (cities need not "wait until some citizen is sick or dead" to abate nuisance); *City of N.Y. v. A-1 Jewelry & Pawn, Inc.*, 247 F.R.D. 296, 347 (E.D.N.Y. 2007) (proximate cause is a "policy requirement" that is less stringent in public nuisance actions than "individual negligence cases").[15]

---

[15] *People v. Sturm, Ruger & Co.*, 309 A.D.2d 91 (1st Dep't 2003), is not to the contrary. That case involved attempts to hold gun manufacturers liable in public nuisance for otherwise "lawful commercial activity," *id.* at 103, which the defendants' sales of ghost-gun parts clearly was not.

23

**C. New York cities' use of Section 898 likewise does not offend the Commerce Clause or the Due Process Clause.**

Appellants also press Commerce Clause and due process claims, but none of these concerns arise in amici's § 898 litigation, particularly as the litigation pertains to ghost guns. Section 898's permissible scope is not limited only to actions like these, but the existence of these examples demonstrate that appellants cannot prevail on a facial challenge. *See Wash. State Grange*, 552 U.S. at 449.

To start, appellants fail to show that § 898 is facially invalid under the Commerce Clause. *See, e.g.*, *N.Y. Alliance of Auto. Mfrs., Inc. v Currey*, 610 F. App'x 10, 13 (2d Cir. 2015) (applying standard "no set of circumstances" test to facial dormant Commerce Clause challenge). Appellants' argument that § 898 discriminates against or unduly burdens interstate commerce is irrelevant to the litigation regarding ghost guns. The Gun Control Act, New York's Penal Law, and the New York City Administrative Code regulate these weapons in the same manner, regardless of whether they originated in-state or out-of-state, and enforcing those laws through § 898 cannot be said to "clearly discriminate[] against interstate commerce." *Town of Southold v. Town*

24

*of E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007). Although appellants point out that § 898 itself permits enforcement only if the firearm has been "shipped or transported in interstate commerce," GBL § 898-a(6); 15 U.S.C. § 7903(4), the underlying illegality of ghost guns is the same irrespective of whether a § 898 suit can be brought. Should any purely intrastate ghost-gun transactions actually exist that § 898 might not reach—which appellants never alleged, and which must be addressed on an as-applied basis—the burden from the laws prohibiting those transactions is effectively the same. And no one disputes that any purely intrastate activity of a similar nature, if it exists, would be unlawful, even if not under § 898.

Appellants' and their supporters' concern that suits under § 898 may impact extraterritorial conduct similarly founders when considered in light of amici's ghost-gun litigation (App. Br. 43–45; Montana Br. 21–22). First, while appellants focus on the possibility that some gun dealer might one day face § 898 liability despite no direct New York contact, that hypothetical concern does not apply to the ghost-gun defendants: collectively, they shipped thousands of their products directly into the state (NYC Compl. ¶¶ 59, 68, 77). Any extraterritorial effect from § 898's

application to them was thus no more than "incidental" to the New York transactions in which these defendants engaged, vitiating any Commerce Clause challenge. *Grand Riv. Enters. Six Nations v. Boughton*, 988 F.3d 114, 124 (2d Cir. 2021); *see Kassel v. Consol. Freightways Corp.*, 450 U.S. 662, 670 (1981) (states retain power to make laws governing matters of local concern even given extraterritorial effect). Appellants' hypotheticals concerning liability for a defendant who "does not engage in *any* commerce in New York" or who "sells a firearm in Ohio that later finds it ways into the hands of someone who criminally misuses it in New York" (App. Br. 44–45) thus bear little resemblance to § 898's bedrock application to unlawful ghost-gun sales directly in New York municipalities.[16]

Second, the ghost-gun defendants' conduct was also unlawful under federal law that governed them in their home states, such that any

---

[16] Other doctrines may also limit § 898's reach in some cases, including choice of law, presumptions against extraterritoriality, and personal jurisdiction. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (reviewing defendant's New York contacts for personal jurisdiction); *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (applying law of the jurisdiction with most significant interest in dispute); *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002) (reviewing legislative intent to determine New York statute's extraterritorial reach).

claimed extraterritorial effect from § 898 does not implicate the Commerce Clause. As explained above, the Gun Control Act made it unlawful to sell ghost guns and their parts without, for example, conducting background checks and imprinting serial numbers on these products. Section 898 thus provided a means to halt conduct that federal law already forbade and did not itself alter the federal obligations that these defendants were already violating. *See Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (Commerce Clause analysis looks to whether "practical effect" of statute unduly interferes with another state's "legitimate regulatory regime[]").

The unlawful activity forming the basis for amici's litigation also illustrates the fatal flaws in the due process challenge that appellants and their supporters advance. They contend that § 898 does not "give fair notice of conduct that is forbidden" (App. Br. 51; NRA Br. 14–20), but the defendants in amici's litigation engaged in ghost-gun transactions that federal, New York, and local laws clearly forbade—and that was thus plainly "unlawful in itself or unreasonable under all the circumstances." GBL § 898-b(1); *see Copeland v. Vance*, 893 F.3d 101, 110 (2d Cir. 2018) (facial vagueness challenge fails if it can be constitutionally applied to

27

"anyone"); *Richmond Boro Gun Club*, 97 F.3d at 684 (facial vagueness requires showing that "all applications are impermissibly vague").

In light of these unquestionably valid applications, this Court should not permit appellants to cut off any opportunity for courts to implement § 898, "to construe the law in the context of actual disputes," and "to accord the law" any "limiting construction[s]" that may or may not be necessary. *Wash. State Grange*, 552 U.S. at 450. This Court has repeatedly expressed the preference for "'as applied' vagueness challenge[s], grounded in the facts and context of a particular set of charges," over facial ones. *See NYRSPA v. Cuomo*, 804 F.3d at 265–66 (rejecting facial challenge to firearm statute under *Salerno* as well as less stringent standard). Plaintiffs' challenge falters under that established principle of restraint.

## CONCLUSION

The district court's dismissal of appellants' complaint should be affirmed.

Dated:  New York, NY
        January 13, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for City of New York

By: _____

JONATHAN SCHOEPP-WONG
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-2275
jschoepp@law.nyc.gov

RICHARD DEARING
CLAUDE S. PLATTON
JONATHAN SCHOEPP-WONG
  *of Counsel*

*Additional signatories on*
*following page*

29

CAVETTE A. CHAMBERS
*Corporation Counsel*
*of the City of Buffalo*
Attorney for the City of Buffalo

By:   /s/ Robert E. Quinn
      Robert E. Quinn
      65 Niagara Square
      1103 City Hall
      Buffalo, New York 14202


LINDA S. KINGSLEY
*Corporation Counsel*
*of the City of Rochester*
Attorney for the City of Rochester

By:   /s/ Salvatore C. Badala
      Salvatore C. Badala
      NAPOLI SHKOLNIK PLLC
      400 Broad Hollow Road, Suite 305
      Melville, New York 11747


SUSAN R. KATZOFF, ESQ.
*Corporation Counsel*
*of the City of Syracuse*
Attorney for the City of Syracuse

By:   /s/ Danielle R. Smith
      Danielle R. Smith, Esq.
      300 City Hall
      Syracuse, New York 13202

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 5,888 words, not including the table of contents, table of authorities, this certificate, and the cover.

JONATHAN SCHOEPP-WONG