# No. 22-1374

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

NATIONAL SHOOTING SPORTS FOUNDATION, INC., BERETTA U.S.A. CORP., DAVIDSON'S, INC., GLOCK INC., CENTRAL TEXAS GUN WORKS, HORNADY MANUFACTURING COMPANY, LIPSEY'S LLC, OSAGE COUNTY GUNS LLC, RSR GROUP, INC., SHEDHORN SPORTS, INC., SIG SAUER, INC., SMITH & WESSON INC., SPORTS SOUTH LLC, SPRAGUE'S SPORTS INC., STURM, RUGER & COMPANY, INC.,
*Plaintiffs-Appellants*,

v.

LETITIA JAMES, in her official capacity as New York Attorney General,
*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of New York, No. 21-cv-1348

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN[*]
NICHOLAS M. GALLAGHER[*]
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com
*Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellants*

January 27, 2023

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs certify as follows:

**National Shooting Sports Foundation, Inc.** has no parent company, and no publicly held corporation owns 10% or more of NSSF stock.

Beretta Holdings S.A. is the parent company of plaintiff **Beretta U.S.A. Corp.** and owns more than 10% of Beretta U.S.A. Corp. **Beretta U.S.A. Corp.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Beretta U.S.A. Corp.** stock.

**CTCHGC LLC d/b/a Central Texas Gun Works** has no parent company. **CTCHGC LLC d/b/a Central Texas Gun Works** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **CTCHGC LLC d/b/a Central Texas Gun Works** stock.

**Davidson's, Inc.** has no parent company. **Davidson's, Inc.** is not publicly traded, and there therefore is no publicly held corporation that owns 10% or more of Davidson's, Inc. stock.

**GLOCK, Inc.** has no parent corporation, and there is no publicly held corporation owning 10% or more of **GLOCK, Inc.** stock.

**Hornady Manufacturing Company** has no parent company, and there is no publicly held corporation that owns 10% or more of **Hornady Manufacturing Company** stock.

**Lipsey's, LLC** has no parent company. **Lipsey's, LLC** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Lipsey's, LLC** stock.

**Osage County Guns** has no parent company, and there is no publicly held corporation that owns 10% or more of **Osage County Guns** stock.

**RSR Group, Inc.** has no parent company. **RSR Group, Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **RSR Group, Inc.** stock.

**Shedhorn Sports Inc.** has no parent company. **Shedhorn Sports Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Shedhorn Sports Inc.** stock.

**SIG Sauer, Inc.** is a wholly owned subsidiary of SIG SAUER US Holding LP. No publicly held corporation owns 10% or more of **SIG Sauer, Inc.** stock.

**Smith & Wesson Inc.** is a wholly owned subsidiary of Smith & Wesson Brands, Inc. Smith & Wesson Brands, Inc. is publicly traded.

**Sports South LLC** has no parent company. **Sports South LLC** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Sports South LLC** stock.

**Sprague's Sports Inc.** has no parent company. **Sprague's Sports Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Sprague's Sports Inc.** stock.

**Sturm, Ruger & Company, Inc.** has no parent company, and no publicly held corporation owns 10% or more of **Sturm, Ruger & Company, Inc.** stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES........................................................................ v

INTRODUCTION ................................................................................. 1

ARGUMENT ..................................................................................... 3

I.  Section 898 Authorizes Lawsuits That Are Preempted By The
    PLCAA .................................................................................. 5

    A.  Section 898 Is Not the Kind of Statute that Falls Within the
        PLCAA's Predicate Exception ............................................. 5

    B.  At a Minimum, §898 Is Preempted to the Extent it Authorizes
        Suits That Require Neither Knowing Violations Nor
        Proximate Cause .............................................................. 12

II. Section 898 Violates The Commerce Clause ............................... 15

    A.  Section 898 Discriminates Against Interstate Commerce................. 15

    B.  Section 898 Directly Regulates Out-of-State Conduct ...................... 19

III. Section 898 Violates The Due Process Clause ............................ 24

CONCLUSION ................................................................................. 29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
    LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Ass'n for Accessible Meds. v. Frosh*,
887 F.3d 664 (4th Cir. 2018)..............................................................................24

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..........................................................................................10

*Baldwin v. G. A. F. Seelig, Inc.*,
294 U.S. 511 (1935)..........................................................................................21

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986)..........................................................................................21

*Burrage v. United States*,
571 U.S. 204 (2014)..........................................................................................15

*C & A Carbone, Inc. v. Town of Clarkstown*,
511 U.S. 383 (1994)..........................................................................................18

*Chem. Waste Mgmt., Inc. v. Hunt*,
504 U.S. 334 (1992)..........................................................................................16

*City of N.Y. v. Beretta U.S.A. Corp.*,
315 F.Supp.2d 256 (E.D.N.Y. 2004)..................................................................6

*City of N.Y. v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008).......................................................................*passim*

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978)..........................................................................................18

*Dingelstedt v. United States*,
91 F.112 (2d Cir. 1898).......................................................................................9

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)..........................................................................................21

*Gonzales v. Carhart*,
550 U.S. 124 (2007)............................................................................................5

*Hamilton v. Beretta USA Corp.*,
750 N.E.2d 1055 (N.Y. 2001) ...................................................... 25, 26

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)......................................................................21

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992)......................................................................26

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009) ............................................. 7, 10, 13

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010).................................................................. 4, 12

*Kisor v. Wilkie*,
139 S.Ct 2400 (2019)...................................................................10

*Legato Vapors, LLC v. Cook*,
847 F.3d 825 (7th Cir. 2017) ................................................. 22, 23

*McDonald v. City of Chicago*,
561 U.S. 742 (2010).....................................................................25

*Minneapolis Star Trib. Co. v. Minn. Comm'r*,
460 U.S. 575 (1983).....................................................................25

