22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

# In the
# United States Court of Appeals
# For the Second Circuit

———————————————

August Term, 2023
Argued: November 3, 2023
Decided: July 10, 2025

Docket No. 22-1374-cv

———————————————

NATIONAL SHOOTING SPORTS FOUNDATION, INC., BERETTA U.S.A. CORP., DAVIDSON'S, INC., GLOCK INC., CENTRAL TEXAS GUN WORKS, HORNADY MANUFACTURING COMPANY, LIPSEY'S LLC, OSAGE COUNTY GUNS LLC, RSR GROUP, INC., SHEDHORN SPORTS, INC., SIG SAUER, INC., SMITH & WESSON INC., SPORTS SOUTH LLC, SPRAGUE'S SPORTS INC., STURM, RUGER & COMPANY, INC.,

*Plaintiffs-Appellants*,

—v.—

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS NEW YORK ATTORNEY GENERAL,

*Defendant-Appellee*.

———————————————

Before:     JACOBS, LOHIER, LEE, *Circuit Judges*.

National Shooting Sports Foundation, a trade association of manufacturers and wholesalers of firearms, and fourteen of its members, appeal from an order and judgment entered in the United States District Court for the Northern District of New York (D'Agostino, *J.*) dismissing their complaint challenging New York's gun-related public nuisance statute, N.Y. General Business Law § 898-a–e, which imposes liability for gun industry members who knowingly or recklessly

1

endanger the safety or health of the public through their sale or marketing of firearms. The complaint alleges that Section 898 is unconstitutional because it is preempted by the federal Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901–7903, violates the dormant Commerce Clause, and is so vague as to violate the Due Process Clause of the Fourteenth Amendment. The district court granted judgment in favor of New York's Attorney General, Letitia James, in her official capacity, because it determined that Section 898 was neither preempted by PLCAA nor constitutionally infirm. On appeal, we find that Plaintiffs-Appellants have not met their burden in this facial, preenforcement challenge to demonstrate that Section 898 is unenforceable in all its applications. We further conclude that, on its face, Section 898: (1) falls within PLCAA's predicate exception clause and thus is not preempted, (2) does not violate the principles of interstate commerce, and (3) is not void for vagueness. Therefore, we **AFFIRM** the judgment of the district court.

Judge Jacobs concurs in a separate opinion.

———————————

MATTHEW D. ROWEN (Paul D. Clement, Erin E. Murphy, Trevor W. Ezell, Nicholas M. Gallagher, *on the brief*), Clement & Murphy, PLLC, Alexandria, VA, *for Plaintiffs-Appellants*.

DENNIS FAN, Senior Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, New York, NY, *for Defendant-Appellee*.

Lawson E. Fite, Marten Law LLP, Portland, OR, *for Professor Albert Lin, amicus curiae in support of Defendant-Appellee*.

Elizabeth B. Wydra, Brianne J. Gorod, Brian R. Frazelle, Miriam Becker-Cohen, Constitutional Accountability Center, Washington, DC, *for the Constitutional*

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

Accountability Center, *amicus curiae in support of Defendant-Appellee.*

Patrick Derocher, Cate Baskin, Steven Wickman, Arnold & Porter Kaye Scholer LLP, Chicago, IL; Michael D. Schissel, Lisa Cordara, W. Stewart Wallace, Arnold & Porter Kaye Scholer LLP, New York, NY; Arthur Luk, Arnold & Porter Kaye Scholer LLP, Washington, DC, *for Brooklyn and Buffalo Community Activists and Gun Violence Victim Families, amici curiae in support of Defendant-Appellee.*

Steven C. Wu, Chief, Appeals Division, John T. Hughes, Assistant District Attorney, *for Alvin L. Bragg, Jr., District Attorney, New York County, amicus curiae in support of Defendant-Appellee.*

Caitlin Halligan, Adam K. Hersh, Ekaterina Stynes, Zachary Smith, Selendy Gay Elsberg PLLC, New York, NY, *for Everytown for Gun Safety Support Fund, Giffords Law Center to Prevent Gun Violence, Brady, and New Yorkers Against Gun Violence, amici curiae in support of Defendant-Appellee.*

Jennifer E. McDonald, Downs Rachlin Martin PLLC, Burlington, VT, *for Ryan Busse, amicus curiae in support of Defendant-Appellee.*

Sarah A. Hunger, Deputy Solicitor General, *for* Jane Elinor Notz, Solicitor General of the State of Illinois, Chicago, IL; Anna W. Gottlieb, Assistant Attorney General, *for* Kwame Raoul, Attorney General of the State of Illinois, Chicago, IL, et al., *for Illinois, California, Connecticut, Delaware, District Of Columbia, Hawai'i, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, Oregon, Pennsylvania, Rhode Island, Vermont,*

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

> Washington, and Wisconsin, *amici curiae in support of Defendant-Appellee.*
>
> Ryan K. Quillian, Covington & Burling LLP, Washington, DC, *for Doctor Daniel W. Webster, amicus curiae in support of Defendant-Appellee.*
>
> Richard Dearing, Claude S. Platton, Jonathan Schoepp-Wong, of Counsel, *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for the City of New York and the Cities of Buffalo, Rochester, and Syracuse, amici curiae in support of Defendant-Appellee.*
>
> James R. Saywell, Jones Day, Cleveland, OH; Noel J. Francisco, C. Kevin Marshall, Brett J. Wierenga, Jones Day, Washington, DC, *for the National Rifle Association of America, Inc., amicus curiae in support of Plaintiffs-Appellants.*
>
> Austin Knudsen, Attorney General, David M.S. Dewhirst, Solicitor General, Kathleen L. Smithgall, Assistant Solicitor General, Montana Department of Justice, Helena, MT, *for Montana and 19 Other States, amici curiae in support of Plaintiffs-Appellants.*

---

EUNICE C. LEE, *Circuit Judge*:

National Shooting Sports Foundation ("NSSF"), a trade association of manufacturers and wholesalers of firearms, and fourteen of its members (collectively, "Appellants"), appeal from an order and judgment entered in the United States District Court for the Northern District of New York (D'Agostino, *J.*)

dismissing their complaint challenging New York's gun-related public nuisance statute, N.Y. General Business Law § 898-a–e, which imposes liability for gun industry members who knowingly or recklessly endanger the safety or health of the public through their sale or marketing of firearms. The complaint alleges that Section 898 is unconstitutional because it is preempted by the federal Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. §§ 7901–7903, violates the dormant Commerce Clause, and is so vague as to violate the Due Process Clause of the Fourteenth Amendment. The district court granted judgment in favor of New York's Attorney General, Letitia James, in her official capacity (the "State"), because it determined that Section 898 is neither preempted by PLCCA nor constitutionally infirm. On appeal, we find that Appellants have not met their burden in this facial, preenforcement challenge to demonstrate that Section 898 is unenforceable in all its applications. We further conclude that, on its face, Section 898: (1) falls within PLCAA's predicate exception clause and thus is not preempted, (2) does not violate the principles of interstate commerce, and (3) is not void for vagueness. Therefore, we **AFFIRM** the judgment of the district court.

