DENNIS JACOBS, *Circuit Judge*, concurring:

With the Protection of Lawful Commerce in Arms Act ("PLCAA"), Pub. L. No. 109-92, 119 Stat. 2095 (2005) (codified at 15 U.S.C. §§ 7901–03), Congress shut the door on litigation that would destroy the nation's firearms industry. New York has now contrived a broad public nuisance statute that applies solely to "gun industry members" and is enforceable by a mob of public and private actors. The intent of Congress when it closes a door is not for States to thus jimmy a window. However, I am constrained to agree with my colleagues that, depending on the pleading, this statute *could* be applied consistent with PLCAA and the Constitution; and under Circuit precedent, that suffices to defeat Appellants' facial challenge. I write separately to emphasize the vulnerability of New York's statute to as-applied preemption challenges and the narrow aperture of the law's legitimate reach.

As the Court recounts, "a stated purpose of PLCAA is to significantly limit the liability of gun manufacturers and sellers by eliminating suits stemming from the unlawful misuse of firearms by third parties." *Ante* at 19-20; *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 145 S. Ct. 1556, 1569 (2025) ("Congress enacted the statute to halt a flurry of lawsuits attempting to make

gun manufacturers pay for the downstream harms resulting from misuse of their products."); § 7901(b)(1).  This purpose aligns with Congress's finding that "[b]usinesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products . . . are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."  § 7901(a)(5).  Congress expressly found that the "possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system."  § 7901(a)(6).  Congress worried that the possibility that a "maverick judicial officer or petit jury" might sustain liability actions "based on theories without foundation in hundreds of years of the common law . . . in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States," and warned that such an abuse "would constitute a deprivation of the rights" guaranteed by the Fourteenth Amendment.  § 7901(a)(7).

PLCAA achieves its liability-limiting purpose by barring any "qualified civil liability action" from proceeding in federal or state court.  § 7902(a).

"Qualified civil liability action" is broadly defined to encompass any "civil action or proceeding or an administrative proceeding" against industry members or their trade groups for harm "resulting from the criminal or unlawful misuse" of firearms or ammunition by third parties. § 7903(5)(A).

Several exceptions qualify this definition, including one "usually called the predicate exception" that is relevant here. *See Smith & Wesson*, 145 S. Ct. at 1562. As the Supreme Court recently explained, the predicate exception "applies to suits in which the defendant manufacturer or seller 'knowingly violated a State or Federal statute applicable to the sale or marketing' of firearms, and that 'violation was a proximate cause of the harm for which relief is sought.'" *Id.* (quoting § 7903(5)(A)(iii)). Congress provided two example predicate violations:

> (I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

> (II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving

3

a firearm or ammunition under subsection (g) or (n) of section 922 of title 18[.]

§ 7903(5)(A)(iii). "If a plaintiff can show that [the predicate exception] is satisfied . . . then a suit can proceed, *even though* it arises from a third party's later misuse of a gun." *Smith & Wesson*, 145 S. Ct. at 1562 (emphasis added). Importantly, the predicate exception is just that: an *exception*. The rule remains that suits against firearms manufacturers and sellers over third-party misuse of firearms are otherwise barred.

In *City of New York v. Beretta U.S.A. Corp.*, we considered which laws are deemed by Congress to be "applicable to the sale or marketing" of firearms for purposes of the predicate exception. *See* 524 F.3d 384 (2d Cir. 2008). We observed that "the examples of state and federal statutory violations in the predicate exception itself refer to state and federal laws that specifically and expressly govern firearms." *Id.* at 400. Reasoning by analogy to these examples, we held that the predicate exception "encompass[es] statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms[, or (c)] that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404.

4

At issue in *Beretta* was New York's criminal nuisance law, N.Y. Penal Law § 240.45.   We concluded that this law of general applicability was insufficiently specific to firearms.   *Beretta*, 524 F.3d at 404.

