# No. 22-1374

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

NATIONAL SHOOTING SPORTS FOUNDATION, INC., BERETTA U.S.A. CORP.,
DAVIDSON'S, INC., GLOCK INC., CENTRAL TEXAS GUN WORKS, HORNADY
MANUFACTURING COMPANY, LIPSEY'S LLC, OSAGE COUNTY GUNS LLC, RSR
GROUP, INC., SHEDHORN SPORTS, INC., SIG SAUER, INC., SMITH & WESSON INC.,
SPORTS SOUTH LLC, SPRAGUE'S SPORTS INC., STURM, RUGER & COMPANY, INC.,

*Plaintiffs-Appellants*,

v.

LETITIA JAMES, in her official capacity as New York Attorney General,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Northern District of New York, No. 21-cv-1348

### PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC

PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellants*

September 22, 2025

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs certify as follows:

**National Shooting Sports Foundation, Inc.** has no parent company, and no publicly held corporation owns 10% or more of NSSF stock.

Beretta Holdings S.A. is the parent company of plaintiff **Beretta U.S.A. Corp.** and owns more than 10% of Beretta U.S.A. Corp. **Beretta U.S.A. Corp.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Beretta U.S.A. Corp.** stock.

**CTCHGC LLC d/b/a Central Texas Gun Works** has no parent company. **CTCHGC LLC d/b/a Central Texas Gun Works** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **CTCHGC LLC d/b/a Central Texas Gun Works** stock.

**Davidson's, Inc.** has no parent company. **Davidson's, Inc.** is not publicly traded, and there therefore is no publicly held corporation that owns 10% or more of **Davidson's, Inc.** stock.

**GLOCK, Inc.** has no parent corporation, and there is no publicly held that owns 10% or more of **GLOCK, Inc.** stock.

**Hornady Manufacturing Company** has no parent company, and there is no publicly held corporation that owns 10% or more of **Hornady Manufacturing Company** stock.

**Lipsey's, LLC** has no parent company. **Lipsey's, LLC** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Lipsey's, LLC** stock.

**Osage County Guns** has no parent company, and there is no publicly held corporation that owns 10% or more of **Osage County Guns** stock.

**RSR Group, Inc.** has no parent company. **RSR Group, Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **RSR Group, Inc.** stock.

**Shedhorn Sports Inc.** has no parent company. **Shedhorn Sports Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Shedhorn Sports Inc.** stock.

**SIG Sauer, Inc.** is a wholly owned subsidiary of SIG SAUER US Holding LP. No publicly held corporation owns 10% or more of **SIG Sauer, Inc.** stock.

**Smith & Wesson Inc.** is a wholly owned subsidiary of Smith & Wesson Brands, Inc. Smith & Wesson Brands, Inc. is publicly traded.

**Sports South LLC** has no parent company. **Sports South LLC** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Sports South LLC** stock.

**Sprague's Sports Inc.** has no parent company. **Sprague's Sports Inc.** is not publicly traded, and therefore there is no publicly held corporation that owns 10% or more of **Sprague's Sports Inc.** stock.

**Sturm, Ruger & Company, Inc.** has no parent company, and no publicly held corporation owns 10% or more of **Sturm, Ruger & Company, Inc.** stock. **Sturm, Ruger & Company, Inc.** is publicly traded.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ...................................................................... v

RULE 40(b) STATEMENT ...................................................................... 1

QUESTION PRESENTED ....................................................................... 2

BACKGROUND ................................................................................ 2

    A.    Factual and Legal Background ............................................. 2

    B.    Procedural Background ...................................................... 6

REASONS FOR GRANTING THE PETITION .................................................... 8

I.    The Panel Decision Creates A Circuit Split On The Meaning Of The PLCAA And Green-Lights State Nullification Of Federal Law .................... 8

II.    The Question Presented Is Exceptionally Important ................................... 16

CONCLUSION ................................................................................ 17

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008) ............................................................. 4, 13, 14, 15

*District of Columbia v. Beretta U.S.A. Corp.*,
   940 A.2d 163 (D.C. 2008) ....................................................................... 12