*Ne. Bancorp, Inc. v. Bd. of Govs. of the Fed. Reserve Sys.*,
472 U.S. 159 (1985).....................................................................17

*New Eng. Power Co. v. New Hampshire*,
455 U.S. 331 (1982).....................................................................17

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
761 N.Y.S.2d 192 (N.Y. App. Div. 2003) ......................... 7, 15, 25, 26

*People v. Simmons*,
635 N.Y.S.2d 373 (N.Y. App. Div. 1995) ..........................................13

*Picard v. Magliano*,
42 F.4th 89 (2d Cir. 2022) ............................................................ 5, 12

*Rehaif v. United States*,
139 S.Ct. 2191 (2019) ........................................................................14

*Ruan v. United States*,
142 S.Ct. 2370 (2022) ........................................................................14

*Sam Francis Found. v. Christies, Inc.*,
784 F.3d 1320 (9th Cir. 2015) ............................................................24

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn. 2019) ..................................................................7

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ..............................................................................5

*United States v. Lopez*,
514 U.S. 549 (1995) ............................................................................16

*United States v. Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ................................................................25

*Yates v. United States*,
574 U.S. 528 (2015) ..............................................................................9

**Statutes**

15 U.S.C. §7901 .................................................................... *passim*

15 U.S.C. §7902(a) ................................................................................5

15 U.S.C. §7903 .................................................................... *passim*

15 U.S.C. §7903(5)(A) ..........................................................................5

Md. Gen. Health Code §2-802 ............................................................24

N.Y. Gen. Bus. Law §898-a ........................................................ 23, 27

N.Y. Gen. Bus. Law §898-b ...................................................... *passim*

N.Y. Gen. Bus. Law §898-c ................................................................20

N.Y. Penal Law §15.05 ........................................................................13

N.Y. Penal Law §240.45 ........................................................................24

**Other Authorities**

2021 Sess. Law News of N.Y., ch.237 (S. 7196) (McKinney's) ............................21

*City of Buffalo Files Lawsuit Against Firearms Companies*,
City of Buffalo (Dec. 20, 2022), https://bit.ly/3whSaHJ ......................................5

Gov. Andrew M. Cuomo, *Governor Cuomo Signs First-in-the-Nation
Gun Violence Disaster Emergency to Build a Safer New York*
YouTube (July 6, 2021), https://bit.ly/3UyZoSx ...................................................1

*Mayor Evans Announces City Lawsuit Against Firearms Companies*,
City of Rochester (Dec. 20, 2022) https://bit.ly/3JAk21J. ...................................5

Restatement (Second) of Torts (1965) ...................................................................13

Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its
Unity*, Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS...........................28

**INTRODUCTION**

When New York passed General Business Law §§898-a-e ("§898"), Governor Cuomo said out loud what is clear on the face of the statute, but what the state now struggles to obfuscate in trying to defend it: The point of §898 is to "right the wrong" that New York believes Congress committed when it enacted the Protection of Lawful Commerce in Arms Act ("PLCAA"), which protects members of the firearms industry against state-law efforts to make them pay for violence perpetrated by criminals using firearms that were lawfully manufactured, marketed, and sold. Gov. Andrew M. Cuomo, *Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York* at 35:00-38:15, YouTube (July 6, 2021), https://bit.ly/3UyZoSx. As the Governor explained, §898 endeavors to "reinstate the public nuisance liability for gun manufacturers" that the PLCAA forbids states from imposing. *Id.* The problem for New York is that the PLCAA remains on the books—and under the Supremacy Clause, states do not get to right perceived congressional wrongs. State efforts to "reinstate" what federal law prohibits are instead preempted.

New York claims that, notwithstanding the Governor's candid admission, it has found a way around the PLCAA. By its telling, the PLCAA is really all about legislative primacy, not ending abusive litigation against the firearms industry. The state thus insists that the law's "predicate exception," 15 U.S.C. §7903(5)(A)(iii),

empowers states to resurrect the very lawsuits the PLCAA was enacted to inter through the simple expedient of codifying the same novel theories that Congress derided as an "abuse of the legal system," *id.* §7901(a)(6), into a statute that singles out the firearms industry.  Congress did not enact such a self-defeating law.  To the contrary, the predicate exception makes clear in its text what sort of "statute[s] applicable to the sale or marketing of" firearms it saves:  those that impose the kinds of concrete obligations or prohibitions that one can "knowingly violate[]," like a law prohibiting manufacturers and sellers from "ma[king] any false entry in" required records of their sales, *id.* §7903(5)(A)(iii)(I), or from "aid[ing]" or "abet[ing]" a straw purchase, *id.* §7903(5)(A)(iii)(II).  A law that, like §898, simply tells industry members to "act reasonably" when making, selling, or marketing guns, and allows them to be held liable for the distant consequences of others' misconduct, manifestly does not fit that bill.  Any other conclusion "would allow the predicate exception to swallow the statute."  *City of N.Y. v. Beretta*, 524 F.3d 384, 403 (2d Cir. 2008).

Section 898 also violates the Commerce Clause.  By its terms, §898 applies only to commerce involving firearms and related products that have moved in interstate commerce; it thus facially discriminates against interstate commerce.  New York invokes the predicate exception once again, arguing that by saving some state laws from preemption, Congress somehow empowered states to discriminate against interstate commerce (and regulate extraterritorially to boot).  But the predicate

exception says not a word about empowering states to enact laws that otherwise would violate the Commerce Clause. It simply saves from preemption some laws that states already have the power to enact. The state protests that §898 does not discriminate against interstate commerce in *all* its applications. But that hardly saves it from invalidation as to those in which it does. And New York does not even try to deny that §898 regulates firearms commerce *anywhere*, so long as it has some ultimate effect in New York. That is the definition of an unconstitutional extraterritorial state law.