## BACKGROUND

**I.      Statutory and Legal Landscape**

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

We begin with a brief overview of the relevant statutes and legal precedents governing civil liability for gun manufacturers and distributors in New York.

PLCAA is a federal statute enacted in 2005 "to prohibit causes of action" against gun industry members[1] "for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."  15 U.S.C. § 7901(b)(1).  More specifically, it bars any "qualified civil liability action," defined as:

> a civil action . . . brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party.

*Id*. §§ 7902(a), 7903(5)(A).  In other words, PLCAA generally establishes that gun manufacturers and distributors cannot be held civilly liable for harm caused by their products when that harm stems from the criminal or unlawful actions of others.

---

[1] While PLCAA does not use the term "gun industry member," Section 898 does.  For purposes of this opinion, "gun industry member" refers to entities "engaged in the sale, manufacturing, distribution, importing or marketing of firearms, ammunition, ammunition magazines, and firearms accessories," N.Y. Gen. Bus. Law § 898-a(4), to which both PLCAA and Section 898 apply.  *See also* 15 U.S.C. § 7901(b)(1).

However, as relevant here, PLCAA provides that qualified civil liability actions do not include actions in which a gun industry member "knowingly violated a State or Federal statute applicable to the sale or marketing of" firearms, and where "the violation was a proximate cause of the harm" alleged. *Id.* § 7903(5)(A)(iii). This provision is referred to as PLCAA's "predicate exception" because it applies only where the manufacturer or seller has committed "an underlying (or predicate) statutory violation." *Dist. of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 168 (D.C. 2008); *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 390 (2d Cir. 2008) (adopting the appellation).

The parties here disagree as to the purposes of PLCAA and its predicate exception. Appellants, relying on the statement of purposes provided in the statute itself, argue that the statute was intended to end attenuated theories of liability for gun manufacturers and distributors. *See* Appellants' Br. at 6–7 (citing 15 U.S.C. § 7901(b)(1)). The State, pointing to the congressional findings recited in the statute, suggests that the legislation was intended to prevent "a maverick judicial officer or petit jury" from using courts to circumvent legislation by imposing expansive common-law liability on gun manufacturers and distributors through theories that have not been approved by Congress or state legislatures.

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

*See* Appellee's Br. at 6 (citing 15 U.S.C. § 7901(a)(7)–(8)); *see also* 15 U.S.C. § 7901(b)(6) (identifying as a purpose of PLCAA "[t]o preserve and protect the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States"). Thus, while Appellants view PLCAA's purpose as primarily substantive—to insulate gun manufacturers and distributors from excess liability—the State views it as structural and procedural—to preserve the balance of power between legislatures and the judiciary and to ensure that gun industry members are not exposed to liability without proper notice via a legislative enactment. As demonstrated above, there is some support for both views among PLCAA's enumerated findings and purposes. *See* 15 U.S.C. § 7901(a)–(b).

We previously addressed the purpose and scope of PLCAA's predicate exception in the context of a nuisance action brought by New York City ("the City") against firearms manufacturers and sellers. *See Beretta*, 524 F.3d at 398–404. In 2000, before PLCAA was enacted, the City sued manufacturers and wholesale sellers of firearms under New York Penal Law § 240.45 (criminal nuisance in the second degree), alleging that these firearms suppliers caused, contributed to, and maintained a public nuisance by knowingly supplying the illegal firearms market.

8

*Id.* at 389. On the day that PLCAA was enacted in 2005, the defendants in *Beretta* moved to dismiss the case as barred by the statute. *Id.* In response, the City claimed that the suit fell within PLCAA's predicate exception since New York Penal Law § 240.45 qualified as a predicate statute "applicable to the sale or marketing of [firearms]," *id.* at 389–90 (quoting 15 U.S.C. § 7903(5)(A)(iii)), and the defendants' knowing violation of the statute was the proximate cause of the harm alleged. The district court found that the suit fell within PLCAA's predicate exception, and we reversed. *Id.* at 390, 404.

Because both parties in *Beretta* agreed that New York's general nuisance statute was a statute of general applicability which had never been applied to firearms suppliers for conduct akin to that complained of by the City, we found that it was not a statute "applicable to the sale or marketing of [firearms]." 15 U.S.C. § 7903(5)(A)(iii). We further explained that the predicate exception was intended "to apply only to statutes that actually regulate the firearms industry," namely those that: (a) "expressly regulate firearms," (b) have been applied by courts "to the sale and marketing of firearms," or (c) "do not expressly regulate firearms but . . . clearly can be said to implicate the purchase and sale of firearms." *Beretta*, 524 F.3d at 404. In other words, civil liability actions brought against

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

firearms manufacturers under statutes of general applicability which do not fall within any of the three enumerated categories are preempted by the claim-restricting provisions of PLCAA.   *See* 15 U.S.C. §§ 7902(a), 7903(3), 7903(5)(A).

In July 2021, New York enacted General Business Law Section 898—a gun-specific public nuisance statute—that imposes liability for gun industry members who knowingly or recklessly endanger the safety or health of the public through their sale or marketing of firearms.  Section 898-b states:

> (1)     No gun industry member, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product.
>
> (2)     All gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product in New York state shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state.

N.Y. Gen. Bus. Law § 898-b(1)–(2).