New York State later enacted the modified nuisance law at issue in this case, which adds the words "gun industry member" to the not-a-predicate statute at issue in *Beretta*.   This new law, Section 898, provides that "[n]o gun industry member . . . shall knowingly or recklessly create, maintain or contribute to a condition in New York state that endangers the safety or health of the public through the sale, manufacturing, importing or marketing of a qualified product" and that any gun industry member that operates in New York "shall establish and utilize reasonable controls and procedures to prevent its qualified products from being possessed, used, marketed or sold unlawfully in New York state." N.Y. Gen. Bus. Law § 898-b.   Violation of these prohibitions is declared a public nuisance, enforceable by various public officials as well as private parties.   *See id.* § 898-c-e.

This law is nothing short of an attempt to end-run PLCAA.   I know that because then-Governor Cuomo used his signing statement to tell the public that Section 898 would "right the wrong" done by PLCAA.   *See* Governor Andrew

5

M. Cuomo, *Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York* at 35:11-36:50.[1]

I cannot very well deny that what New York has done, perfunctory as it is, and deadly in its aim at the firearms industry, comports with *Beretta*. *See ante* at 23-25. Were I deciding *Beretta* afresh, I would have concluded that the predicate exception is strictly defined by the examples that Congress provided, and that the exception permits only those measures that are particular to firearms as a product and an industry--not general-purpose nuisance statutes onto which reference to the firearms industry is grafted. *Cf. Beretta*, 524 F.3d at 402 ("the general term--'applicable to'--is to be construed to embrace only objects similar to those enumerated by" § 7903(5)(A)(iii)(I)-(II) (internal quotation omitted)). A predicate statute, in my view, must bear upon firearms more specifically than by mere reference, must give notice of its requirements sufficient to allow compliance with confidence, and must require proximate cause. *See* § 7903(5)(A)(iii) (requiring knowledge and proximate cause). Otherwise, the firearms industry is in jeopardy of enforcement so abusive and arbitrary that it

---

[1] YouTube (July 6, 2021), https://www.youtube.com/watch?v=-tKj0FZueFM.

can be destroyed by litigation expense, damages, and impediments to insurance and the raising of capital.

New York's repurposed nuisance law is infirm for many of the same reasons as New York's original nuisance law, on which it was modeled. PLCAA apprises the members of the firearms industry about specific obligations (record-keeping requirements) and proscriptions (straw purchases, specified false statements).   Unlike PLCAA, Section 898 imposes liability for diffuse and generalized conduct: "creat[ing], maintain[ing] or contribut[ing] to a condition in New York state that endangers the safety or health of the public."   § 898-b(1). Such a "condition" could be "created, maintained, or contributed to" in myriad ways.   Yet, since Section 898 undoubtedly "expressly regulate[s] firearms," it satisfies *Beretta*.   A violation of Section 898 *might*--on the right set of facts-- qualify as a predicate violation.

I therefore agree with my colleagues that Appellants' facial PLCAA challenge fails.[2]   But even so, PLCAA invites *as-applied* challenges to Section 898.

---

[2] I also agree that Appellants' facial dormant Commerce Clause and vagueness challenges fail, for the reasons provided by the Court.   Because Section 898 is likely to have a limited reach in practice, its benefits and interstate burdens are

7

PLCAA's operative language bars specific "qualified civil liability actions," a term defined by reference to specific facts characterizing specific cases. Though Congress articulated a purpose concerning "*causes of action*," Congress drafted PLCAA to bar only individual "qualified civil liability *actions*." *Compare* § 7901(b)(1), *with* § 7902(a). We must assume this difference in terms is material. *See Yale New Haven Hospital v. Becerra*, 56 F.4th 9, 21 (2d Cir. 2022) (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022)). Therefore, unless a cause of action cannot be pleaded consistently with PLCAA, preemption is best considered as applied to individual cases.