*Galper v. JP Morgan Chase Bank, N.A.*,
   802 F.3d 437 (2d Cir. 2015) ................................................................... 16

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) .................................................................. 9

*Ileto v. Glock, Inc.*,
   565 F.3d 1126 (9th Cir. 2009) ..................................................... 9, 10, 11

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
   605 U.S. 280 (2025) ....................................................................... 1, 3, 16

*Wash. State Dep't of Soc. & Health Servs. v. Keffeler*,
   537 U.S. 371 (2003) ............................................................................... 14

## Statutes

15 U.S.C. §7901 ....................................................................................... 10

15 U.S.C. §7901(a)(2) ................................................................................ 2

15 U.S.C. §7901(a)(3) ................................................................................ 2

15 U.S.C. §7901(a)(4) ................................................................................ 2

15 U.S.C. §7901(a)(6) ........................................................................... 2, 11

15 U.S.C. §7901(a)(7) .................................................................... 2, 10, 11

15 U.S.C. §7901(a)(8) ................................................................................ 2

15 U.S.C. §7901(b)(1) ............................................................................ 3, 5

15 U.S.C. §7902(a) .................................................................................... 3

15 U.S.C. §7903(3) ...............................................................3

15 U.S.C. §7903(4) ...............................................................3

15 U.S.C. §7903(5) ...............................................................3

15 U.S.C. §7903(5)(A)............................................... 3, 8, 12, 14

15 U.S.C. §7903(6) ...............................................................3

2002 Cal. Legis. Serv. ch. 906, §1 (A.B. 496) ..........................9

D.C. Code §7-2551.01 (2001)...............................................12

N.Y. Gen. Bus. Law §898 ......................................................4

N.Y. Gen. Bus. Law §898-a(2) ..............................................5

N.Y. Gen. Bus. Law §898-b(1) ...................................... 5, 6, 16

N.Y. Gen. Bus. Law §898-b(2) ............................................5, 6

N.Y. Gen. Bus. Law §898-c(1)............................................5, 6

N.Y. Gen. Bus. Law §898-d ..................................................16

N.Y. Gen. Bus. Law §898-e ..................................................16

N.Y. Penal Law §240.45 ............................................. 4, 5, 13

**Other Authority**

Gov. Andrew M. Cuomo, *Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York*, YouTube (July 6, 2021), https://bit.ly/3UyZoSx. ...............................4

## RULE 40(b) STATEMENT

Earlier this year, the Supreme Court pointedly cautioned that Congress "did not" "intend[]" for the Protection of Lawful Commerce in Arms Act's so-called "predicate exception" to provide "a capacious way out of PLCAA," which grants firearm industry members immunity from tort-style claims seeking to make them pay for injuries caused by criminals wielding guns. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 299 (2025); *see* 15 U.S.C. §§7901-7903. Yet the panel here converted the predicate exception into exactly what the Supreme Court warned against, holding that it "encompasse[s]" any and all state statutes "that expressly regulate[] firearms," even if those laws "regulate" only by subjecting industry members to the exact same unwieldy tort suits that Congress enacted the PLCAA to foreclose. Op.23. Indeed, by the panel's logic, *literally* the same lawsuits that prompted the PLCAA's enactment could have survived its passage. And every state in the country could invite ever more litigation reviving the same strained tort theories that Congress set out to inter through the simple expedient of codifying those theories in statutes targeting commerce in arms. That decision flouts bedrock interpretive principles, misreads Second Circuit precedent, defies the will of Congress, and creates a circuit split. The Court should grant rehearing en banc.

## QUESTION PRESENTED

Whether the predicate exception allows states "to end-run PLCAA," Concur.5, simply by codifying the same general tort theories that the PLCAA expressly preempts in statutes that apply to commerce in arms.