Finally, as to vagueness, New York's principal argument is that §898 just means what preexisting New York nuisance law means. If that is right, then §898 is even more obviously preempted given this Court's holding in *City of New York*. But in all events, not even New York has an explanation of what §898's new lexicon ("reasonable controls and procedures") actually requires. This Court should reverse.

## ARGUMENT

At the outset, New York describes this suit as a "facial challenge" no fewer than 25 times, using that mantra to undergird an argument that plaintiffs must show that §898 could not constitutionally be applied to anyone under any circumstances. New York either misunderstands plaintiffs' claims or misunderstands what it means for a law to be invalid "on its face"—or perhaps it misunderstands both.

Plaintiffs have asked this Court to invalidate §898 to the extent it is preempted by the PLCAA; directly regulates out-of-state commerce; discriminates against and unduly burdens interstate commerce; and is void for vagueness. To be sure, those claims are "facial" in the sense that the constitutional defects are apparent in the text of §898—i.e., "on its face." But that does not necessarily mean that they would require the Court to invalidate the statute in its entirety. For instance, it is clear from the text of §898 alone that the statute regulates transactions that take place entirely in other states. Opening.Br.44-45. But that simply means that §898 is invalid under the Commerce Clause as applied to lawsuits seeking to hold industry members liable for out-of-state conduct. *See* pp.23-24, *infra*. It does not mean that the whole statute has to go. So too with plaintiffs' preemption claims. To the extent the Court thinks there may be non-preempted applications of the law (e.g., lawsuits based on a knowing violation of a statute *other* than §898), it can simply hold that §898 cannot validly be applied to hold industry members liable for third parties' criminal misuse of firearms that industry members lawfully manufactured, marketed, or sold, and leave for another day whether the statute has any other potentially valid applications.

In other words, as is true of much constitutional litigation, plaintiffs' claims "ha[ve] characteristics of both" "facial [and] as-applied challenge[s]." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "The label is not what matters." *Id.* All that matters is whether the applications of §898 plaintiffs have challenged are "discrete

and well-defined" and "likely to occur." *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007). They plainly are. Indeed, many of the plaintiffs have *already* been sued under §898 multiple times, in lawsuits pressing exactly the theories that plaintiffs have sued here to block. *See, e.g.*, *City of Buffalo Files Lawsuit Against Firearms Companies*, City of Buffalo (Dec. 20, 2022), https://bit.ly/3whSaHJ; *Mayor Evans Announces City Lawsuit Against Firearms Companies*, City of Rochester (Dec. 20, 2022), https://bit.ly/3JAk21J.[1] There is thus no need to wait for §898 to be applied to acknowledge the defects that are plain on its face.

## I. Section 898 Authorizes Lawsuits That Are Preempted By The PLCAA.

### A. Section 898 Is Not the Kind of Statute that Falls Within the PLCAA's Predicate Exception.

Under the PLCAA, any "civil action" against firearms industry members seeking "damages … or other relief, resulting from the criminal or unlawful misuse of a [firearm] by … a third party," "may not be brought in any Federal or State court." 15 U.S.C. §§7902(a), 7903(5)(A). New York does not deny that §898 authorizes "civil actions" that fit that bill. Instead, New York insists that §898 escapes the

---

[1] That likely explains why New York has not challenged plaintiffs' standing or claimed any other justiciability obstacles. "[A] plaintiff has suffered an injury-in-fact and has standing to bring a case … 'where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). All three elements are plainly satisfied here.

PLCAA's reach because it is "a State or Federal statute applicable to the sale or marketing of" firearms within the meaning of the PLCAA's predicate exception. *Id.* §7903(5)(A)(iii). By New York's telling, the PLCAA is really about preserving state *legislative* primacy, not ending abusive litigation against the firearms industry, and so gives state legislatures carte blanche to codify novel tort theories under which firearms manufacturers and sellers may be held liable for injuries resulting from third parties' unlawful misuse of firearms, so long as legislatures do so through statutes that explicitly apply to the sale or marketing of firearms. That is not what the PLCAA or its predicate exception says, and it is obviously not what Congress intended.

To be sure, the PLCAA was prompted by efforts to abuse *the courts* to impose liability "based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States [that] do not represent a bona fide expansion of the common law." *Id.* §7901(a)(7). But it was the prospect "of imposing liability on an entire industry for harm that is solely caused by others," not the prospect of doing so without the imprimatur of a state legislature, that Congress declared "an abuse of the legal system." *Id.* §7901(a)(6). Indeed, several of the lawsuits that prompted Congress to enact the PLCAA—including the *City of New York* case—involved both common-law *and statutory* public-nuisance claims. *See, e.g.*, *City of N.Y. v. Beretta U.S.A. Corp.*, 315 F.Supp.2d 256, 262 (E.D.N.Y. 2004);

*People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 202 (N.Y. App. Div. 2003). New York's claim that the PLCAA authorizes reinstatement of exactly the kind of litigation that Congress enacted it to terminate thus must be met with greatest of skepticism and confirmed only by the plainest of text. Yet all New York offers is a wooden reading at odds with text, context, case law, and common sense.