Section 898-b was designed to fall within PLCAA's predicate exception by serving as "a predicate statute that is applicable to the sale or marketing of firearms."  Sponsor Mem., 2021 S.B. 7196, 244th Leg., 2021 Reg. Sess. (N.Y. 2021)

10

(internal quotation marks omitted).  Through Section 898, the State sought to create a pathway to hold gun industry members civilly liable for their own illegal or unreasonable conduct where that conduct contributed to a public health crisis of gun violence.

In practical effect, Section 898: (1) requires gun industry members to establish and utilize reasonable controls and procedures to prevent unlawful misuse of relevant firearm products within New York, and (2) permits civil actions against industry members if they knowingly or recklessly endanger New York's population through the sale or manufacture of firearms and firearms accessories. N.Y. Gen. Bus. Law §§ 898-b, 898-e.

## II.  Procedural History

In December 2021, Appellants brought a preenforcement challenge to Section 898 against the State.  Each appellant is a gun industry member that ships or transports firearms and ammunition directly into New York.

Appellants sought a preliminary injunction as well as declaratory and injunctive relief barring enforcement of the statute.  They asserted that Section 898 is preempted by PLCAA because it is an "undisguised state effort to reinstate what federal law expressly forbids."  Appellants' Br. at 2 (internal quotation marks omitted).  Specifically, Appellants contended that Section 898 is no different from

the City's prior attempt, rejected in *Beretta*, to hold gun industry members liable under a generally applicable nuisance law. Moreover, Appellants contended that Section 898 is unconstitutional because it regulates solely interstate commerce, in violation of the dormant Commerce Clause, and is unconstitutionally vague, in violation of the Due Process Clause. The State moved to dismiss.

In May 2022, the district court granted the State's motion to dismiss and denied Appellants' motion for preliminary injunction, determining that Section 898 is not preempted by PLCAA, does not violate the dormant Commerce Clause, and is not void for vagueness. *See Nat'l Shooting Sports Found., Inc. v. James*, 604 F. Supp. 3d 48 (N.D.N.Y. 2022).

The district court explained that there was no express preemption because Section 898 directly regulates firearms and therefore falls within the predicate exception, unlike the general nuisance law at issue in *Beretta*. *Id.* at 57–60. The district court additionally concluded that there was no implied conflict preemption because Section 898 does not conflict with the overall purpose and objective of PLCAA, which, it found, is to ensure that generally applicable laws are not used to create novel and attenuated theories of liability for the gun industry without notice. *Id.* at 60–61.

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

As for the dormant Commerce Clause challenge, the district court concluded that there was no discrimination against out-of-state commerce because Section 898 treats interstate and intrastate commerce the same and because plaintiffs did not allege the existence of any wholly in-state commerce that could hypothetically receive an unfair advantage. *Id.* at 62–63. The district court also determined that there was no undue burden on interstate commerce under the *Pike* balancing test, which requires an element of favoritism towards intrastate commerce. *Id.* at 63–64 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Finally, the district court found no impermissible regulation of wholly out-of-state commercial activity or violation of extraterritoriality principles because it concluded that Section 898 does not materially differ from most other state statutes, which in some way have repercussions beyond state lines. *Id.* at 64–65.

Lastly, the district court found that Section 898 is not void for vagueness because it gives sufficient notice to a reasonable person of what is prohibited. *Id.* at 65–69. The district court noted that even if a vagueness issue existed, it was not clear that Section 898 would be unconstitutional in *all* its applications, and a facial challenge therefore could not succeed. *Id.* at 69.

This appeal followed.

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

## DISCUSSION

### I. Standard of Review

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

### II. Classifying Plaintiffs' Challenge

As a preliminary matter, the parties disagree as to whether Appellants have brought a facial or as-applied challenge to Section 898. In the complaint, Appellants sought "declaratory and injunctive relief to have [Section 898] declared unconstitutional and to prevent the State . . . from enforcing it." App'x 15, ¶ 8. Indeed, Appellants' pleadings repeatedly characterized their challenge as "facial." *See id.* at 31 ¶ 84, 33 ¶ 98, 34 ¶ 106. On appeal, however, Appellants argue both that Section 898 is entirely unconstitutional, *see* Appellants' Br. at 20 ("§ 898 is a compendium of constitutional problems that should not be permitted to stand"), and that it should be invalidated "to the extent it is preempted by the PLCAA; directly regulates out-of-state commerce; discriminates against and unduly burdens interstate commerce; and is void for vagueness," Appellants' Reply Br. at

14

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

4.  Appellants suggest that their claims "have characteristics of both facial and as-applied challenges" because they challenge "discrete and well-defined" potential applications of Section 898 that are "likely to occur."  *Id.* at 4–5 (internal quotation marks omitted and alterations adopted).  Indeed, at oral argument, Appellants at times conceded that they had brought a facial challenge, while also characterizing it as a "hybrid" as-applied facial claim.  *See* Oral Arg. Tr. 6, 21, 22.

"The line between facial and as-applied challenges can sometimes prove amorphous[.]"  *Bucklew v. Precythe*, 587 U.S. 119, 139 (2019) (internal quotation marks omitted).  Generally, however, a challenge to a statute before its enforcement will presumptively constitute a facial challenge.  *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015) ("Because plaintiffs pursue this 'pre-enforcement' appeal before they have been charged with any violation of law, it constitutes a 'facial,' rather than 'as-applied,' challenge.").

Prospective as-applied challenges are considered "comparatively infrequently" and "seek[] to prove that a statute cannot constitutionally be applied to a specific course of conduct that the challenger intends to follow."  *Copeland v. Vance*, 893 F.3d 101, 112 (2d Cir. 2018).  Such challenges generally must focus on specific conduct that the plaintiff "would pursue but for fear of future

15

enforcement." *Id.* at 112–13 (concluding that a challenge to New York's gravity knife law more closely resembled a facial challenge than an as-applied challenge because the plaintiffs sought a declaration that the statute could not be constitutionally applied to anyone carrying a certain category of knife, rather than a tailored declaration that the statute could not be applied to specific knives that plaintiffs wished to carry). Challengers bringing preenforcement as-applied challenges cannot rely on hypothetical situations. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 189 (2d Cir. 2010) (holding that in the context of an as-applied challenge, "a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute"). Here, because Appellants have not identified a specific course of action they would follow but for fear of Section 898's enforcement, they have not brought an as-applied challenge.[2] Accordingly, Appellants' challenge is properly characterized as facial, notwithstanding their new appellate suggestions to the contrary.