Indicative is the Supreme Court's *Smith & Wesson* opinion, which held that the Government of Mexico had failed to "plausibly plead[]" conduct consistent with the predicate exception. 145 S. Ct. at 1562; *see also id.* at 1570 (Thomas, J., concurring) (the Court's opinion "concludes only that Mexico has not adequately pleaded its theory of the case--that, *as a factual matter*, the defendant gun manufacturers committed criminal aiding and abetting" (emphasis added)). Thus, the Supreme Court made clear that, despite PLCAA's announced purpose

---

as-yet unclear. *See ante* at 37. Moreover, at least some applications of Section 898 would accord with due process. *See ante* at 42-43.

to the contrary, "the predicate violation opens a path to making a gun manufacturer civilly liable for the way a third party has used the weapon it made." *Smith & Wesson*, 145 S. Ct. at 1562. But as the Supreme Court did in *Smith & Wesson*, we must consider whether the predicate exception bars a particular lawsuit with reference to particular facts, not in the abstract on a facial challenge.

It is possible to plead a Section 898 action that threads the eyelet of the predicate exception. The Court concludes that Section 898's lack of express knowledge and causation requirements "does not contravene" the predicate exception's requirement of them. *Ante* at 29. Though I cannot see how a Section 898 action could proceed *without* pleading these federally mandated elements, this is a question that can be easily saved for (inevitable) as-applied preemption challenges to Section 898, and easily answered then.[3] The Court rightly declines Appellants' invitation to declare that Section 898 is preempted

---

[3] Because federal law appears to supply essential (albeit implied) elements of a Section 898 cause of action, Section 898 cases filed in state court may also be removable. *See NASDAQ OMX Grp. v. UBS Secs., LLC*, 770 F.3d 1010, 1019-20 (2d Cir. 2014). Removal to federal court should allay concern over a "maverick judicial officer or petit jury" reading Section 898 inconsistently with federal law.

9

"to the extent" that its application will exceed the predicate exception's scope.[4] And "to the extent" that Appellants wish us to declare federal law's supremacy over state law, the Constitution already offers this rule of decision without any underlining by us. *See* U.S. CONST. art. VI, cl. 2.

PLCAA constrains application and interpretation of Section 898. For example, Section 898 authorizes actions based on a showing of (criminal) recklessness, whereas only knowing violations of federal or state law fall within the predicate exception. *Compare* § 898-b(1) (prohibiting certain acts done "knowingly or recklessly"), *with* § 7903(5)(A)(iii) (requiring violations occur "knowingly" to fit into predicate exception); *see also* N.Y. Penal Law § 15.05 (knowledge is more rigorous than recklessness under New York law). An as-applied challenge may decide whether recklessness under New York criminal law is tantamount to knowledge under federal law; if not, suits based on reckless conduct will be dismissible. Section 898 also lacks an express proximate cause

---

[4] Appellants appear to have raised whether Section 898 is preempted *to some extent* for the first time on appeal; below, they argued it was preempted entirely. Failure of preservation is further reason to defer answering the question of *to what extent* Section 898 is preempted. *See United States v. Mendonca*, 88 F.4th 144, 165 (2d Cir. 2023); *see also ante* at 30 (reserving question).

requirement. But PLCAA is sufficiently emphatic that we can rely on trial courts to dismiss Section 898 actions expeditiously where federally sufficient knowledge or proximate cause are missing--lest application of Section 898 prove an obstacle to Congress's intention. *Cf.* § 7902(b) (requiring that any "qualified civil liability action that is pending on October 26, 2005 shall be *immediately* dismissed" (emphasis added)).

Speedy dismissal of attenuated Section 898 claims accords with PLCAA's goal of preventing litigation from eating up the firearms industry whole. There is every indication that New York intends Section 898 to contravene federal law; but there is *some* legitimate reach to the law, which suffices for us to affirm the dismissal of this facial challenge. Just how limited that reach is must await future cases.