## BACKGROUND

### A. Factual and Legal Background

**1.** In the 1990s and early 2000s, state and local governments began invoking expansive nuisance and negligence theories to try to hold licensed "manufacturers, distributors, dealers, and importers of firearms that operate as designed and intended" liable in tort, and to make them pay "for the harm caused by the misuse of firearms by third parties, including criminals." 15 U.S.C. §7901(a)(3); *see id.* §7901(a)(4). It did not take long for Congress to see these suits for what they were: a coordinated effort to destroy the firearms industry by saddling its members with crushing liability for the independent acts of criminals. The actions brought by these cities and states pressed "theories without foundation in hundreds of years of the common law and jurisprudence of the United States," elided fundamental principles of causation and due process, came at a substantial cost to individual liberty, and threatened interstate comity by permitting one state (or its subdivisions) to penalize lawful conduct in another state. 15 U.S.C. §7901(a)(2), (6)-(8).

Congress enacted the PLCAA in 2005 to put a stop to these efforts to use strained tort-based theories to destroy a lawful industry and the fundamental rights

it facilitates. The PLCAA's first enumerated "purpose[]" is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products" ("and their trade associations") for harm "caused by the criminal or unlawful misuse of firearm products" by third parties. *Id.* §7901(b)(1). To that end, the law broadly prohibits "any person," "including any governmental entity," from bringing a "civil action" against a "manufacturer or seller" of firearms and related products that seeks to redress harm "resulting from the criminal or unlawful misuse of [their] product by … a third party." *Id.* §§7902(a), 7903(3)-(6).

The "PLCAA's general bar on those suits has an exception, usually called the predicate exception, relevant here." *Smith & Wesson*, 605 U.S. at 286. "That exception applies to suits in which the defendant manufacturer or seller 'knowingly violated a State or Federal statute applicable to the sale or marketing' of firearms, and that 'violation was a proximate cause of the harm for which relief is sought.'" *Id.* (quoting 15 U.S.C. §7903(5)(A)(iii)). Rather than leave courts rudderless in applying the predicate exception, Congress expressly provided examples of the kind of statutes it had in mind: statutes prohibiting industry members from making false entries in firearm-sale records, and statutes prohibiting industry members from facilitating straw purchases—both of which impose concrete obligations and allow industry members to know in real time whether they are in compliance (or not). *See* 15 U.S.C. §7903(5)(A)(iii)(I), (II).

**2.** The PLCAA accomplished Congress' goal of deterring intrepid state and local governments from seeking to make firearms manufacturers and sellers pay for criminal gun violence for a while. But not forever. In 2021, New York enacted General Business Law §§898-a to -e ("§898")—which, as Judge Jacobs observed, "is nothing short of an attempt to end-run PLCAA," Concur.5. New York has not been shy about that. As the Governor put it on signing day, the point of §898 is to "reinstate the public nuisance liability for gun manufacturers" that Congress enacted the PLCAA to foreclose, and thereby "right the wrong" that New York believes Congress committed by enacting the PLCAA. Gov. Andrew M. Cuomo, *Governor Cuomo Signs First-in-the-Nation Gun Violence Disaster Emergency to Build a Safer New York* at 35:00-38:15, YouTube (July 6, 2021), https://bit.ly/3UyZoSx.

The legislature was equally transparent. Section 898 reproduces, largely verbatim, the text of New York Penal Law §240.45—which this Court held in *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008), is *not* a predicate statute. The only differences are (a) whereas §240.45 applies to acts and "person[s]" generally, §898 applies *only* to "the sale, manufacturing, importing[,] or marketing" of firearms or related products by "gun industry members," and (b) whereas §240.45 prohibits only creating or maintaining a condition that "endangers the safety or health of [the public]," §898 prohibits "contribut[ing]" to such a condition too:

> **No gun industry member**, by conduct either unlawful in itself or unreasonable under all the circumstances shall knowingly or recklessly

4

> create, maintain **or contribute to** a condition in New York state that endangers the safety or health of the public **through the sale, manufacturing, importing or marketing of a qualified product**.

N.Y. Gen. Bus. Law §898-b(1) (bolded type showing alterations from Penal Law §240.45). Any failure to comply with §898-b(1) "that results in harm to the public" is "declared to be a public nuisance." N.Y. Gen. Bus. Law §898-c(1).