At the outset, this Court has already squarely rejected the proposition that the predicate exception can be read literally to cover every conceivable "State or Federal statute applicable to the sale or marketing of" firearms. 15 U.S.C. §7903(5)(A)(iii); *see City of N.Y.*, 524 F.3d at 400-03.[2] As with all statutory text, the meaning of that phrase instead "must be determined here by reading [it] in the context of the surrounding language and of the statute as a whole." *Id.* at 400. And reading it to sweep in any and all laws that apply to the firearms industry, even if they just codify the same vague tort-law duties of care the PLCAA was enacted to eliminate, "would allow the predicate exception to swallow the statute." *Id.* at 403. Congress did not leave anyone guessing as to what it sought to accomplish in the PLCAA. The statute

---

[2] That suffices to defeat New York's reliance on *Soto v. Bushmaster Firearms International, LLC*, 202 A.3d 262 (Conn. 2019). New York itself admits that *Soto* "concluded that the predicate exception is applicable to actions under a generally applicable [state] statute," NY.Br.29, which is precisely the argument *City of New York* rejected, 524 F.3d at 400-03—as did *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1132 (9th Cir. 2009). *Soto* thus cannot be reconciled with the law of this Circuit or any other.

says on its face that its "purpose[]" is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. §7901(b)(1). Whether those "causes of action" are legislatively authorized is of no moment. Any reading of the predicate exception that would resuscitate such suits is therefore a non-starter.

New York tries to distinguish *City of New York*, arguing that "the relevant point of similarity is whether a statute 'clearly can be said to regulate the firearms industry.'" NY.Br.27 (quoting 524 F.3d at 402). But this Court's conclusion that the predicate exception does *not* cover statutes that are not specific to the firearms industry hardly compels the conclusion that it *does* cover *all* statutes that are. If anything, that proposition is even more obviously foreclosed by the statutory text. The words "State or Federal statute applicable to the sale or marketing of" firearms do not stand alone. They are immediately preceded by the words "knowingly violated," and they are followed by two illustrative examples, each of which involves a violation of a concrete obligation or prohibition (namely, "ma[king] any false entry in" a required record of sales, 15 U.S.C. §7903(5)(A)(iii)(I), and "aid[ing]" or "abet[ing]" a straw purchase, *id.* §7903(5)(A)(iii)(II)). Together, those textual indicators confirm that the predicate exception covers only laws that impose the

8

kinds of concrete obligations or prohibitions that industry members can "knowingly violate," not laws that, like §898, simply impose vague duties of care.

To be sure, those enumerated exemplars are not exhaustive. But basic principles of interpretation confirm that other laws "includ[ed]" in the predicate exception must be like the other enumerated examples—i.e., they must impose the kinds of concrete obligations or prohibitions that industry members can knowingly violate. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 543 (2015) ("[W]e rely on the principle of noscitur a sociis—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'"); *Dingelstedt v. United States*, 91 F.112, 112 (2d Cir. 1898) ("[I]t is a familiar rule of interpretation that general descriptive terms are often restricted in their meaning by reason of their collocation with other words and phrases."). And just as in *City of New York*, that conclusion is reinforced by the PLCAA's enumerated findings and purposes, as allowing states to authorize the exact same suits that Congress derided as an "abuse of the legal system," 15 U.S.C. §7901(a)(6), so long as they codify "theories without foundation in hundreds of years of the common law and jurisprudence of the United States," *id.* §7901(a)(7), would once again "allow the predicate exception to swallow the statute." *City of N.Y.*, 524 F.3d at 403; *see also,*

*e.g., Ileto*, 565 F.3d at 1138-40 (rejecting argument "that Congress intended" to save whatever theories a state "codifie[s] … in its civil code").

The state derides that reading as "extratextual." NY.Br.23. But it simply follows from basic principles of interpretation. The whole act rule and canons like *noscitur a sociis* are "'traditional tools' of construction" that courts not only can, but must, consider when interpreting statutes. *Kisor v. Wilkie*, 139 S.Ct 2400, 2414-15 (2019). They are no more "extratextual" than the rule that an "act cannot be held to destroy itself." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). Those tools exist not to empower courts to rewrite statutes, but to help them interpret the words Congress enacted. And they all confirm that the *text* of the PLCAA makes plain that the predicate exception applies only to laws, such as record-keeping requirements or prohibitions on sales to prohibited persons, that impose concrete obligations or prohibitions on industry members, not laws that just impose amorphous duties of care.

In reality, it is New York's reading of the predicate exception that is flatly incompatible with the text of the PLCAA. New York contends that the Protection of Lawful Commerce in Arms Act is designed to protect neither lawful arms nor commerce in them, but rather the right of state legislatures (as opposed to state courts) to decide whether to try to bankrupt the firearms industry. *See* NY.Br.2-3, 6, 31-32. As New York sees it, the PLCAA allows all 50 states to subject firearms

industry members to any and all novel theories of liability—including theories that would expose them to crippling liability "for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended," 15 U.S.C. §7901(b)(1)—so long as they codify those theories in a statute. That state-empowering construction finds no support in the statute and would produce the "absurd" result of making it trivially easy to evade the PLCAA's core command. *City of N.Y.*, 524 F.3d at 401-03.

Contrary to the state's telling, the PLCAA does not make any "judgment that the States' legislatures—as opposed to their courts—could engage in 'a bona fide expansion of the common law.'" NY.Br.31. It simply derides the kinds of lawsuits it forecloses as seeking to "expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States." 15 U.S.C. §7901(a)(7). Congress' objection to "attempt[s] to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees," *id.* §7901(a)(8), is every bit as applicable to state statutes that empower courts to impose liability on anyone who manufactures or sells firearms "unreasonably" as to common-law doctrines that do the same.

The absence of any distinction in the PLCAA's findings and purposes between common-law and statutory nuisance claims is all the more telling given that several

of the cases Congress enacted the PLCAA to shut down, including *City of New York* and *Sturm, Ruger*, involved both common-law *and* statutory nuisance claims. When Congress went to the trouble of articulating precisely what it enacted the PLCAA to accomplish, it said not a word about saving common-law-grounded claims that have the imprimatur of the state legislature, whether through a firearms-specific statute or otherwise. Congress instead explained that the goal of PLCAA is "[t]o prohibit *causes of action* against [firearms industry members] for the harm solely caused by the … unlawful misuse of [firearms and related products] by others." *Id.* §7901(b)(1) (emphasis added). The notion that states can avoid that prohibition through the simple expedient of codifying the same "causes of action" the PLCAA was enacted to "prohibit" beggars belief.