---

[2] In their complaint, Appellants alleged only the following: (1) "Defendant James has not disavowed future enforcement [of] the Act. To the contrary, Defendant James has stated that she 'look[s] forward to enforcing the Public Nuisance law'"; and (2) "Given Defendant James's stated intention to enforce the Act, each of the fourteen Firearm Industry Members named as Plaintiffs presently and reasonably fears imminent prosecution under the Act." App'x 20 ¶¶ 31, 33.

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

"[C]lassifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated and the corresponding 'breadth of the remedy,' but it does not speak at all to the substantive rule of law necessary to establish a constitutional violation." *Bucklew*, 587 U.S. at 138 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010)). Facial challenges are disfavored. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (recognizing that courts should "[e]xercis[e] judicial restraint in a facial challenge"). Such challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010) (quoting *Wash. State Grange*, 552 U.S. at 450).

Since Appellants have brought a facial constitutional challenge seeking a declaration that Section 898 is unenforceable in all its applications, they must establish that the law cannot be constitutionally applied against anyone in any situation. "A facial challenge is 'the most difficult challenge to mount successfully' because, as a general matter, 'the challenger must establish that no set of

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

circumstances exists under which the Act would be valid.'" *Copeland*, 893 F.3d at

110 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *accord United States*

*v. Rahimi*, 602 U.S. 680, 693 (2024) (confirming the difficulty of sustaining a facial

challenge).

## III.    The Preemption Challenge

Appellants argue that Section 898 is preempted by PLCAA, and thus

violates the Supremacy Clause, because it aims to frustrate PLCAA's purpose or

might otherwise permit civil actions barred by PLCAA.

The Supremacy Clause of the United States Constitution provides that

federal law "shall be the supreme Law of the Land."   U.S. Const. art. VI, cl. 2.

"Consistent with that command, . . . state laws that conflict with federal law are

without effect."  *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (internal quotation

marks omitted).   "[T]he purpose of Congress is the ultimate touchstone in every

pre-emption case."  *Id.* (internal quotation marks omitted) (quoting *Medtronic, Inc.*

*v. Lohr*, 518 U.S. 470, 485 (1996)).

There are three types of preemption:

> (1) express preemption, where Congress has expressly
> preempted local law; (2) field preemption, "where
> Congress has legislated so comprehensively that federal
> law occupies an entire field of regulation and leaves no
> room for state law"; and (3) conflict preemption, where

18

> local law conflicts with federal law such that it is
> impossible for a party to comply with both or the local
> law is an obstacle to the achievement of federal
> objectives.

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (quoting

*Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)).  Here, Appellants

allege that there is express preemption and implied conflict preemption.

Specifically, Appellants argue that Section 898 is expressly preempted by

PLCAA because it allows precisely the type of civil liability action proscribed by

PLCAA and does not fall within the scope of PLCAA's predicate exception.

Alternatively, Appellants argue that even if Section 898 does fall within the scope

of the predicate exception, it is impliedly preempted because it may authorize

lawsuits that do not comply with the "knowing violation" and "proximate cause"

requirements of that exception, and thus irreconcilably conflicts with PLCAA.  We

address each argument in turn.

**A.    Express Preemption**

In Appellants' view, Section 898 is expressly preempted by PLCAA because

its aim is to subvert Congress's core mission in enacting the statute: ending liability

for gun manufacturers "under vague standards with no historical pedigree."

Appellants' Br. at 29.  As noted above, a stated purpose of PLCAA is to

19

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

significantly limit the liability of gun manufacturers and sellers by eliminating

suits stemming from the unlawful misuse of firearms by third parties.  *See* 15

U.S.C. § 7901(b)(1).  Appellants contend that state statutes enshrining such theories

of liability are "blatant end-run[s] around federal law" that cannot stand.

Appellants' Br. at 19 ("The point of the PLCAA was most certainly not to prompt

states to codify the nuisance theories the PLCAA aimed to eradicate.").[3]

The State emphasizes that preemption "fundamentally is a question of

congressional intent," Appellee's Br. at 20 (quoting *Geier v. Am. Honda Motor Co.*,

529 U.S. 861, 884 (2000)), and asserts that PLCAA was not intended to offer the gun

industry blanket immunity for the misuse of firearms.  Rather, in its view,

Congress intended to "vest the primary authority to regulate the gun industry in

federal and state legislatures acting in their representative capacities, rather than

federal or state judiciaries acting in their common law capacities."  *Id.* at 2; *see also*

---

[3] Appellants make much of the fact that various State officials have expressly stated that, in their view, the purpose of Section 898 is to override PLCAA.  *See, e.g.*, App'x 14–15 ¶ 6 (citing comments by Defendant James describing PLCAA as an example of "federal overreach" and characterizing Section 898 as an "important step to right [the] wrong" done by enacting PLCAA); Appellants' Br. at 23 (citing comments by then-Governor Andrew Cuomo stating that Section 898 would reinstate civil liability for gun manufacturers and distributors, thus "right[ing] the wrong done" by PLCAA).  But whatever the views of various State officials regarding the purpose of Section 898, the question before this Court is whether the statute as written and enforced is preempted by PLCAA.  The State's intent, ultimately, is irrelevant.

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

*id.* at 31 (observing that PLCAA was enacted in part to preclude the creation of new forms of civil liability by the judiciary, without the approval of Congress or state legislatures, through unauthorized "expansion of the common law" (quoting 18 U.S.C. § 7901(a)(7)). The State maintains that it is perfectly proper for a state legislature, as opposed to "a maverick judicial officer or petit jury," to "expand civil liability" for gun manufacturers, in accordance with important principles of federalism and state sovereignty. Appellee's Br. at 6 (quoting 15 U.S.C. § 7901(a)(6), (7)).