Section 898 goes on to impose negligence liability on firearms commerce. Section 898 requires "gun industry members … [to] establish and utilize *reasonable controls and procedures* to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state." *Id.* §898-b(2) (emphasis added). Section 898 does not tie "reasonable controls and procedures" to any of the many state or federal laws with which firearms manufacturers and sellers must already comply. Rather than impose concrete obligations and prohibitions like those extant laws, which allow industry members to know in real time whether they are in compliance (or not), §898 offers only the unhelpful guidance that "reasonable controls and procedures" are "policies that include, but are not limited to[,] … instituting screening, security, inventory and other business practices to prevent thefts of qualified products as well as sales of qualified products to straw purchasers, traffickers, persons prohibited from possessing firearms under state or federal law, or persons at risk of injuring themselves or others." *Id.* §898-a(2). As with §898-

b(1), failure to abide by §898-b(2)'s nebulous command is "declared to be a public nuisance" if it "results in harm to the public." *Id.* §898-c(1).

## B.  Procedural Background

**1.**  Appellants are a firearm-industry trade association and 14 of its members.  They filed suit shortly after §898 took effect, arguing (among other things) that §898 is preempted because it "is no different from the City's prior attempt, rejected in *Beretta*, to hold gun industry members liable under a generally applicable nuisance law."  Op.11-12.  The district court granted Defendants' motion to dismiss, concluding that §898 is a predicate statute and therefore not preempted.  Op.12.[1]

**2.**  A panel of this Court affirmed.  At the outset, the panel rejected Appellants' characterization of their claims and ratcheted up the bar to prove them.  Despite acknowledging that "Appellants argue[d] *both* that Section 898 is entirely unconstitutional … *and* that it should be invalidated 'to the extent it is preempted by the PLCAA,'" Op.14 (emphases added), the panel insisted that Appellants "have not brought an as-applied challenge," Op.16.  The panel accordingly assigned Appellants the burden of "establish[ing] that [§898] cannot be constitutionally applied against anyone in any situation."  Op.17.

---

[1] The court also rejected Appellants' Commerce Clause and vagueness claims. Op.13.

The panel held that Appellants failed to make that showing. The panel acknowledged that Congress intended the PLCAA to prevent states from imposing "attenuated theories of civil liability [on] the gun industry." Op.22. And it recognized that §898 does just that, authorizing "precisely the type of civil liability action proscribed by PLCAA." Op.19. Nevertheless, the panel held that §898 is a predicate statute, and thus is not preempted, because it "expressly" applies to commerce in arms. Op.23. According to the panel, this Court's decision in *Beretta* "rejected the idea" that, to be a predicate statute, a statute must be "similar" to "the two examples of qualifying statutes provided in PLCAA's text," both of which "impose concrete obligations or prohibitions on gun industry members' conduct, rather than general duties of care." Op.23-24. "Rather," the panel read *Beretta* to hold that all "statutes (1) that expressly regulate firearms, (2) that courts have applied to the sale and marketing of firearms, and (3) that clearly can be said to implicate the sale and purchase of firearms" constitute predicate statutes, regardless of whether they authorize the same kinds of lawsuits—or even would revive the *very same* lawsuits—the PLCAA seeks to foreclose. Op.25. The panel then rejected Appellants' remaining preemption arguments because it could imagine cases "under

Section 898 that would fulfill the 'knowing' and 'proximate cause' requirements of the predicate exception."  Op.29 n.7; *see* 15 U.S.C. §7903(5)(A)(iii); p.3, *supra*.[2]

Judge Jacobs concurred separately.  He acknowledged that §898 "is nothing short of an attempt to end-run PLCAA" and "contravene federal law."  Concur.5, 11.  As he explained, §898 merely "added the words 'gun industry member' to the not-a-predicate statute" from *Beretta*, grafting "reference to the firearms industry" onto a "general-purpose nuisance statute[]" in a "perfunctory" gesture.  Concur.5-6.  And he warned that §898 risks "enforcement so abusive and arbitrary that [the firearm industry] can be destroyed by litigation expense, damages, and impediments to insurance and the raising of capital."  Concur.6-7.  Nevertheless, while Judge Jacobs opined that, "[w]ere [he] deciding *Beretta* afresh, [he] would have concluded that the predicate exception is strictly defined by the examples that Congress provided," Concur.6; *see* p.3, *supra*, *Beretta* compelled him to conclude that any statute that expressly applies to the firearms industry qualifies as a predicate statute, Concur.7.