## B. At a Minimum, §898 Is Preempted to the Extent it Authorizes Suits That Require Neither Knowing Violations Nor Proximate Cause.

New York's arguments as to intent and proximate cause fare no better.[3] The state argues that "the knowledge requirement" in the predicate exception "limits the

---

[3] The state accuses plaintiffs of seeking an "advisory opinion" on this question. NY.Br.33. But the state nowhere denies that plaintiffs face a "credible threat" of suits seeking to hold them liable based on "reckless" conduct that does not satisfy traditional proximate-cause principles. *See Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022). The state thus once again seems to be laboring under the misimpression that preenforcement as-applied challenges are verboten. *But see, e.g.*, *Reed*, 561 U.S. at 194. The state further argues that this argument was not pressed below. But the state does not deny that this argument is subsumed within the broader preemption claim. And in all events, it would be bizarre to apply forfeiture to prevent a plaintiff from raising an argument that *narrows* the scope of relief initially sought.

types of cases that may be brought pursuant to a qualifying predicate statute, not the nature of the predicate statute itself." NY.Br.25. That is both wrong and beside the point. As explained, the knowledge requirement is statutory text that informs the meaning of the other words in the predicate exception, including the types of statutes it saves. *See* Part I.A., *supra*. And in all events, that argument is not responsive to plaintiffs' argument that §898 is *at the very least* preempted to the extent it authorizes suits that do *not* require the knowledge the PLCAA demands. The predicate exception saves "action[s] in which a manufacturer or seller of a qualified product knowingly violated a State … statute." 15 U.S.C. §7903(5)(A)(iii). It does not save actions in which an industry member "recklessly" violated a state statute. Yet §898 authorizes exactly that. *See* N.Y. Gen. Bus. Law §898-b(1). Section 898 is thus preempted *at least* vis-à-vis actions alleging only recklessness, which is different, and much lower, than knowingly violating the law. *Cf.* Restatement (Second) of Torts §3 (1965) (contrasting "an actual knowledge, as opposed to a negligent-conduct," standard, and citing *Ileto*, 565 F.3d at 1155).[4]

---

[4] New York argues that its state standard for *criminal* recklessness "is tantamount to knowledge as interpreted by federal courts." NY.Br.34; *see* NY.Br.26. True or not, §898 does not require criminal recklessness; it requires only recklessness simpliciter. And under New York law, recklessness is less demanding than knowledge. *Compare* N.Y. Penal Law §15.05(2) (defining "knowingly"), *with id.* §15.05(3) ("recklessly"); *see also, e.g.*, *People v. Simmons*, 635 N.Y.S.2d 373, 374 (N.Y. App. Div. 1995) ("Because the degree of culpability required by the statute is

New York acknowledges that §898 "eliminates any requirement of specific intent," but argues that "general intent to take on a substantial and unjustifiable risk of harm" can satisfy a knowledge requirement. NY.Br.35. That argument cannot be reconciled with the predicate exception's plain text, which exempts only claims that a defendant "knowingly *violated* a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. §7903(5)(A)(iii) (emphasis added). Nor can it be reconciled with the Supreme Court's consistent rejection of arguments that scienter requirements apply only to some elements of a federal statute. *Ruan v. United States*, 142 S.Ct. 2370, 2376-78 (2022); *Rehaif v. United States*, 139 S.Ct. 2191, 2195-97 (2019). And, again, New York's reading "would allow the predicate exception to swallow the" PLCAA's clear *rule* that state efforts to impose liability on industry members "for harm caused by firearms that were lawfully distributed into primary markets" are "preempt[ed]." *City of N.Y.*, 524 F.3d at 403.

Section 898 also suffers from the independent problem that it does not appear to require proximate cause. New York argues that §898's requirement that a violation "results in harm to the public," N.Y. Gen. Bus. Law §898-c(1), "leaves room for notions of proximate causation," NY.Br.35. But there is a reason New York fails to cite any case supporting that made-for-litigation claim: "[R]esults in" is a

---

actual knowledge, it was reversible error to charge the jury that it could find defendant guilty based upon what he should have known.").

classic articulation of *but-for* causation. *See, e.g.*, *Burrage v. United States*, 571 U.S. 204, 213-14 (2014). The PLCAA requires *proximate* cause, not just but-for causation. 15 U.S.C. §7903(5)(A)(iii). That is no accident. Efforts to evade proximate-cause requirements in pre-PLCAA suits was one of the abuses Congress sought to correct. *See id.* §7901(a)(3), (a)(5), (a)(6), (b)(1); *id.* §7903(5)(A)(v). Moreover, New York has nothing to say about the problem that, if §898 *does* require proximate cause, then it is essentially a nullity, as the New York courts have already concluded that proximate-cause principles would not permit a firearms manufacturer or seller to be held liable for a third party's misuse of a lawfully manufactured and sold firearm. *See Sturm, Ruger*, 761 N.Y.S.2d at 202; Opening.Br.38. Section 898 thus either authorizes suits the PLCAA preempts or authorizes nothing at all.

## II. Section 898 Violates The Commerce Clause.

### A. Section 898 Discriminates Against Interstate Commerce.

On its face, §898 regulates interstate commerce—which is something only Congress may do. Section 898 makes it unlawful (1) to "contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a *qualified product*" and (2) to fail to "utilize reasonable controls and procedures to prevent [their] *qualified products* from being possessed, used, marketed or sold unlawfully in New York state." N.Y. Gen. Bus. Law §898-b (emphases added). Commerce involving "qualified products" is

all §898 reaches. But §898 defines the term "qualified product" to "have the same meaning" Congress gave it in the PLCAA, *id.* §898-a(6), and the PLCAA applies only to firearms and related products "that ha[ve] been shipped or transported *in interstate or foreign commerce*," 15 U.S.C. §7903(4) (emphasis added).