Neither the parties nor this Court can divine Congress's purpose in passing PLCAA beyond those aims expressly stated. *See Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 778–79 (2019) (explaining that "[e]fforts to ascribe unenacted purposes and objectives" to a statute "invites speculation" and "risk[s] displacing the legislative compromises actually reflected in the statutory text," and emphasizing that "[t]he only thing a court can be sure of is what can be found in the law itself"). Here, PLCAA's text identifies as a legislative aim ending the use of "theories without foundation [that] do not represent a bona fide expansion of the common law" to "impos[e] liability on an entire industry for harm that is solely caused by others," as well as "attempt[s] to use the judicial branch to circumvent the

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

Legislative branch of government."  15 U.S.C. § 7901(a)(6)–(8).  And, as we have noted before, the statute's legislative history reinforces our understanding of this aim by indicating that Congress intended PLCAA to end the use of generally applicable laws to create new and attenuated theories of civil liability for the gun industry, but not to protect those manufacturers who violate state or federal laws. *See Beretta*, 524 F.3d at 402–04 (explaining that "Congress clearly intended to protect from vicarious liability members of the firearms industry who engage in the *lawful* design, manufacture, marketing, distribution, importation, or sale of firearms," in compliance with existing federal, state, and local laws (emphasis added) (internal quotation marks omitted)).  Taken together, PLCAA's text and history therefore do not clearly establish that the statute's aim was to prevent state legislatures from creating avenues to hold gun manufacturers liable for downstream harms caused by their products.

     In fact, as noted by the State, the existence of the predicate exception evidences Congress's intent to preserve at least some causes of action flowing from knowing violations of state and federal laws applicable to the sale or marketing of firearms.  *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1562 (2025) (noting that "the predicate violation opens a path to making a

gun manufacturer civilly liable for the way a third party has used the weapon it made," where that manufacturer has knowingly committed a predicate offense). In *Beretta*, we concluded that PLCAA's predicate exception encompassed statutes that expressly regulated firearms, statutes that courts have applied to the sale and marketing of firearms, and statutes that do not expressly regulate firearms but that clearly can be said to implicate the sale and purchase of firearms. 524 F.3d at 404.[4] Because Section 898 expressly regulates firearms, it falls within those bounds.

Appellants, however, suggest that in order to qualify as a predicate statute, a given law must expressly regulate firearms with the same specificity as the two examples of qualifying statutes provided in PLCAA's text. Those examples include statutes authorizing: (1) suits against manufacturers who knowingly falsify or fail to keep records related to the sale of firearms, and (2) suits against manufacturers who aid, abet, or conspire to sell firearms to individuals prohibited from receiving them under 18 U.S.C. § 922(g) or (n).[5] Appellants argue that neither

---

[4] A year after *Beretta*, the Ninth Circuit also considered the scope of the predicate exception. *See Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009). Citing *Beretta*, the court held that predicate statutes generally must pertain specifically to sales and manufacturing activities and often will target the firearm industry specifically, although they need not pertain exclusively to the firearms industry. *Id.* at 1134–35.

[5] The specific examples given are: (1) "any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record

of these provisions is similar in kind to Section 898's general requirement that firearm manufacturers and sellers maintain reasonable operations. *See* N.Y. Gen. Bus. Law § 898-b(2) (requiring gun industry members to "establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state"). They further suggest that the predicate exception should apply only to statutes that impose concrete obligations or prohibitions on gun industry members' conduct, rather than general duties of care. Any alternative interpretation, they argue, would "effectively gut the PLCAA" by allowing the exception to swallow the rule. Appellants' Br. at 24, 28.

But in *Beretta*, we repeatedly refuted this reasoning and rejected the idea that the predicate exception's enumerated examples are exhaustive. In determining how to construe the phrase "statute applicable to the sale or marketing of

---

required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product"; and (2) "any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18." *See* 15 U.S.C. § 7903(5)(A)(iii)(I)–(II).

[firearms]," this Court noted that "the examples of state and federal statutory violations in the predicate exception itself refer to state and federal laws that specifically and expressly govern firearms" but then rejected the argument that "the predicate exception is [therefore] necessarily limited to statutes that *expressly* regulate the firearms industry." *Beretta*, 524 F.3d at 400; *see also id.* at 401, 404. Thus, we have already determined that the predicate exception's scope is *not* limited to causes of action brought under statutes similar to the enumerated examples in 15 U.S.C. § 7903(5)(A)(iii)(I)–(II). Rather, we have found that limiting the predicate exception to statutes (1) that expressly regulate firearms, (2) that courts have applied to the sale and marketing of firearms, and (3) that clearly can be said to implicate the sale and purchase of firearms, is sufficient to avoid "allow[ing] the predicate exception to swallow the statute." *Id.* at 403.

And, even if *Beretta* had not already adopted a construction of the statute that implicitly rejects Appellants' position, PLCAA's text does not support Appellants' argument. *See Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (explaining that, in the context of express preemption, "the plain wording of the [statute] . . . necessarily contains the best evidence of Congress' preemptive intent"); *see also United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008) (explaining

that statutory construction "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose" (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)).

PLCAA excepts from the definition of a qualified civil liability action any "action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, *including*" the enumerated exceptions. 15 U.S.C. § 7903(5)(A)(iii) (emphasis added). The term "includes" is typically interpreted as "a term of enlargement, and not of limitation." *Burgess v. United States*, 553 U.S. 124, 131 n.3 (2008) (internal quotation marks omitted). Where "including" is used to introduce a list of examples, such examples are to be viewed as "illustrative, not exhaustive." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012); *see also Pfizer, Inc. v. U.S. Dep't of Health & Human Servs.*, 42 F.4th 67, 76 (2d Cir. 2022) (concluding that, because the listed examples were preceded by the term "including," they were "merely non-exhaustive examples" that did not limit the scope of the statutory provision).

26

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

Therefore, because Section 898 falls within the bounds of PLCAA's

predicate exception as written, it is not expressly preempted.

###    B.    Implied Conflict Preemption

Appellants also contend that, even if Section 898 falls within the predicate

exception, it is nevertheless impliedly preempted because it imposes liability

without the exception's explicit "knowing violation" or "proximate cause"

requirements, thereby potentially permitting PLCAA-barred civil liability

actions.[6]    *Compare* 15 U.S.C. § 7903(5)(A)(iii) (allowing suits in which

"a manufacturer or seller of a qualified product knowingly violated a State or

Federal statute applicable to the sale or marketing of the product, and the violation

was a proximate cause of the harm for which relief is sought") *with* N.Y. Gen. Bus.