## REASONS FOR GRANTING THE PETITION

### I.   The Panel Decision Creates A Circuit Split On The Meaning Of The PLCAA And Green-Lights State Nullification Of Federal Law.

**A.**   The panel decision puts Second Circuit law in direct conflict with cases from the Ninth Circuit and the D.C. Court of Appeals, and in the process adopts a

---

[2] The panel also affirmed the dismissal of Appellants' Commerce Clause and vagueness claims.  Op.39-42.

reading of the PLCAA that cannot be reconciled with text, context, purpose, or common sense.

1.    The panel held that any statute "that courts have applied to the sale and marketing of firearms" is a predicate statute, full stop. Op.23, 25. The Ninth Circuit rejected the same argument in *Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ("*Ileto II*").

There, the plaintiffs alleged, in a suit brought before the PLCAA was enacted, that various "manufacturers, marketers, importers, distributors, and sellers" "produce[d], market[ed], distribute[d], and s[old] more firearms than the legitimate market demands," which "foreseeably and proximately" contributed to gun crime, *id.* at 1130, in violation of (among other things) California's "general" negligence, nuisance, and public nuisance statutes, *id.* at 1132-33. At the time, none of those statutes expressly referred to firearms.[3] But the Ninth Circuit held (in a pre-PLCAA decision) that the plaintiffs' "negligence and public nuisance allegations state[d] cognizable claims under" them. *Id.* at 1142; *see Ileto v. Glock Inc.*, 349 F.3d 1191, 1209, 1215 (9th Cir. 2003) ("*Ileto I*"). In other words, as the panel here would put it, *Ileto I* held that those statutes "applied to the sale and marketing of firearms."

---

[3] California later amended its negligence statute to provide that "[t]he design, distribution, or marketing of firearms and ammunition is not exempt from the duty to use ordinary care and skill that is required by this section." 2002 Cal. Legis. Serv. ch. 906, §1 (A.B. 496).

Op.23, 25.  Yet when the plaintiffs tried to argue that their lawsuit survived the enactment of the PLCAA, the Ninth Circuit disagreed, holding in *Ileto II* that the statutes the suit was brought under are *not* predicate statutes even though they applied to the firearms industry, and concluding that a contrary holding would flout "the text and purpose of the PLCAA." *Ileto II*, 565 F.3d at 1135-36.

Starting with the PLCAA's "congressional findings and … statement of purpose," the court explained that "Congress clearly intended to preempt common-law claims" even when they arise under statutes "codified" in a state's "civil code," *id.*; *see* 15 U.S.C. §7901—a point made particularly obvious by the fact that some pre-PLCAA suits had been brought under both the common law and state statutes codifying it.  And merely adding the legislature's imprimatur to "general tort theories of liability," the court explained, does not prevent "the same 'judicial evolution' as ordinary common-law claims," which was "precisely the target of the PLCAA." *Ileto II*, 565 F.3d at 1136 (quoting 15 U.S.C. §7901(a)(7)).  Indeed, the whole point of the PLCAA is to ensure that these heavily regulated businesses whose activities are necessary to the exercise of a fundamental right are not susceptible to after-the-fact liability for conduct that violated none of the many concrete obligations and prohibitions with which they must comply.  *Id.*  Given that clear purpose, the Ninth Circuit held that the predicate exception encompasses "only the[] types of statutes" found in §7901(a)(4) and §7903(5)(A)(iii)(I) and (II), which are not "general tort

theories that happened to have been codified," but rather statutes imposing concrete and clearly identifiable obligations or prohibitions. *Id.*