What all this means is simple, but devastating. Like the PLCAA, §898 does not apply to manufacturing, selling, or marketing firearms and related products made and sold in New York. It instead "only reaches suits that 'have an explicit connection with or effect on interstate commerce.'" *City of N.Y.*, 524 F.3d at 394 (quoting *United States v. Lopez*, 514 U.S. 549, 562 (1995)); *see* Opening.Br.40-41 & n.2. But unlike Congress, New York lacks the authority *either* to target interstate commerce *or* to exempt in-state acts from liability. *See Chem. Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992).

New York contends that if §898 is a predicate statute under 15 U.S.C. §7903(5)(A)(iii), then §898 cannot violate the Commerce Clause because the Commerce Clause operates against states "only where Congress's commerce powers are in fact dormant." NY.Br.36.[5] That elides the critical distinction between a savings clause and an authorization. As the cases New York cites make clear, the

---

[5] New York also makes the puzzling suggestion that plaintiffs' preemption and Commerce Clause claims stand or fall together. NY.38 n.2. To be sure, the PLCAA *informs* the Commerce Clause analysis in some ways, *see, e.g.*, p.19, *supra*. But §898 violates the Commerce Clause regardless of whether it is preempted.

Commerce Clause's constraints on states are displaced only as to "state actions which [Congress] *plainly authorizes*." *Ne. Bancorp, Inc. v. Bd. of Govs. of the Fed. Reserve Sys.*, 472 U.S. 159, 174 (1985) (emphasis added). When Congress *preempts* state law subject to exceptions, it is not "authorizing" states to do anything they could not already do. It is simply identifying which among the laws states already had the power to enact are exempt from preemption. *See, e.g.*, *New Eng. Power Co. v. New Hampshire*, 455 U.S. 331, 340-41 (1982) (holding that the Federal Power Act's savings clause does not authorize Commerce Clause violations). Consistent with that understanding, nothing in §7903(5)(A)(iii) (or anywhere else in the PLCAA) says a word about empowering states to discriminate against out-of-state commerce, let alone to regulate out-of-state transactions. It is not as if, for instance, the predicate exception saves *only* state laws that do one of those things. The exception merely identifies certain types of laws that are exempt from the PLCAA's preemptive scope. The PLCAA thus cannot solve §898's Commerce Clause problems.

New York protests that it "incorporate[d] PLCAA's definition" of "qualified products" "to ensure that [§898] falls within an exception authorized by PLCAA." NY.Br.39 n.3. That may explain the decision to regulate only interstate commerce,

17

but it does not excuse it.[6]  While "[t]he Supreme Court has recognized that States may adopt federal statutory definitions" to "avoid preemption," NY.Br.39 n.3, it has never held or even suggested that a state may borrow a federal definition that contains an interstate-commerce hook without running into the Commerce Clause. Of course not.  An interstate-commerce hook, while *required* for a *federal* law affecting commerce, is *forbidden* for a *state* law; states lack to power to single out interstate commerce for special burdens.  *City of Philadelphia v. New Jersey*, 437 U.S. 617, 626-27 (1978).  That §898 treats "in-state and out-of-state businesses" alike, NY.Br.39-40, likewise makes no difference.  A state law that discriminates on its face in one respect does not become unproblematic just because it does not discriminate in every respect.  *See, e.g.*, *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 391 (1994) ("The ordinance is no less discriminatory because in-state or in-town processors are also covered by the prohibition.").

New York next contends, and the district court agreed, that there is no wholly intrastate gun industry in New York, so the discrimination apparent on §898's face has no real-world impact.  NY.Br.40-42.  That argument fails as a matter of basic logic.  The real-world impact is that the statute incentivizes wholly in-state

---

[6] Nor does it make any sense.  New York did not have to confine its statute to products regulated by the PLCAA to avoid preemption.  To the contrary, New York would have *avoided* preemption had it crafted its statute to apply only to firearms that are *not* covered by the PLCAA.

commerce and disincentivizes out-of-state commerce, which is classic discrimination regardless of how much wholly intrastate commerce presently exists. By New York's telling, a state seeking to attract a new in-state industry, and thereby keep all the benefits of that industry for itself, would have carte blanche to try to do so by imposing special penalties on those who sell their products in interstate commerce. The Constitution is not so easily evaded. Moreover, by New York's "logic," §898 must flunk *Pike* balancing too, as the burdens of the law fall entirely on interstate commerce. Opening.Br.49-50. New York tries to dodge that result by reiterating its actually-there-is-no-in-state-market argument, NY.Br.43, but a law need not be discriminatory to unduly burden interstate commerce. New York also emphasizes its health and safety aims, NY.Br.45, but it conspicuously omits any mention of Congress' findings that suits like those §898 authorizes impose "unreasonable burden[s]" "on interstate … commerce." 15 U.S.C. §7901(a)(6). At the very least, that suffices to push plaintiffs' *Pike* claim past the low motion-to-dismiss bar.

## B.    Section 898 Directly Regulates Out-of-State Conduct.

Section 898 violates the Commerce Clause for the independent reason that an industry member can be held liable under §898 even if all of its relevant conduct took place entirely outside of New York and was lawful where it occurred. That is evident on the face of the statute. Section 898 has two operative provisions. *See*

N.Y. Gen. Bus. Law §898-c ("A violation of subdivision one or two of section eight hundred ninety-eight-b of this article that results in harm to the public shall hereby be declared to be a public nuisance."). Under the first, an industry member's "sale, manufacturing, importing or marketing" *outside of New York* can form the basis of liability if a New York court decides that that out-of-state conduct "contribute[d] to a condition in New York state that endangers the safety or health of the public." *Id.* §898-b(1). Under the second, "[a]ll gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state" "shall" be liable if a New York court decides that they failed to "establish and utilize reasonable controls and procedures" *in their out-of-state operations* "to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state." *Id.* §898-b(2). In both cases, out-of-state conduct can form the basis for liability if a New York court decides that it had unwanted effects in the state. That is the definition of unconstitutionally regulating out-of-state conduct.