Law § 898-b(1)–(2) ((1) prohibiting gun industry members from knowingly or

recklessly creating, maintaining, or contributing to a public nuisance through the

sale or marketing of firearms, and (2) requiring gun industry members to establish

---

[6] The State argues that this argument has been forfeited because Appellants did not raise it below, while Appellants contend that the argument "is subsumed within the broader preemption claim" they raised before the district court, Reply Brief at 12 n.3. Because the argument is arguably part of the general preemption claim consistently raised by Appellants throughout the course of this litigation, we address its merits here.

27

and utilize reasonable controls and procedures to prevent unlawful possession, use, marketing, or sale of their products).

We understand this to be a conflict preemption argument. Conflict preemption arises in two scenarios: (1) "where it is impossible for a private party to comply with both state and federal requirements"; or (2) "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (internal quotation marks omitted). Conflict preemption is a "form[] of implied preemption." *Figueroa v. Foster*, 864 F.3d 222, 228 (2d Cir. 2017).

We find that the alleged incongruence between Section 898 and PLCAA's predicate exception—specifically, the lack of an express knowing or proximate cause requirement in Section 898—is insufficient to sustain Appellants' claim of conflict preemption in this facial challenge. "[W]hen plaintiffs bring a facial preemption challenge to a state law, they must demonstrate that there is no possible set of conditions under which the challenged state regime could be constitutional." *Rest. L. Ctr. v. City of New York*, 90 F.4th 101, 117–18 (2d Cir. 2024) (alterations adopted and internal quotation marks omitted) (declining to find facial preemption based on a speculative application of the challenged law and noting

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

that "nothing would prohibit a successor from raising the preemption issue in a future as-applied challenge").  In other words, a facial challenge to a state statute involves a claim that the law "is invalid in toto—and therefore incapable of any valid application."  *Steffel v. Thompson*, 415 U.S. 452, 474 (1974) (internal quotation marks omitted).  Such a challenge fails where, as here, a statute has "a plainly legitimate sweep."  *Wash. State Grange*, 552 U.S. at 449 (internal quotation marks omitted).[7]

The Supreme Court has cautioned against speculating about hypothetical or imaginary cases in which a law might be invalid, especially when state courts "have had no occasion to construe the law" or "to accord the law a limiting construction to avoid constitutional questions."  *Wash. State Grange*, 552 U.S.  at 450.  So, while Appellants are correct that Section 898 does not expressly incorporate the predicate exception's *mens rea* and causation requirements, the pertinent consideration, for present purposes, is that it does not contravene them.

---

[7] It is plainly possible to bring an action under Section 898 that would fulfill the "knowing" and "proximate cause" requirements of the predicate exception.  For example, both Section 898 and the predicate exception would allow a civil suit brought by a victim of a shooting against a gun manufacturer, if that shooting were proximately caused by a gun manufacturer's knowing failure to conduct background checks on potential customers and its unlawful sale of a firearm to the perpetrator of the shooting, who could not lawfully procure a firearm.  *See* 15 U.S.C. § 7903(5)(A)(iii)(II); N.Y. Gen. Bus. Law § 898-b(2).

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

Without the benefit of particular instances of enforcement, we decline to make any pronouncement about future cases in which litigants might invoke Section 898 without proving knowledge or proximate cause. At this stage, we find only that Section 898 is not impliedly preempted by PLCAA simply because it lacks express knowledge and proximate cause requirements.

## IV.    The Dormant Commerce Clause Challenge

Next, Appellants claim that Section 898 violates the dormant Commerce Clause because it impermissibly regulates interstate commerce in a variety of ways.

The Commerce Clause grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const., art. I, § 8, cl. 3. The dormant Commerce Clause is "a doctrine inferred from the Commerce Clause" and serves as "a 'restriction on permissible state regulation,'" *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 429 (2d Cir. 2013) (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979)), which has been understood to "limit[] the power of local governments to enact laws affecting interstate commerce," *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 47 (2d Cir. 2007). "The negative or dormant implication of the Commerce Clause prohibits state . . . regulation . . . that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in

the national marketplace." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)

(internal quotation marks and citations omitted). It also "precludes the application

of a state statute to commerce that takes place wholly outside of the State's borders,

whether or not the commerce has effects within the State." *Healy v. Beer Inst., Inc.*,

491 U.S. 324, 336 (1989) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982)).

Importantly, the dormant Commerce Clause's scope is not

"absolute." *Maine v. Taylor*, 477 U.S. 131, 138 (1986). Rather, states retain "broad

power" to legislate and regulate, even in ways that may "bear adversely upon

interstate commerce." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 531–32

(1949). "And courts are not to wield the dormant Commerce Clause as 'a roving

license . . . to decide what activities are appropriate for state and local government

to undertake.'" *Rest. L. Ctr.*, 90 F.4th at 118 (quoting *Nat'l Pork Producers Council v.

Ross*, 598 U.S. 356, 380 (2023) (Gorsuch, *J.*, plurality opinion)).

A state statute violates the dormant Commerce Clause if it: (1) "clearly

discriminates against interstate commerce in favor of intrastate commerce"; (2)

"imposes a burden on interstate commerce incommensurate with the local benefits

secured"; or (3) "has the practical effect of extraterritorial control of commerce

occurring entirely outside the boundaries of the state in question." *Grand River*

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

*Enters. Six Nations, Ltd. v. Boughton*, 988 F.3d 114, 123 (2d Cir. 2021) (internal

quotation marks omitted); *see also Healy*, 491 U.S. at 336; *Pike*, 397 U.S. at 142.

In a facial challenge, a plaintiff must show that there is no set of

circumstances under which the challenged statute would be valid under the

dormant Commerce Clause. *See United States v. Decastro*, 682 F.3d 160, 168 (2d Cir.

2012). Appellants allege that Section 898 violates the dormant Commerce Clause

in each of the three ways outlined above. We address each argument in turn.

## A.    Facial Discrimination

If a state law "clearly discriminates against interstate commerce in favor of

intrastate commerce," it "is virtually invalid per se and will survive only if it is

'demonstrably justified by a valid factor unrelated to economic protectionism.'"

*Town of Southold*, 477 F.3d at 47 (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454

(1992)).

Appellants argue that Section 898 facially discriminates against interstate

commerce because it applies only to products that pass through interstate

commerce, and therefore impermissibly privileges intrastate commerce. They

initially noted that Section 898 defined "qualified product" using PLCAA's

definition: "a firearm, . . . ammunition . . . , or a component part [thereof] that has

been shipped or transported in interstate or foreign commerce." 15 U.S.C.