That decision cannot be reconciled with the panel decision here. To be sure, the statutes in *Ileto* were generally applicable, whereas §898 singles out firearm industry members. But that had nothing to do with the Ninth Circuit's decision, which expressly held that a law does *not* qualify as a predicate statute simply because it applies to the firearms industry, which the laws at issue there did. Nor would such a distinction make any sense, as the notion that the PLCAA is *more* receptive to statutes that subject *only* firearm industry members to the same suits that Congress declared "an abuse of the legal system," 15 U.S.C. §7901(a)(6), is difficult to take seriously. The point of the PLCAA is to protect firearm industry members—and them alone—from suits "based on theories without foundation in hundreds of years of the common law." *Id.* §7901(a)(7). Yet, under the panel decision, states can "end-run PLCAA" simply by codifying the same abusive tort theories in statutes that apply *only* to the firearms industry. Concur.5.

That is nothing short of an invitation to defy federal law. If the PLCAA means anything, it means that states cannot use tort litigation to make industry members redress harms caused by criminals simply by pleading that they could have done more to prevent gun crime. "Congress intended to preempt general tort law claims," full stop. *Ileto II*, 565 F.3d at 1132-38. The Ninth Circuit respects that clear

legislative objective. The panel decision defies it, empowering states to revive at will the very claims Congress enacted the PLCAA to inter.

**2.** The panel decision also conflicts with *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008). The question there was whether D.C. Code §7-2551.01 (2001) ("the SLA") qualifies as a predicate statute. "[B]y its express terms," the SLA "'appli[es] to the sale or marketing of' a class of firearms." 940 A.2d at 169. So, under the framework the panel adopted here, the SLA would be a predicate statute. *See* Op.25. But the D.C. Court of Appeals held otherwise. As the court explained, "[t]he SLA imposes no duty on firearms manufacturers or sellers to operate in any particular manner"; it effectively just "imposes a duty to pay compensation" anytime a criminal injures someone using one of the industry member's products. 940 A.2d at 170. The SLA thus looked nothing like "the class of statutory violations" in §7903(5)(A)(I) and (II). *Id.* at 171; *see* p.3, *supra*. And allowing it to serve as a predicate statute, the court held, would flout "the purposes underlying the PLCAA," about which "Congress was explicit." 940 A.2d at 171. Once again, then, the panel decision creates a division of authority and contravenes Congress' clear aim in the PLCAA.

**B.** The panel seemed to think that *Beretta* compelled that dubious result. *See* Op.23-25; Concur.4-7. It does not, but if it did, that would be all the more reason

to rehear the case en banc, as the Court should not allow opaque dictum to compel a conclusion at demonstrable odds with a federal statute.

*Beretta* involved a suit much like the one in *Ileto*: New York City sued various "manufacturers and wholesale sellers of firearms" (including many Appellants here) under New York's general criminal nuisance statute, Penal Law §240.45, seeking to hold them liable for the purported "public nuisance" of gun violence involving their products. *Beretta*, 524 F.3d at 389-90. This Court held that §240.45 could not serve as a "predicate statute" because it "is a statute of general applicability that does not encompass the conduct of firearms manufacturers of which the City complains." *Id.* at 400. While that holding turned on a question of New York law, the court also opined in dicta on how the PLCAA would apply to other types of laws, positing that while the predicate exception "does not encompass New York Penal Law §240.45," it "does encompass statutes (a) that expressly regulate firearms, or (b) that courts have applied to the sale and marketing of firearms." *Id.* at 404.

The panel here read that language to mean that *every* state law that "expressly regulates" members of the firearms industry (or has been held to regulate them) must be a predicate statute, regardless of whether it "imposes concrete obligations or prohibitions on gun industry members' conduct, rather than general duties of care." Op.24. But *Beretta* did not confront, let alone decide, whether "a statute of general

applicability" that merely subjects the firearms industry to general tort theories could be a predicate statute. And its reasoning strongly suggests that the answer is no.