New York does not deny that industry members can be held liable under §898 for out-of-state conduct. Indeed, New York cagily admits that §898 "might involve [regulating] some out-of-state conduct." NY.Br.49. That is rather like saying that "some" bourbon "might" be made in Kentucky, given that 97.1% of the industry members that §898 regulates are located out-of-state. *See* Compl. ¶58-60. In reality,

§898 is *designed* to go after those who manufacture and sell their products out of state, as evidenced by the legislative findings highlighting statistics indicating that most firearms used in crimes in New York were purchased in other states. *See* 2021 Sess. Law News of N.Y., ch.237, §1 (S. 7196) (McKinney's).

Against that backdrop, the state takes three swings at avoiding invalidation under the Commerce Clause. All three miss.

First, New York notes that §898 "on its face[] is aimed at conduct that *results in* unsafe conditions 'in New York state.'" NY.Br.46 (emphasis added). True—but that is beside the point. "[T]he 'Commerce Clause … precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, *whether or not the commerce has effects within the State*[.]'" *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (emphasis added) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982) (plurality op.)). Accordingly, "[w]hen a [New York] statute" imposes liability on actors for acts that happened out of state, the statute must be "struck down" to that extent *even if* on its face it "is addressed only to sales … in New York." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579, 583 (1986). Far from saving the statute from invalidation, the fact that §898 hits out-of-state conduct only if it "results in" in-state effects just repeats the errors New York made in *Brown-Forman* (and *Baldwin v. G. A. F. Seelig, Inc.*, 294 U.S. 511 (1935)).

Second, New York argues that states have "authority to regulate dangerous 'products that are brought into or are otherwise within the borders of the State.'" NY.Br.50 (citation omitted)). This too is true—but all it means is that a state may impose liability on actors for their *in-state* acts involving dangerous products. It certainly is "unremarkable and uncontroversial" that states may regulate "in-state sales" (or, for that matter, in-state crimes committed with firearms). NY.Br.50 (quoting *Legato Vapors, LLC v. Cook*, 847 F.3d 825, 828 (7th Cir. 2017)). But as *Legato Vapors* makes clear, it is equally "unremarkable and uncontroversial" that states may *not* regulate *out-of-state* conduct just because it has downstream effects in the state or the actor in question does other business in the state.

Indeed, it is ironic that New York invokes *Legato Vapors*, as that case is perhaps the most analogous to this one in all the Federal Reports. *Legato Vapors* involved an Indiana statute that "impos[ed] detailed requirements … on out-of-state manufacturing operations" for e-cigarettes. 847 F.3d at 827. The statute "dictate[d] how out-of-state manufacturers must build and secure their facilities, operate assembly lines, clean their equipment, and contract with security providers, if any of their products are sold in Indiana." *Id.* at 830. That is exactly what New York has done (minus the "detailed" part) in §898-b(2), the reasonable-controls-and-procedures provision. Under that provision, an industry member can be held liable for failing to "institut[e] screening, security, inventory and other business practices

to prevent thefts of qualified products" *from its out-of-state facilities*.  N.Y. Gen. Bus. Law §898-a(2).  That explains why 20 states have filed an amicus brief protesting that New York has "reach[ed] beyond its own boundaries and regulate[d] the 'controls and procedures' of gun industry members nationwide."  Montana.Br.3.

As the Seventh Circuit made clear in *Legato Vapors*, the fact that each state has "ample authority to regulate in-state commerce in [allegedly injurious products] to protect the health and safety of its residents" did not give Indiana license to "directly regulat[e] *out-of-state* factories and commercial transactions" that may lead to in-state sales or other in-state consequences.  847 F.3d at 827 (emphasis added).  The Indiana law regulated "the services and commercial relationships between out-of-state manufacturers and their employees and contractors."  *Id.* at 833.  Because that is beyond any state's power, the law "violate[d] the dormant Commerce Clause prohibition against extraterritorial legislation" "[a]s applied to out-of-state [conduct]" regardless of whether that out-of-state conduct resulted in downstream in-state effects.  *Id.*  The same is true here, and §898 is equally unconstitutional.

New York's third and final argument—that §898 "has numerous applications to direct transactions with New York residents," NY.Br.50—is simply confused.  The Indiana law in *Legato Vapors* also had applications to transactions in Indiana.  But the fact that the statute had some valid applications did not preclude the court from vindicating the plaintiffs' challenge to its invalid ones.  The court simply held the

statute invalid as applied to out-of-state conduct. The Maryland law in *Association for Accessible Medicines v. Frosh*, 887 F.3d 664 (4th Cir. 2018), which prohibited "[a] manufacturer or wholesale distributor [from] engag[ing] in price gouging in the sale of an essential off-patent or generic drug," Md. Gen. Health Code §2-802(a), likewise applied to wholesale transactions that took place in Maryland—but that did not stop the court from invalidating it as applied to out-of-state transactions. Similar cases abound, *see, e.g.*, *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1322 (9th Cir. 2015) (en banc) (holding that a California law "facially violates the 'dormant' Commerce Clause," but invalidating it only to the extent it "regulat[es] sales outside the state of California"), and they light the way here: Section 898 is invalid under the Commerce Clause as applied to out-of-state conduct.