§ 7903(4); *see also* A.B. 7555-A, 2024 Sess. Law News of N.Y. Ch. 123 (N.Y. 2024)

(noting that prior to June 28, 2024, the term "[q]ualified product" had "the same

meaning as defined in 15 U.S.C. section 7903(4)").

This issue need not detain us for long. The State submitted a letter after oral

argument informing us that the New York State Legislature had amended the

definition of "qualified product" to omit any cross-reference to the definition of

"qualified product" in PLCAA. *See* Appellee's 28(j) Letter ¶¶ 1–2, July 8, 2024, ECF

No. 220. The technical amendment therefore removed any reference to interstate

commerce and eliminates the basis of Appellants' facial dormant Commerce

Clause challenge. Appellants have not responded to the State's letter claiming

otherwise. Accordingly, the facial discrimination issue is moot.

## B.    Undue Burden

Even laws that do not explicitly discriminate against interstate commerce

may incidentally, and impermissibly, burden interstate commerce. *See Nat'l Pork

Producers Council*, 598 U.S. at 377 (explaining that "a law's practical effects may

also disclose the presence of a discriminatory purpose"). To determine whether a

given statute imposes such a burden, we apply "the more permissive [*Pike*]

33

balancing test." *Town of Southold*, 477 F.3d at 47. "[U]nder the *Pike* balancing test, appellants must show that a statute enacted for a legitimate public purpose, although apparently evenhanded, actually imposes [1] 'burdens on interstate commerce that exceed the burdens on intrastate commerce,' . . . and that [2] those excess burdens on interstate commerce are 'clearly excessive in relation to the putative local benefits.'" *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217 (2d Cir. 2004) (first quoting *Automated Salvage Transp., Inc. v. Wheelabrator Env't Sys., Inc.*, 155 F.3d 59, 75 (2d Cir. 1998), and then quoting *Pike*, 397 U.S. at 142).

Appellants contend that "the burdens § 898 imposes fall disproportionately . . . on interstate (and mostly out-of-state) commerce" because, as described above, the statute initially applied only to "qualified products," which had been shipped or transported in interstate or foreign commerce. Appellants' Br. at 49–50. In their view, the "real-world impact" of the statute is to "incentivize[] wholly in-state commerce and disincentivize[] out-of-state commerce, which is classic discrimination regardless of how much wholly intrastate commerce presently exists." Appellants' Reply Br. at 18–19. Appellants further contend that any putative benefits to New York do not outweigh the costs of qualified civil liability actions prohibited by PLCAA. Finally, they argue that because a *Pike* inquiry is

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

necessarily fact-intensive, the district court's dismissal of this claim at the motion-to-dismiss stage was premature.

The State argues that Appellants' undue burden claim was rightly dismissed because they "identified no in-state business that [was] favored" by Section 898 and have not demonstrated that any burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits. Appellee's Br. at 44. We agree.

As a preliminary matter, Appellants' argument regarding the definition of "qualified product" has been rendered moot by the above-noted amendment to Section 898. Moreover, Appellants' argument that the law's regulation of interstate commerce, in the absence of a wholly intrastate market, is sufficient to show discrimination against interstate commerce, *see* Appellants' Br. at 41–42, is barred by precedent. It is well established that "[t]he fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Rest. L. Ctr.*, 90 F.4th at 120 (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 126 (1978)); *see also N.Y. Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 91 (2d Cir. 2017) ("The Supreme Court has considered and rejected the argument that a statute is discriminatory

because it will apply most often to out-of-state entities in a market that has more out-of-state than in-state participants." (internal quotation marks omitted) (citing *CTS Corp. v. Dynamics Corp. Of Am.*, 481 U.S. 69, 88 (1987))). As we have previously explained, the dormant Commerce Clause "doctrine is animated by 'concern about economic protectionism' or those measures 'designed to benefit in-state economic interests by burdening out-of-state competitors'—not laws that primarily regulate firms operating across state lines." *Rest. L. Ctr.*, 90 F.4th at 120 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008)). Here, the mere fact that Section 898 may, in practice, apply only to gun industry members engaged in interstate commerce because there exist no wholly intrastate gun industry members is not sufficient to establish discrimination.

Because Section 898 does not discriminate against interstate commerce, it will be upheld under the *Pike* balancing test unless the burdens it imposes on interstate commerce are "clearly excessive in relation to the putative local benefits." *Freedom Holdings, Inc.*, 357 F.3d at 217 (quoting *Pike*, 397 U.S. at 142). Here, Appellants suggest that Section 898 would cause a number of generalized harms, such as eroding public confidence in our nation's laws, threatening diminution of a basic constitutional right and civil liberty, inviting the disassembly

36

and destabilization of industries and economic sectors lawfully competing in the economy, and burdening interstate and foreign commerce. Appellants' Br. at 49–50 (citing 15 U.S.C. § 7901(a)(6)). They further argue that these harms are clearly excessive when weighed against the public health and safety aims underlying Section 898. *See* Reply Br. at 19. These arguments fall well short of what is required to demonstrate an undue burden under *Pike*. Courts are generally "ill qualified to develop Commerce Clause doctrine dependent on . . . predictive judgments" and should not "project[] the effect of applying the Commerce Clause" where the economic benefits and burdens of a regulation are not clear. *Gen. Motors Corp.*, 519 U.S. at 309. Here, in the absence of any evidence or specific findings regarding the economic benefits and burdens of Section 898, we find no undue burden under *Pike.*

## C.    Extraterritoriality

Finding no express discrimination against, and no undue burden on, interstate commerce, we now consider whether Section 898 regulates "commerce that takes place wholly outside of the State's borders," *Healy*, 491 U.S. at 336—in other words, if it operates extraterritorially. Pivotal to Appellants' extraterritoriality argument is the fact that exposure to Section 898 liability does

not require that an entity does business in New York. Accordingly, Appellants contend that Section 898 impermissibly allows for the imposition of state-law liability on out-of-state actors for actions taken entirely out of state. This, they argue, is "the definition of unconstitutional extraterritorial state regulation," which, if allowed, will give states "carte blanche to impose their regulatory preferences on other states." Appellants' Br. at 44, 50.