In analyzing the scope of the predicate exception, *Beretta* looked to the PLCAA's text and structure, homing in specifically on the exemplar predicate statutes Congress supplied in 15 U.S.C. §7903(5)(A)(iii)(I) and (II). As the Court explained, "[t]he general language contained in [the predicate exception] (providing that predicate statutes are those 'applicable to' the sale or marketing of firearms) is followed by the more specific language referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. §7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. §7903(5)(A)(iii)(II)." *Beretta*, 524 F.3d at 402. "Thus," the Court opined, the exception must "be 'construed to embrace only objects similar to those enumerated by' sections 7903(5)(A)(iii)(I) and (II)." *Id.* (quoting *Wash. State Dep't of Soc. & Health Servs. v. Keffeler*, 537 U.S. 371, 384 (2003)). And a law that merely subjects members of the firearms industry to the same tort suits that led Congress to enact the PLCAA in the first place looks nothing like those laws.

To be sure, *Beretta* "rejected the idea that the predicate exception's enumerated examples are exhaustive." Op.24. But Appellants have never argued otherwise, and the panel's fixation on that point led it to miss the forest for the trees.

The real point is that predicate statutes must, like the examples Congress provided, actually tell industry members what is and is not lawful, not leave them guessing as to what otherwise-lawful conduct may retroactively be deemed "unreasonable."

Moreover, *Beretta* looked to indicia of legislative intent more broadly, and—in a passage the panel elided—invoked the "interpretive principle that statutory exceptions are to be construed narrowly in order to preserve the primary operation of the [general rule]." 524 F.3d at 403 (alteration in original). *Beretta* also looked to "legislative history," which showed that Congress rejected efforts to exempt from the PLCAA "cases in which a firearms supplier's gross negligence or recklessness is a proximate cause of injury." *Id.* at 403-04. Both text and context thus led *Beretta* to opine that "the predicate exception was meant to apply only to statutes that actually regulate the firearms industry," not ones that just impose broad duties of care like "negligence." *Id.* The contrary conclusion would give "the predicate exception" a "too-broad reading" and allow it to "swallow the statute." *Id.*

Had the panel given *Beretta* its full due, it would have come out the other way, and it would not have created a split with the Ninth Circuit and D.C. Court of Appeals. Now, however, those courts' more sensible reading of the PLCAA is off the table in the Second Circuit—unless the en banc Court steps in.

## II.    The Question Presented Is Exceptionally Important.

As the Supreme Court recently explained, the "PLCAA's core purpose" is to foreclose "lawsuits attempting to make gun manufacturers pay for the downstream harms resulting from misuse of their products." *Smith & Wesson*, 605 U.S. at 299. And "the ultimate touchstone for" "any preemption inquiry" "is the intent of Congress." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015). This case thus should have been easy. After all, making firearm industry members pay for the consequences of criminals' misconduct is all §898 tries to do. If a plaintiff proves that a "gun industry member['s] … sale, manufacturing, importing or marketing of a [firearm or related product]" "contribute[d]" in any way to gun crime in New York ("a condition in New York state that endangers the safety or health of the public"), then the industry member can be made to pay "restitution" and "damages" to redress that criminal activity—even if the industry member's conduct was *not* "unlawful in itself," and even if the industry member did nothing other than lawfully make its lawful products commercially available in New York. N.Y. Gen. Bus. Law §§898-b(1), 898-d, 898-e.

In any other context, it would be difficult to imagine such egregious defiance of federal law by state actors. But when it comes to firearms, defiance unfortunately has become *de rigueur*. New York certainly was not shy about it here. Both Attorney General James and then-Governor Cuomo publicly described the PLCAA

as a (federal) "wrong" that New York needed to set "right." *See* Op.20 n.3. And the decision below invites states to join New York in flouting Congress' clear commands. There is no reason to tolerate that state of affairs, and every reason not to. And to the extent the panel believed itself bound by *Beretta* to bless New York's defiance, then it falls to the full Court to make clear that federal law remains supreme, whether states like it or not.

## CONCLUSION

For the forgoing reasons, this Court should grant rehearing en banc.

Respectfully submitted,

s/Erin E. Murphy
PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN
CLEMENT & MURPHY, PLLC
706 Duke Steet
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellants*

September 22, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1(a)(4)(A) because it contains 3,894 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

September 22, 2025

s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 22, 2025, an electronic copy of the foregoing was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

<u>s/Erin E. Murphy</u>
Erin E. Murphy