## III. Section 898 Violates The Due Process Clause.

Having spent much of its brief trying to distinguish §898 from New York's pre-PLCAA attempts to use its general nuisance laws to hold industry members liable for third-party gun violence, New York spends its final few pages insisting that §898 is *exactly* like those attempts—at least when it comes to the knowability of common-law duties. *See* NY.Br.52-53 & n.7 (arguing that §898 "incorporates well-worn legal concepts" from, *inter alia*, N.Y. Penal Law §240.45). If §898 really is just a firearms-industry-specific version of New York law that all agree is preempted by the PLCAA, then it too must be preempted. But in all events, New York's effort

to analogize to pre-PLCAA suits only underscores the vagueness problems with §898.[7]

New York argues that §898 is cabined by the pre-PLCAA New-York-state-court decision in *Sturm, Ruger*, which rejected liability "where the relationship between the complained-of conduct and the nuisance is 'too tenuous and remote.'" NY.Br.55 (quoting 761 N.Y.S.2d at 202). But as noted, if *that* is true, then §898 is a nullity, as that case rejected *all applications of the general nuisance suit to firearms manufacturers* under which liability would be triggered by third-party acts. *See* 761 N.Y.S.2d at 196 (holding that "gun manufacturers" generally "do not owe a 'duty to control the conduct of third persons so as to prevent them from harming others'" (quoting *Hamilton v. Beretta USA Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001)). Unless the state wants to stipulate that its new law is a nullity, this is nothing more

---

[7] New York argues that §898 should not face a higher level of vagueness scrutiny because the statute is concerned only with manufacturing, selling, and marketing of firearms, "not … the lawful possession of firearms." NY.Br.52.n.6. That contention is no more valid than the argument that a punitive tax on printer ink has nothing to do with freedom of the press. *Cf. Minneapolis Star Trib. Co. v. Minn. Comm'r*, 460 U.S. 575, 592-93 (1983). Though some types of firearms regulation are of course consistent with the Second Amendment, *see, e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010), the purchase of arms plainly implicates the right to keep and bear arms (and vice versa), *see, e.g.*, *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010). Laws that impede the ability to purchase constitutionally protected arms thus demand heightened due-process scrutiny.

than a dodge—which, ironically, shows that the due process concerns identified by the *Sturm, Ruger* and *Hamilton* courts remain as pressing today as 20 years ago.

At any rate, §898 is broader and less clear than the "well-worn" sources of law to which New York tries to analogize. Penal Law §240.45 and state common law limit nuisance liability to the direct consequences of a defendant's actions. Section 898, by contrast, allows liability merely for "recklessly" (and indirectly) "*contribut*[*ing*] *to* a condition in New York state that endangers the safety or health of the public," and it does not even appear to require proximate cause. N.Y. Gen. Bus. Law §898-b(1) (emphasis added). Those are differences in kind, not degree. Manufacturing, marketing, and selling firearms all indirectly "contribute" to just about every gun-related activity, for good or ill. But states may not "pursue every human act to its most remote consequences; 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 287 (1992) (Scalia, J., concurring in the judgment). That is why New York courts have made clear that "gun manufacturers" generally "do not owe a 'duty to control the conduct of third persons so as to prevent them from harming others'" under nuisance law. *Sturm, Ruger*, 761 N.Y.S.2d at 196 (quoting *Hamilton*, 750 N.E.2d at 1061). Section 898 eviscerates that "well-worn legal concept."

It also invents out of whole cloth a new form of nuisance liability for failing to implement "reasonable controls and procedures to prevent its qualified products from being possessed [or] used … in New York."  N.Y. Gen. Bus. Law §898-b(2).  New York contends that this novelty is no more vague than any other reasonableness requirement.  That ignores the definition of "reasonable controls and procedures" in §898-a(2), which "include[s]" not just concrete duties like "preventing deceptive acts and practices and false advertising" and "ensuring compliance with all provisions of article twenty-two-A of this chapter," but amorphous examples like "policies … instituting screening, security, inventory and other business practices to prevent thefts of qualified products."  What New York has in mind there is anyone's guess.  New York's own brief proves the point.  The state regurgitates the statutory language that speaks of "'screening, security, inventory and other business practices," claiming that these are "numerous illustrative examples of the required 'reasonable controls and procedures.'"  NY.Br.53.  But the point of the vagueness challenge is not that a wholesaler in (e.g.) Arizona, such as Plaintiff Davidson, does not know what "inventory… practices" are; the point is that it has no way of knowing what inventory practices vis-à-vis its wholly legal sales to licensed dealers in (e.g.) Missouri *a New York court would deem sufficiently "reasonable" to avoid liability* should a gun later legally sold to a Louisianan, resold to a Tennessean, then stolen

and brought to New York, be used in a crime.  The answer to that riddle—which New York cannot provide—is the crux of the due process problem.

None of that is an accident.  Section 898 is not meant to be pinned down or easily understood.  It is meant to serve as an open invitation to foist liability on firearms industry members for harms caused by unrelated third parties.  It is designed, in other words, "to bankrupt the industry."  Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*, Wash. Post (Mar. 18, 2000), https://wapo.st/2Zcp5KS.  Neither the PLCAA nor the Constitution tolerates that blatant effort to eviscerate lawful commerce in constitutionally protected arms.

# CONCLUSION

For the reasons set forth above, this Court should reverse.

Respectfully submitted,

s/Erin E. Murphy
PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN[*]
NICHOLAS M. GALLAGHER[*]
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

[*]Supervised by principals of the firm who are members of the Virginia bar

*Counsel for Plaintiffs-Appellants*

January 27, 2023

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because it contains 6,990 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

January 27, 2023

s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 27, 2023, an electronic copy of the foregoing was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

s/Erin E. Murphy
Erin E. Murphy