However, each of Section 898(b)'s subsections has a New York state nexus requirement, notwithstanding the absence of a requirement that the subject gun industry member does business in New York. The first subsection requires that the business "maintain or contribute to a condition *in New York state*," and the second subsection applies to "[a]ll gun industry members who manufacture, market, import or offer for wholesale or retail sale any qualified product *in New York state*." N.Y. Gen. Bus. Law § 898(b)(1)–(2) (emphases added). Section 898 is therefore plainly focused on regulating conduct that occurs in or has a connection to New York.

Appellants posit a number of hypothetical scenarios in which Section 898 could be used to regulate conduct occurring entirely in another state, or to impose liability on manufacturers and sellers that conduct no commerce in New York. But

"[w]hen assessing a plaintiff's extraterritoriality theory, we focus squarely on whether the state law has 'the practical effect of *requiring* [wholly] out-of-state commerce to be conducted at the regulating state's direction.'" *VIZIO, Inc. v. Klee*, 886 F.3d 249, 255 (2d Cir. 2018) (quoting *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 193 (2d Cir. 2007)); *see also Healy*, 491 U.S. at 336 ("The critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundaries of the State." (citing *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986)).

Because a facial constitutional challenge seeks to strike down a statute in its entirety, Appellants must show that Section 898 regulates wholly extraterritorial conduct *in every application of the statute* in order to succeed on their extraterritoriality claim. *See Wash. State Grange*, 552 U.S. at 449–50 ("In determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases."). Appellants have not made—and cannot make—such a showing. Each Appellant, as the State notes, ships or transports firearms and ammunition directly into New York. Application of Section 898 to their own conduct would therefore not raise extraterritoriality concerns, and they have not alleged any facts that

would support any other inference of extraterritoriality.  If Section 898, in practice, has an impermissible extraterritorial effect, gun industry members may raise such claims as part of an as-applied challenge.  *Cf. Arizona v. United States*, 567 U.S. 387, 415 (2012) (explaining that when a party brings suit to challenge a law before it has gone into effect, "[t]here is a basic uncertainty about what the law means and how it will be enforced," and "without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume [the law] will be construed" unconstitutionally).

For the foregoing reasons, we conclude that Section 898 does not violate the dormant Commerce Clause.

## V.    **The Vagueness Challenge**

Last, Appellants argue that Section 898 is void for vagueness because it provides insufficient notice as to what conduct is forbidden or required, effectively requiring gun industry members to leave the industry in order to avoid liability.

The Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, and entitles a person to "be informed as to what [a law] commands or forbids."  *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  We "generally disfavor[]" facial vagueness

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

challenges, *Dickerson*, 604 F.3d at 741, because "the challenger must establish that *no set of circumstances* exists under which the Act would be valid," *N.Y. State Rifle & Pistol Ass'n.*, 804 F.3d at 265. "The claim in a facial challenge is that a statute is so fatally indefinite that it cannot constitutionally be applied to anyone." *Copeland*, 893 F.3d at 110.

Section 898 requires gun industry members to establish and utilize reasonable controls to prevent unlawful possession, use, marketing, or sale of their products in New York. It further subjects them to liability for any unreasonable or unlawful conduct related to the sale or marketing of firearms that creates, maintains, or contributes to a condition that endangers public health or safety. N.Y. Gen. Bus. Law § 898-b(1)–(2). Appellants argue that Section 898's "reasonableness" standard is unconstitutionally vague because it does not clearly delineate what specific reasonable controls a gun industry seller or manufacturer must deploy in order to avoid liability. They emphasize that New York courts have recognized that gun manufacturers "do *not* owe a duty to control the conduct of third persons so as to prevent them from harming others," *People v. Sturm, Ruger & Co., Inc.*, 761 N.Y.S.2d 192, 196 (N.Y. App. Div. 2003) (emphasis added) (internal quotation marks omitted), and that Section 898 is therefore not rooted in a codified

41

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

or knowable body of law.  Appellants also contend that Section 898 is broader and

less clear than preexisting public nuisance law because it imposes liability for

"*contribut*[*ing*] to a condition in New York state that endangers the safety or health

of the public," Appellants' Br. at 53 (quoting N.Y. Gen. Bus. Law § 898-b(1)), and

that such "freewheeling liability" "violate[s] basic notions of fairness," *id.* at 53–

54.

      The State argues that Section 898 resembles many other New York public

nuisance laws and therefore accords with common understanding and practices.

It notes that the statute specifically proscribes certain categories of conduct and

further provides illustrative examples of "reasonable controls and procedures."

Appellee's Br. at 53.  Finally, the State notes that "reasonable" is a term used in

"countless statutes and standards," *id.* at 54, and that there exist judicial

precedents regarding the meaning of the terms "reasonable" and "contribute" in

the context of public nuisance statutes, *id.* at 54–55.

      We conclude that Appellants have not met their burden of demonstrating

that Section 898 is so "fatally indefinite" that it cannot be constitutionally applied

under any circumstances.  *See Copeland*, 893 F.3d at 110.  We agree with the State

that reasonableness is a well-established legal standard that is employed in a wide

22-1374-cv
*National Shooting Sports Foundation, Inc. v. James*

range of statutes consistent with the requirements of the Due Process Clause.

Moreover, Section 898 provides examples of the types of "reasonable controls and

procedures" that gun industry members are instructed to employ:

> "Reasonable controls and procedures" shall mean policies that
> include, but are not limited to: (a) instituting screening, security,
> inventory and other business practices to prevent thefts of qualified
> products as well as sales of qualified products to straw purchasers,
> traffickers, persons prohibited from possessing firearms under state
> or federal law, or persons at risk of injuring themselves or others;
> [and] (b) preventing deceptive acts and practices and false advertising
> and otherwise ensuring compliance with all provisions of article
> twenty-two-A of this chapter . . . .

N.Y. Gen. Bus. Law § 898-a(2). Though Appellants characterize these examples as

"singularly unhelpful guidance," Appellants' Br. at 13, we will not "strain[] to

inject doubt as to the meaning of words where no doubt would be felt by the

normal reader," *United States v. Powell*, 423 U.S. 87, 93 (1975). Where the language

of a given statute is "sufficiently clear," "the speculative danger of arbitrary

enforcement does not render the ordinance void for vagueness." *Vill. of Hoffman*

*Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982).

Accordingly, Section 898 is not facially void for vagueness.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.